Lovee D. Sarenas (SBN 204361)
lovee.sarenas@dinsmore.com
Jonathan Serrano (SBN 333225)
jonathan.serrano@dinsmore.com
Jamie Mottola (SBN 309934)
jamie.mottola@dinsmore.com
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 1765
Los Angeles, CA  90071
Telephone:  213.335.7737

Counsel to Peter J. Mastan,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:23-bk-11789-BR |
| HAWTHORNE HANGAR OPERATIONS, L.P., | Chapter 7 |
| | **MOTION FOR THE ENTRY OF AN ORDER:** |
| Debtor. | **(A) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH SALE OF REAL PROPERTY FREE AND CLEAR OF ALL INTERESTS;** |
| | **(B) APPROVING THE FORM AND MANNER OF NOTICE OF THE BID PROCEDURES;** |
| | **(C) SCHEDULING AN AUCTION AND SALE HEARING;** |
| | **(D) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS FOR ASSUMED CONTRACTS; AND** |
| | **(E) APPROVING BREAK-UP FEE;** |
| | **DECLARATIONS IN SUPPORT THEREOF** |
| | Date:    [TBD] |
| | Time:    10:00 a.m. |
| | Judge:   Hon. Barry Russell |
| | Place:   Courtroom 1668 |
| |        255 East Temple Street |
| |        Los Angeles, CA 90012 |

#31344782v3

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 7

II.   JURISDICTION AND VENUE ................................................................................ 8

III.  STATEMENT OF FACTS ........................................................................................ 8

   A.   The Debtor's Bankruptcy Filing ...................................................................... 8

   B.   Real Property .................................................................................................... 8

   C.   Secured Claims ................................................................................................. 8

IV.   MARKETING EFFORTS ......................................................................................... 9

V.    THE PROPOSED SALE TO 3507 JNA ................................................................. 10

VI.   THE BREAK-UP FEE ............................................................................................ 12

VII.  PROPOSED SALE AND BID PROCEDURES AND AUCTION PROCEDURES ................ 12

   A.   Bid Procedures ............................................................................................... 13

   B.   Auction Procedures ........................................................................................ 14

   C.   Notices and Schedule for the Sale Hearing ................................................... 15

VIII. ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND
      OTHER AGREEMENTS ........................................................................................ 16

IX.   SUMMARY OF RELEVANT DATES AND PROPOSED SALE TIMELINE ......................... 17

X.    DISCUSSION ......................................................................................................... 18

   A.   The Break-Up Fee Should Be Approved ....................................................... 18

   B.   The Sale and Bid Procedures are Appropriate. ............................................. 19

   C.   The Proposed Assumption and Assignment Procedures for Determining Cure Amounts for
        Assumed Contracts is Appropriate. ............................................................... 20

XI.   CONCLUSION ....................................................................................................... 21

#31344782v3

# TABLE OF AUTHORITIES

## Cases

*Doehring v. Crown Corp. (In re Crown Corp.),*
  679 F.2d 774 (9th Cir. 1982) ......................................................................................... 18

*Four B. Corp. v. Food Barn Stores, Inc.,*
  107 F.3d 558 (8th Cir. 1997) ......................................................................................... 20

*In re Crowthers McCall Pattern, Inc.,*
  114 B.R. 877 (Bankr. S.D.N.Y. 1990) .......................................................................... 18

*In re Financial News Network, Inc.,*
  126 B.R. 152 (S.D.N.Y. 1991); *appeal dismissed,* 931 F.2d 217(2d Cir. 1991) ........... 19

*In re Integrated Resources,*
  147 B.R. 650 (S.D. N.Y. 1992) ...................................................................................... 18

*In re Table Talk, Inc.,*
  53 B.R. 937 (Bankr. D. Mass. 1985) ............................................................................. 18

*In re 995 Fifth Ave. Assocs.,* L.P.,
  96 B.R. 24 (Bankr. S.D.N.Y. 1989) ............................................................................... 18

*Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),*
  759 F.2d 1043 (4th Cir. 1985). ...................................................................................... 20

*NLRB v. Bildisco,*
  465 U.S. 513 (1984) ....................................................................................................... 20

*Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.,*
  147 B.R. 650, 659 (S.D.N.Y. 1992) .............................................................................. 21

*Orion Pictures v. Showtime Networks Inc.,*
  4 F.3d 1095, 1099 (2d Cir. 1993) .................................................................................. 20

## Statutes

11 U.S.C  § 101 ............................................................................................................... 8
11 U.S.C. § 105 ......................................................................................................... 5, 20
11 U.S.C. § 105(a) .......................................................................................................... 10
11 U.S.C. § 363. ........................................................................................... 5, 10, 18, 20
11 U.S.C. § 363(f). ..................................................................................................... 3, 11
11 U.S.C. § 363 (m). ................................................................................................... 4, 11
11 U.S.C. § 365. ........................................................................................... 5, 10, 16, 17, 20
11 U.S.C. § 365(a). ......................................................................................................... 20
28 U.S.C. § 1408 ............................................................................................................ 8
28 U.S.C. § 157 .............................................................................................................. 8
28 U.S.C. § 1334 ............................................................................................................ 8

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, PROSPECTIVE BUYERS, PARTIES IN INTERESTS, THE UNITED STATES TRUSTEE, AND THEIR RESPECTIVE COUNSEL, IF ANY**:

Peter J. Mastan, the duly-appointed Chapter 7 Trustee ("Trustee") in the above-entitled Chapter 7 bankruptcy case ("Case") of the debtor Hawthorne Hangar Operations, L.P. ("Debtor" or "HHO"), by and through his counsel, hereby moves the Bankruptcy Court, pursuant to this motion ("Motion"), for the entry of an order[1] ("Sale and Bid Procedures Order") that provides the following relief:

1. Grants the Motion.

2. Approves the proposed Sale and Bid Procedures[2] ("Sale and Bid Procedures"), a copy of which is attached hereto as **Exhibit 2**, in connection with the sale ("Sale") of the bankruptcy estate's ("Estate") rights and title to, and interest in, the real property generally described as 3507 Jack Northrop Avenue, Hawthorne, CA 90250 and improvements thereon ("Real Property"), and other assets of the Estate (collectively, the "Property") that are more particularly described in that Agreement of Purchase and Sale dated July 12, 2023, as it may be amended or modified ("Purchase Agreement"), attached hereto as **Exhibit 3**, free and clear of all interest pursuant to 11 U.S.C. § 363(f).

3. Schedules the auction ("Auction") and the sale hearing ("Sale Hearing") to consider approving the Sale, under the terms of that Purchase Agreement between the Trustee, as seller, and 3507 JNA LLC, a Delaware limited liability company, as buyer ("3507 JNA" or the "Stalking Horse Bidder"), or to the highest or otherwise best bidder at the Auction ("Successful Bidder") on **August 30, 2023**;

4. Approves the form and manner of notice of the bid procedures, the proposed Auction and the Sale Hearing ("Bid and Sale Notice"), attached hereto as **Exhibit 4**.

5. Approves the proposed procedures for determining cure amounts ("Assumption and Assignment Procedures") for assumed contracts and leases (collectively, "Assumed Contracts"); and

---

[1] A copy of the proposed form of order on the Motion is attached as **Exhibit 1** hereto.
[2] Capitalized terms not defined herein shall have the same meaning ascribed to such terms in the Sale and Bid Procedures.

3

6. Approves a break-up fee of $200,000.00 ("Break-Up Fee") to 3507 JNA as the Stalking Horse Bidder.

The Trustee further requests that, at the conclusion of the Sale Hearing, the Bankruptcy Court enter an order ("Sale Order"), authorizing the Trustee and the Estate to (a) sell the Property free and clear of all interests to 3507 JNA or any other Successful Bidder, on substantially similar (other than the Purchase Price) or better terms as those set forth in the Purchase Agreement; (b) assume and assign the Assumed Contracts to 3507 JNA; (c) afford 3507 JNA or any other Successful Bidder buyer's protection under 11 U.S.C. § 363(m) as a good faith purchaser; and (d) enter into and perform the obligations under the Purchase Agreement and consummate the Sale.

This Motion is brought pursuant to Local Bankruptcy Rules ("LBR") 6004-1(b), 9013-1 and 9075-1(b). The Motion and Notice of the Motion are served via e-mail on the following parties:

(i) parties who are listed in the Court's Notice of Electronic Filing transmission ("NEF List");

(ii) the Debtor and its counsel;

(iii) the Office of the United States Trustee and counsel thereto;

(iv) parties who have asserted secured claims against the Property;

(v) professionals of the Estate;

(vi) counsel to 3507 JNA; and

(vii) all persons who have requested special notice in the Case.

Trustee requests that the Motion be heard on not less than seven (7) days' notice (unless a shortened notice is ordered by the Court under LBR 9075-1[3]) pursuant to the allowed procedure under LBR 6004-1(b). Within three business (3) days of the entry of the Sale and Bid Procedures Order, Trustee shall serve the Sale and Bid Notice (along with the relevant sale documents) that includes the related Sale deadlines to:

(1) prospective buyers who have expressed interest in purchase the Property;

(2) the counterparties to the Debtor's executory contracts and unexpired leases;

(3) all creditors; and

---

[3] The application for shortened notice has been filed concurrently with this Motion.

4

#31344782v3

(4) all other the parties served with the Motion above.

A copy of the approved Sale and Bid Procedures will also be published electronically with various commercial property listing services (such as eXp Realty's website or other similar listing services) for the sale of commercial real estate and the data room established for this Sale, and will be provided upon request made to Trustee's counsel at the address provided above.

The Trustee proposes the following timeline for the Sale:

| | |
|---|---|
| Hearing on Sale and Bid Procedures Motion: | **July 28, 2023 at 10:00 a.m.** |
| Serve Notice of Hearing Sale and Bid Procedures Motion: | Not less than seven (7) days prior to the hearing |
| Objection to the Sale and Bid Procedures Motion: | At least one (1) day prior to the hearing |
| Service of the Sale and Bid Notice: | Within three (3) business days of the entry of the Sale and Bid Procedures Order |
| | |
| Service of the Assumption Notice (defined below): | Within three (3) business days of the entry of the Sale and Bid Procedures Order |
| Deadline for Counterparties to Object to the list of Assumed Contracts and Cure Amount (defined below): | Seven (7) days after service of the Assumption Notice |
| Deadline for Replies to Objection to the list of Assume Contracts and Cure Amounts: | August 19, 2023 |
| Holding Date for hearing objections to Cure Amounts: | August 22, 2023 at 10:00 a.m. |
| | |
| Service of the Sale Motion: | No later than August 9, 2023 |
| Deadline to Oppose the Sale Motion: | August 16, 2023 |
| Reply to Opposition to Sale Motion: | August 23, 2023 |
| Bid Deadline: | August 28, 2023 |
| Auction and Sale Hearing: | **August 30, 2023 at 10:00 a.m.** |

The statutory predicates for the Motion are 11 U.S.C. §§ 105, 363 and 365 and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002, 6004, and 6006. The Trustee believes that in light of the compromise reached with the Debtor's largest secured creditor, Grand Pacific Financing Corporation ("Grand Pacific"), the discounts that the Estate is set to obtain from such settlement, and the efforts that have been taken to facilitate the Sale of the Property, it is critical to close the Sale as expeditiously as possible which includes having the Sale and Bid Procedures in place as soon as possible in order to maximize value for creditors.

#31344782v3

1     In support of this Motion, the Trustee relies upon (a) the attached Memorandum of Points and

2     Authorities, Declarations of Peter J. Mastan and Matthew Palumbo, and exhibits thereto; (b) the

3     pleadings on file with the Bankruptcy Court of which this Bankruptcy Court is requested to take

4     judicial notice; and (d) such other pleadings and evidence as may be properly submitted in connection

5     with the Motion.

6     WHEREFORE, the Trustee seeks (i) the entry of the Sale and Bid Procedures Order that

7     provides for the foregoing relief in substantially the form attached to this Motion; and (ii) granting

8     such other relief as the Court deems necessary and proper.

9

10    DATED: July 21, 2023                          Respectfully submitted,

11                                                  DINSMORE & SHOHL LLP

12
                                                    By: /s/ Lovee D. Sarenas
13                                                       Lovee D. Sarenas
                                                    Jamie Mottola
14                                                  Counsel to Peter J. Mastan, Chapter 7 Trustee

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  **INTRODUCTION**

3      The Property, more specifically, the Real Property is the most valuable asset of the Estate that

4  can be monetized to bring funds for the benefit of creditors.  Subject to the approval of the Court, the

5  Trustee has entered into the Purchase Agreement with 3507 JNA as the Stalking Horse Bidder.  The

6  Purchase Agreement will be used to establish a floor price at the Auction for the Property.  The Trustee

7  believes that a sale of the Property presents the best opportunity to maximize value for the Estate.

8      In connection with the Sale, the Trustee has entered into a compromise[4] with Grand Pacific,

9  which holds a First Deed of Trust against the Real Property in the principal amount of $7.3 million

10  on account of a loan made to HHO.  The compromise resolves the prepetition litigation among HHO,

11  Dan Wolfe, and related entities, as plaintiffs and cross-defendants, and Grand Pacific and other third

12  parties, as defendant (and Grand Pacific as a cross-complainant), involving the loan and the secured

13  claim of Grand Pacific ("HHO Lawsuit").  Among other things, the compromise provides certain

14  reductions[5] of the allowed secured claim of Grand Pacific if the sale closes by September 15, 2023.

15  The Trustee believes that the approval and establishment of the Bid Procedures proposed herein,

16  scheduling of the Sale Hearing and Auction, and the approval of the procedure to determine Cure

17  Amounts for Assumed Contracts will facilitate the efficient and expeditious Sale of the Property

18  pursuant to the compromise with Grand Pacific while at the same time, implementing a procedure by

19  which the Estate can consider the highest or best offer for the Property.

20      By this Motion, the Trustee seeks approval of the Sale and Bid Procedures that will govern

21  both (i) the solicitation of competing bids from other potential purchasers and (ii) the Auction process.

22  The Trustee also requests the Bankruptcy Court to schedule and conduct the Auction and the Sale

23  Hearing on August 30, 2023 and for the Bankruptcy Court to approve the Sale of the Property to 3507

24

25

---

26  [4] The parties' compromise has been memorialized in that certain Settlement and Mutual Release Agreement that has been filed with the Court in connection with the Trustee's motion to approve
27  said compromise [ECF No. 132].  The compromise motion is set for hearing on August 8, 2023. [ECF No. 134.]  The expected savings to the Estate is estimated at about $1.2 million so long as the
28  Sale is consummated by September 15, 2023.
[5] The discounts agreed upon by the parties is subject to the Clawback provision in the Agreement.

1    JNA as the Stalking Horse Bidder, or any other Successful Bidder should a better or higher bid is

2    received at the Sale Hearing.

3    **II.**    **JURISDICTION AND VENUE**

4    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

5    1334.  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

6    proper pursuant to 28 U.S.C. § 1408.

7    **III.**    **STATEMENT OF FACTS**

8    **A.**    **The Debtor's Bankruptcy Filing**

9    On March 26, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under

10    Chapter 11 of the United States Bankruptcy Code, 11 U.S.C §§ 101, *et seq.* (the "Bankruptcy Code").

11    On May 2, 2023, the Court entered an Order Converting Case from Chapter 11 to Chapter 7 [ECF

12    75] ("Conversion Order") and further authorized the chapter 7 trustee to continue the Debtor's

13    operation for one year from the date of the entry of the Conversion Order.  On May 4, 2023, the

14    Trustee accepted his appointment as the chapter 7 trustee in the Bankruptcy Case.

15    **B.**    **Real Property**

16    The Debtor owns an aircraft hangar, office and industrial facility at Hawthorne Municipal

17    Airport located at 3507 Jack Northrop Avenue, Hawthorne, CA 90250.  The Debtor is a "fixed based

18    operator" or "FBO" that provided hangar space, fuel for small plan aircraft, and office and industrial

19    space for tenants.  The facility has approximately 34,404 sq. ft. of improved space and is situated in

20    a parcel, of which the Debtor owns approximately 2.5 acres and has an easement on another 1.25

21    acres.  Pursuant to the Conversion Order, the Trustee is continuing to operating the Debtor's facility.

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

#31344782v3

**C.    Secured Claims**[6]

According to the preliminary title report obtained by the Trustee dated May 9, 2023, the following voluntary or statutory encumbrances ("Secured Claims") were recorded against the Real Property:

      a.   County of Los Angeles:   outstanding property tax owed of approximately $32,857.00;

      b.   Grand Pacific: pursuant to a Deed of Trust recorded on January 26, 2021 and recorded Assignment of Rents and Leases dated February 2, 2021 that secure a debt of at least $7,300,000.00;[7] and

      c.   Mary E. Gram Attorney, Inc., a California professional corporation:  pursuant to a Second Deed of Trust dated March 23, 2022 securing a debt in the approximate amount of $400,000.

In addition, David Wehrly ("Wehrly") asserts a secured claim against the Real Property pursuant to a recorded Abstract of Judgment in the estimated amount of approximately $1.3 million.  The judgment, which serves as the basis for the Abstract of Judgment, is currently on appeal.[8]

## IV.    MARKETING EFFORTS

Prior to the conversion of the Case to chapter 7, Debtor and its principal Dan Wolfe, sought to employ the team of commercial real estate brokers Lee Johnson (Berkshire Hathaway), Matthew Palumbo (eXp Commercial), and Evangelo Karantonis to serve as the Debtor's real estate brokers ("Brokers") who will assist in the marketing and selling the Real Property.  The Brokers have been in communication with Mr. Wolfe previously to sell HHO.  HHO had signed a listing agreement with the Brokers to become HHO's listing agents.   The Brokers have already begun the preliminary marketing of the Real Property prior to conversion and began creating a marketing strategy and

---

[6] Except as set forth in the Motion, nothing herein allows or validates any of the Secured Claims or security interests, liens or other interests asserted by the Secured Creditors.  The amount of the liens may be higher or lower and will be determined at the appropriate time.

[7] The settlement between the Estate and Grand Pacific provides Grand Pacific with an allowed secured claim ("Grand Pacific's Allowed Claim") that is comprised of the principal plus 100% of the accrued contractual interest due and discounted default interest and bankruptcy attorneys' fees to be paid at the close of escrow.  The settlement further provides for the waiver of the attorneys' fees of Grand Pacific's lead state court counsel, Parker & Riggs LLP, fka Parker & Zubkoff, LLP.  The total Grand Pacific Allowed Claim is adjusted based on certain payment milestones from the Sale reached in the Case.

[8] While the Abstract of Judgment does not appear in the preliminary title report it does appear in a Trustee's Sale Guaranty Grand Pacific has provided the Trustee.  The Abstract of Judgment was recorded June 1, 2022, in the Official Record of Los Angeles County, California, as Document 20220583044.

9

1  campaign that included reaching out to their extensive client base who would be interested in

2  purchasing the Property.

3    During that time, the Brokers created a website <www.hawthornehangaroperations.com> to

4  market the Real property.  The HHO sale information and brochure were also blasted worldwide to

5  over 6,000 potential buyers who may be interested in purchasing an FBO or who are in the aviation

6  industry. The sale listing is also featured on eXp Realty's website which has access to over 80,000

7  agents worldwide and syndicated through various other commercial real estate websites.  The Brokers

8  have also called owners of similar assets and industrial assets in various municipal airports like

9  Hawthorne Airport and Van Nuys Airport.

10    However, before the employment was approved by the Court, the Case was converted to

11  chapter 7 on May 2, 2023.  Given their background and experience in selling commercial real estate,

12  and the considerable knowledge they possess about HHO and the Real Property particularly in dealing

13  with the Hawthorne Airport, the City of Hawthorne and the FAA, and the various agreements that

14  involve HHO, the Trustee proposes to hire the Brokers to assist with the marketing and sale of the

15  Property as part of this Sale and Bid Procedures.  Trustee anticipates that the Brokers will continue

16  their efforts, upon the approval of the Sale and Bid Procedures to market and show the Property to

17  potential buyers, and field offers and interests to procure viable bids for the Auction and will prove to

18  be instrumental in assisting the Trustee in obtaining the highest or best offer for the Property.  A

19  detailed discussion of the marketing efforts taken in selling the Property will be set forth in the Sale

20  Motion.

21  **V.  THE PROPOSED SALE TO 3507 JNA**

22    The Purchase Agreement sets forth the terms of the Sale of the Property to 3507 JNA,

23  subject to higher or otherwise better offers at the Auction, free and clear of all liens, claims,

24  encumbrances and other interests (except for the "Assumed Liabilities" and "Conditions of Title"

25  as defined in the Purchase Agreement) pursuant to Bankruptcy Code §§ 105(a), 363, and 365.  The

26  following is a summary of the key provisions of the Purchase Agreement.[9]

27
28
---
[9] The summary of the Purchase Agreement is provided for the convenience of the Bankruptcy Court and parties in interest. To the extent that there are any discrepancies between this summary and the Purchase Agreement, the terms and language of the Purchase Agreement shall govern. Capitalized

#31344782v3

| Provision | Description |
|---|---|
| Seller | Trustee/Estate |
| Buyer | 3507 JNA, or assignee |
| Purchase Price | $13,350,000.00<br><br>**[Purchase Agmt., § 2.(a)]** |
| Total Deposit | $500,000.00 (two deposits of $250,000 with the first paid within 4 business days of the execution of the Purchase Agreement (deposited with escrow on 7/18/2023) and the second upon the completion of due diligence).<br><br>**[Purchase Agmt., § 2.(a)]** |
| Free and Clear Sale | The Sale shall be free and clear of any interest in the Property except as provided in the Purchase Agreement with such monetary or security interests to attach to the proceeds in the same extent, priority and validity prepetition in accordance with Bankruptcy Code § 363(f).[10]<br><br>**[Purchase Agmt., § 6.(a)(1)]** |
| Purchased Assets | Seller shall sell, convey, assign, transfer and deliver to buyer, free and clear of all Liens other than Conditions of Title and Assumed Liabilities, and Buyer shall purchase and acquire from Seller, the Estate's rights to, title and interest in the Real Property and certain other assets defined as the "Property" in the Purchase Agreement, other than the Excluded Assets.<br><br>**[Purchase Agmt., § 1.(a)]** |
| Excluded Assets | The Estate's claims, causes of action and rights of recovery pursuant to sections 544 through 550 and section 553 of the Bankruptcy Code, and other assets excluded under the Purchase Agreement.<br><br>**[Purchase Agmt., § 1.(b)]** |
| Cure Amounts for Assumed Contracts | Buyer will pay all cure amounts associated with the Assumed Contracts.<br><br>**[Purchase Agmt., §§ 1.(c) and 2.(c); Schedule 1.(a).(5)]** |
| Good Faith Buyer | The Sale Order shall provide that the Buyer is a good faith purchaser and shall be afforded the protections of a good faith purchaser under § 363(m) of the Bankruptcy Code.<br><br>**[Purchase Agmt., § 6.(a)(1)]** |

terms used but not otherwise defined in this summary shall have the meanings set forth in the Purchase Agreement, attached hereto as **Exhibit 3**.

[10] The allowed claim of Grand Pacific will be paid from proceeds at the close of Sale pursuant to the parties' Settlement Agreement.

#31344782v3

| Closing Date | Closing shall be held at the offices of the Escrow Holder on the date (that is the first Business Day which is at least thirty (30) days after the entry in the Bankruptcy Case of the Sale Order provided there is no stay then in effect of the Sale Order; provided, however, that the Parties may mutually agree that the Closing Date may occur earlier if the Bankruptcy Court has waived the provisions of Bankruptcy Rule 6004(h) and 6006(d) as part of the Sale Order as more fully set forth in the Purchase Agreement. |
|---|---|
| | **[Purchase Agmt., § 3.(b)]** |
| Break-Up Fee | $200,000.00 to be paid to 3507 JNA as the Stalking Horse Bidder pursuant to the terms of the Purchase Agreement in the event that the Sale closes with a Successful Bidder other than the Stalking Horse Bidder. |
| | **[Purchase Agmt., § 17]** |

## VI.    THE BREAK-UP FEE

Under the Purchase Agreement, in recognition to 3507 JNA (as the Stalking Horse Bidder) expenditures of time, energy and resources, and efforts taken in connection with the planning, due diligence and negotiation of the Purchase Agreement, 3507 JNA will be paid a fixed Break-Up Fee of $200,000.00 in the event that, the Bankruptcy Court enters a Sale Order approving the sale of the Property and designating a Successful Bidder other than the Stalking Horse Bidder or if the other Successful Bidder fails to close the Sale and such Successful Bidder and such other Bidder's Deposit is forfeited.  Purchase Agreement, § 17.(d).  In the event 3507 JNA is entitled to the Break-Up Fee, the Break-Up Fee shall be paid to it at the time of closing of the Sale or within ten (10) business days the forfeiture and release of the Deposit to the Estate, whichever occurs first.  *Id.*

The Trustee believes that such Break-Up Fee, which is equivalent to about 1.5% of the Purchase Price, is fair and reasonable due to the circumstances of the Sale.  By this Motion, the Trustee requests approval of the Break-Up Fee to the Stalking Horse Bidder.

## VII.    PROPOSED SALE AND BID PROCEDURES AND AUCTION PROCEDURES

A copy of the proposed Sale and Bid Procedures is attached hereto as **Exhibit 2** and incorporated herein by reference for all purposes.  All capitalized terms appearing in this section which are not separately defined shall have the meanings ascribed to such terms in the Sale and Bid Procedures.  The following recitals of the Sale and Bid Procedures is subject in all respects to the Sale and Bid Procedures attached hereto and are not intended in any way to vary or impact the provisions

#31344782v3

of such Sale and Bid Procedures.  Interested parties are encouraged to review the full and complete Bid Procedures with their own counsel.

**A.**      **Bid Procedures**

The Sale and Bid Procedures include, without limitation:

    a.      <u>Bid Deadline</u>: **August 28, 2023 at 5:00 p.m. PST.**

    b.      <u>Bid Package</u>:   To be deemed a "Qualified Bidder", a Potential Bidder's initial bid to purchase the Property must submit a completed bid package in writing that provides for, among other things,

**(1)** an asset purchase agreement in substantially the same or better terms and conditions as the Purchase Agreement together with a "redlined" or otherwise marked copy reflecting any revisions made to conform the Potential Bidder's Purchase Agreement to 3507 JNA's Purchase Agreement **(i)** for the acquisition of the entire Property as described in the Purchase Agreement in cash at closing, **(ii)** that is unconditional, save and except for Bankruptcy Court approval, and must not be conditioned upon acceptance of one or more other bids, financing or additional due diligence, and shall not entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or compensation; and **(iii)** identifies the executory contracts and unexpired leases to be assumed in connection with the Sale, and otherwise containing the same or substantially identical terms and conditions as the Purchase Agreement;

**(2)** the Potential Bidders binding commitment that **(i)** the Initial Overbid and Deposit are irrevocable until the closing of the Sale to the Successful Bidder (as defined in the Sale and Bid Procedures); **(ii)** if the Potential Bidder is deemed a Qualified Bidder and is selected as the Successful Bidder, such Qualified Bidder is ready, willing and able to close and to consummate the purchase of the Property with no contingencies whatsoever, other than Bankruptcy Court approval of the transaction by no later than two (2) days following the date on which all closing conditions have been satisfied but no later than September 15, 2023; **(iii)** if the Qualified Bidder is selected as the Backup Bidder and the Sale to the Successful Bidder fail to close for any reason, the Backup Bidder is ready, willing and able to close on the purchase of the Property with no contingencies whatsoever other than Bankruptcy Court approval of the transaction, within two (2) business days of receipt of written notice from the Trustee notification to sell the Property to the Backup Bidder but not later than September 15, 2023; and

**(3)** Financial information satisfactory to the Trustee demonstrating an ability to close and consummate the transaction proposed under the Initial Overbid and to perform all obligations associated with the Sale.

    c.      <u>Deposit</u>:   The sum of **500,000.00** in the form of a cashier's check made payable to the Trustee or a wire transfer to be applied to the Successful Bid of the Qualified Bidder deemed to be the Successful Bidder.

#31344782v3

1
2
3

       d.     <u>Initial Overbid</u>:  At least **$13,650,000.00** which is comprised of which includes the Purchase Price, the amount of the Break-Up Fee, and the overbid amount of at least $100,000.00.

4  Only those Potential Bidders who submit a Bid Package in compliance with all of the requirements

5  set forth in the Sale and Bid Procedures on or before the Bid Deadline shall be entitled to have their

6  respective Qualified Bid considered by the Trustee, at his discretion, and such Potential Bidder

7  deemed a "Qualified Bidder".[11]  The Stalking Horse Bidder, 3507 JNA, is deemed to be a Qualified

8  Bidder with a Qualified Bid.

9        **B.**     **Auction Procedures**

10       In the event of competitive bidding and the Trustee receives one or more Qualified Bids, the

11  Sale and Bid Procedures call for an Auction to be conducted at the Bankruptcy Court at, or

12  contemporaneously with, the Sale Hearing. <u>Sale and Bid Procedures</u>, Art. VI.  The Trustee requests

13  that the Court hold the Auction and the Sale Hearing **<u>no later than August 30, 2023</u>**.  Attendance at

14  the Auction must be in person by the Qualified Bidder or its authorized representative.  Prior to the

15  Auction, the Trustee shall announce the highest and best Qualified Bid to serve as the Initial Overbid.

16  The Sale and Bid Procedures provide that the minimum subsequent bids will be in increments of at

17  least $50,000.00 (above the Initial Overbid) (each subsequent bid, an "<u>Increased Bid</u>").  The proposed

18  procedures further provide details on the process for conducting the Auction, making Increased Bids,

19  and identifying the Successful Bid and Backup Bid.  The Qualified Bid with the highest or best final

20  Increased Bid for the property at the close of Auction, as determined by the Trustee and subject to the

21  confirmation by the Bankruptcy Court, shall be deemed the Successful Bidder. The next highest or

22  best Increased Bid as determined by the Trustee shall be deemed the Back-Up Bid.

23       The Trustee requests that the Bankruptcy Court approve the sale of the Property to 3507 JNA,

24  or if applicable, the Successful Bidder, at the Sale Hearing as well as the assumption and assignment

25  of the Assumed Contracts to be assigned to the buyer and any Cure Amounts required for same.

26

---

27  [11] In the event that a Potential Bidder submits a bid prior to the Bid Deadline, and the Trustee determines
pursuant to the Sale and Bid Procedures that such bid is not a Qualified Bid, the Trustee, in the exercise
28  of his business judgment, will inform the Bidder of such disqualification and the reasons for the same, in
order to allow the Potential Bidder to remedy any such defects by the Bid Deadline.

#31344782v3

**C.      Notices and Schedule for the Sale Hearing**

The Trustee proposes to set a hearing on the Sale Motion no later than **August 30, 2023** which is two (2) days after the Bid Deadline of August 28, 2023.  By this Motion, the Trustee requests that the Sale Hearing be set at the same time as the Auction to occur immediately following conclusion of the Auction.  Trustee further requests the Bankruptcy Court to establish the following briefing schedule for the Sale Hearing:

a. Sale Motion to be filed with the Court no later than August 9, 2023;

b. Objection to the Sale, if any, must be in writing and clearly set forth the grounds for such objection, filed with the Court, and served upon the Trustee and his counsel, counsel to 3507 JNA, and the U.S. Trustee no later than August 16, 2023; and

c. Any reply to be filed no later than August 23, 2023.

Pursuant to Bankruptcy Rule 2002(a), the Trustee proposes the following process whereby the Trustee and/or his agents and representatives, notifies creditors and other possible purchasers of (i) the proposed sale of the Property; (ii) the time and place of the Auction and Sale Hearing; (iii) the terms and conditions of the Sale; and (iv) the deadline for filing any objections:

a. Within three (3) business days of the entry of the Sale and Bid Procedures Order, the Trustee (or his agents and representatives) shall file with the Court and serve by first class mail, the Court's electronic notice, or e-mail the Bid and Sale Notice (**Exhibit 4**) which will include copies of (1) Sale and Bid Procedures Order (**Exhibit 1**), (2) the Sale and Bid Procedures (**Exhibit 2**), and (3) a copy of the Purchase Agreement (**Exhibit 3**).

b. The Bid and Sale Notice and the foregoing related documents will be served upon the following (collectively, the "Notice Parties"): (1) prospective buyers who have expressed interest in purchasing the Property; (2) the Counterparties to the Debtor's executory contracts and unexpired leases; (3) all creditors; and (4) all other the parties served with the Motion above.

A copy of the approved Sale and Bid Procedures will also be published electronically with various commercial property listing services (such as eXp Realty's website or other similar listing services) for the sale of commercial real estate and the data room established for this Sale, and will be provided upon request to Trustee's counsel at the address provided above.

#31344782v3

## VIII.  ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND OTHER AGREEMENTS

In connection with the Sale, 3507 JNA has agreed to assume certain executory contracts and unexpired leases and other agreements set forth in Schedule 1.(a).(5) of the Purchase Agreement as such list may be modified.[12]  The Trustee believes that it is necessary to establish a process by which the Trustee and the counterparties to the Assumed Contracts (each, a "Counterparty") can (i) establish the cure obligations (the "Cure Amounts"), if any, necessary to be paid in accordance with section 365 of the Bankruptcy Code for the assumption of the Assumed Contracts; and (ii) for the Counterparties to assert any objection they may have to such assumption and assignment.

To facilitate a resolution of any disputes relating to the Cure Amounts or to the assignment of the Assumed Contracts in general, the Trustee proposes the following Assumption and Assignment Procedures, which will be incorporated into the Sale and Bid Procedures Order as follows:

a.   By no later than three (3) business days after entry of the Sale and Bid Procedures Order, the Trustee shall file with the Court and serve on all known Counterparties to an Assumed Contract the notice ("Assumption Notice") in substantially the form attached hereto as **Exhibit 5** that sets forth the Schedule of Assumed Contracts as then existing that may be assumed and assigned to the buyer, including the proposed Cure Amount, if any, required pursuant to section 365 of the Bankruptcy Code for their assumption and assignment.

b.   Each Counterparty would then have seven (7) days after service of the Assumption Notice, or such other period set by the Bankruptcy Court, to file and serve upon the Trustee and counsel to the Stalking Horse Bidder any objection setting forth with particularity the grounds for objecting to assumption and assignment of its contract and its asserted proper Cure Amount and documentation supporting such Cure Amount.

c.   The Trustee proposes that the Bankruptcy Court set **August 22, 2023** or such other date set by the Bankruptcy Court as a holding date for a hearing on any such objection to the extent that any objection to the assumption and/or assignment of any Assumed Contract included in the Purchase Agreement cannot be resolved consensually with the Trustee.  If unresolved, a reply shall be filed by August 19, 2023 that includes an explanation of the dispute between the parties.

---

[12] Notwithstanding the listing of an executory contract or unexpired lease or other agreement in the Schedule 1.(a)(5) of Assumed Contracts, 3507 JNA reserves all rights to remove or add to any such designations.

16

#31344782v3

d.  Any Prospective Bidder must identify which contracts or leases to be assumed or modify the list of Assumed Contracts no later than the Bid Deadline ("Assumption Designation Deadline").  Any objection to an executory contract or unexpired lease added to the list of Assumed Contracts after the objection deadline but prior to the Bid Deadline shall be addressed at the Sale Hearing if not resolved prior to the Sale Hearing.

e.  In the absence of a timely objection to the Cure Amount of the proposed assumption and assignment of an Assumed Contract, the Cure Amount set forth in Schedule 1.(a).(5) of the Purchase Agreement shall be controlling (or such lesser amount actually owing) and any Counterparty to an Assumed Contract or other contract in the Schedule of Assumed Contracts will be barred from asserting an inconsistent position in connection with the assumption or assignment of any executory contract or unexpired lease or other agreement; and such Counterparty will be deemed to have consented to the assumption and assignment of such Assumed Contract.

The Trustee shall, at the Sale Hearing, seek authority under section 365 of the Bankruptcy Code for the Trustee and the Estate to (a) assume and assign the Assumed Contracts, effective as of the closing of the Sale, and (b) execute and deliver to 3507 JNA or any other Successful Bidder at the Auction such documents or other instruments as may be necessary to effectuate the assignment and transfer of the Assumed Contracts.

## IX.    SUMMARY OF RELEVANT DATES AND PROPOSED SALE TIMELINE

The Trustee requests that the Court approve the following timeline for the Sale summarized below:

| | |
|---|---|
| Hearing on Sale and Bid Procedures Motion: | **July 28, 2023 at 10:00 a.m.** |
| Serve Notice of Hearing Sale and Bid Procedures Motion: | Not less than seven (7) days prior to the hearing |
| Objection to the Sale and Bid Procedures Motion: | At least one (1) day prior to the hearing |
| Service of the Sale and Bid Notice: | Within three (3) business days of the entry of the Sale and Bid Procedures Order |
| | |
| Service of the Assumption Notice: | Within three (3) business days of the entry of the Sale and Bid Procedures Order |
| Deadline for Counterparties to Object to the list of Assumed Contracts and Cure Amount: | Seven (7) days after service of the Assumption Notice |
| Deadline for Replies to Objection to the list of Assume Contracts and Cure Amounts: | August 19, 2023 |
| Holding Date for hearing objections to Cure Amounts: | August 22, 2023 at 10:00 a.m. |

#31344782v3

|                                        |                              |
|----------------------------------------|------------------------------|
| Service of the Sale Motion:            | No later than August 9, 2023 |
| Deadline to Oppose the Sale Motion:    | August 16, 2023              |
| Reply to Opposition to Sale Motion:    | August 23, 2023              |
| Bid Deadline:                          | August 28, 2023              |
| Auction and Sale Hearing:              | **August 30, 2023 at 10:00 a.m.** |

## X.    **DISCUSSION**

### A.    **The Break-Up Fee Should Be Approved**

The proposed Break-Up Fee to 3507 JNA is fair and reasonable and should be approved by the Court. Payment of a break-up fee is appropriate so long as such payment is a valid exercise of the Trustee's business judgment. Sellers of assets often employ bidding protections in order to encourage the making of bids. Specifically, bid protections like the proposed Break-Up Fee herein "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs.,* L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted). Break-up fees and other arrangements are "important tools to encourage bidding and to maximize the value of the debtor's assets." *In re Integrated Resources*, 147 B.R. 650, 659 (S.D. N.Y. 1992).

Here, the Trustee anticipates that the Break-Up Fee will be no more than 1.5% of the Stalking Horse Bid which is reasonable under the circumstances of this Case, the total value of the Purchase Price, the risk to 3507 JNA as the Stalking Horse Bidder, and the amount of effort and due diligence that need to be conducted in connection with the Sale of this type of commercial real estate and in view of the Estate's settlement with its largest secured creditor. 3507 JNA has and will continue to incur substantial costs, expenses and risks in continuing to make its offer available subject to overbids. Further, the Trustee does not believe that the amount of the Break-Up Fee will chill bidding. Instead, it enables overbidders to better the current offer while at the same time, protecting the interest of the Stalking Horse Bidder. There is no obligation to pay the Break-Up Fee unless the Sale is actually closed with a Successful Bidder other than 3507 JNA, or if the closing with the other Successful Bidder does not occur and there is a forfeiture of the Deposit. In such a case, Trustee believes the Estate will have sufficient funds to cover the Break-Up Fee.

#31344782v3

**B.    The Sale and Bid Procedures are Appropriate.**

Applying Bankruptcy Code § 363, bankruptcy courts frequently have considered and approved auction and sale procedures in advance of a proposed sale of property of the estate.  *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.),* 679 F.2d 774, 775 (9th Cir. 1982) (noting that the district court had required specified minimum overbid amounts, deposits, and the form of purchase agreement to be used by bidders); *In re Crowthers McCall Pattern, Inc.,* 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990)(noting that the bankruptcy court had entered an order requiring that overbids be made in specified minimum increments with deposits); *In re Table Talk, Inc.,* 53 B.R. 937, 943 (Bankr. D. Mass. 1985) (noting that Bankruptcy Code section 363 requires notice and a hearing prior to the establishment of sale and bid procedures for the sale of property of the estate).

To that end, courts have uniformly recognized that establishing sale procedures in advance of the sale hearing itself may facilitate efforts to increase the value ultimately realized by the estate by, among other things: (a) creating a well-defined and orderly forum in which potential bidders are provided a fair opportunity to submit competing offers; (b) ensuring fair comparability among competing bids; and (c) helping to ensure that only serious bidders with the intention of and ability to consummate the transaction are involved in the process. *See generally, In re Financial News Network, Inc.,* 126 B.R. 152, 156 (S.D.N.Y. 1991); *appeal dismissed,* 931 F.2d 217(2d Cir. 1991).

Here, the foregoing factors are met.  The Sale and Bid Procedures: (i) facilitate the identification of Potential Bidders; (ii) provide an open process for the qualification of Qualified Bidders; (iii) establish and identify Initial Overbids and Increased Bid requirements, as well as other provisions for conducting an orderly Auction and system for overbidding; and (iv) establish the process for the consideration and selection of a Qualified Bid as a Successful Bid or Back-Up Bid for the Property.

Furthermore, with the assistance of the Trustee's Brokers, the Trustee is able to discern which bids are viable and consider only those prospective purchasers that are capable of closing.  The Trustee will continue to market the Property to Potential Bidders through at least the date of the Bid Deadline in order to maximize the proceeds received by the Estate.  The Sale and Bid Procedures are designed to establish "ground rules" for the Auction, including rules governing the qualifications to

19

1    become a Qualified Bidder and submit a Qualified Bid; the deadline for the submission of bids; the

2    amount of the minimum overbid, and the time and place of, and procedures governing the Auction,

3    if Qualified Bids are received.  The proposed timeline further facilitates the expeditious closing of

4    the Sale that will enable the Estate to meet the milestones and obtain the benefits of its settlement

5    with Grand Pacific.

6        The Trustee believes that the Sale and Bid Procedures described above establish appropriate

7    parameters under the circumstances of this Case.  In light of the facts of this case, the Sale and Bid

8    Procedures will allow the Bankruptcy Court to conduct the Auction in an orderly, controlled, fair and

9    open fashion that will encourage participation by financially capable bidders.  As such, the Trustee

10   submits that sufficient cause exists to approve the proposed Sale and Bid Procedures and the Auction

11   procedures.

12       **C.**    **The Proposed Assumption and Assignment Procedures for Determining Cure**

13           **Amounts for Assumed Contracts is Appropriate.**

14       The Bankruptcy Court may authorize the assumption and assignment of executory contracts

15   and unexpired leases and other agreements pursuant to sections 105 and 365 of the Bankruptcy Code.

16   The assumption of executory contracts is within the business discretion of the Trustee.  Pursuant to

17   Bankruptcy Code § 365, a trustee, "subject to the court's approval, may assume or reject any

18   executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A trustee's decision to

19   assume an executory contract or unexpired lease is subject to the "business judgment rule," meaning

20   that a trustee's decision to assume an executory contract or unexpired lease should be approved by

21   the Bankruptcy Court if the decision is supported by a sound business reason, with due deference to

22   the trustee's business judgment. *See NLRB v. Bildisco,* 465 U.S. 513, 524 (1984) (providing that the

23   business judgment standard is traditionally applied by courts when deciding if a debtor-in-possession

24   may assume or reject pursuant to section 365(a) of the Bankruptcy Code); *Orion Pictures v. Showtime*

25   *Networks Inc.  (In re Orion Pictures Corp.),* 4 F.3d 1095, 1099 (2d Cir. 1993). A trustee's decision

26   to assume should be accepted, "except upon a finding of bad faith or gross abuse of [the debtor's]

27   business discretion." *Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal*

28   *Finishers, Inc.),* 759 F.2d 1043, 1047 (4th Cir. 1985).

20

Given the conversion of Debtor's case to Chapter 7, the best opportunity for recovery for the Debtor's creditors is through a sale of the Property. The Property has viable leases and contracts that, in the Trustee's opinion, add significant value to the Property. As such, it is important for the Trustee to be able to sell the Property with the ability to assume and assign certain contracts and leases.

Since the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate, the Trustee has determined that the Stalking Horse Bid that includes the Assumed Contracts maximizes the value of the Property for the Estate and its creditors. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc.,* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales with respect to such sales is to obtain the highest price or overall greatest benefit possible for the estate.").

The proposed Assumption and Assignment Procedures herein enable the Trustee to resolve any issues relating to the Cure Amounts and the assumption of such contracts and leases prior to the Sale Hearing. It further allows the Stalking Horse Bidder and other prospective buyers with the finality needed to be able to identify the contracts to be assumed and close the Sale timely. As such, the Trustee requests the Court to approve the proposed Assumption and Assignment Procedures for determining the Cure Amounts for Assumed Contracts.

## XI.    **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order,

1.   Granting the Motion;

2.   Approving the proposed Sale and Bid Procedures and the form of Purchase Agreement attached thereto;

3.   Scheduling the Auction and the Sale Hearing on **August 30, 2023** and approve all other proposed relevant dates set forth in this Motion;

4.   Approving the form and manner of the Bid and Sale Notice;

#31344782v3

5.  Approving the proposed Assumption and Assignment Procedures for assumed contracts and leases;

6.  Approving the Break-Up Fee of $200,000.00 to 3507 JNA as the Stalking Horse Bidder; and

7.  Granting such other and further relief as is fair and equitable.

DATED: July 21, 2023

Respectfully submitted,

DINSMORE & SHOHL LLP

By:   */s/ Lovee D. Sarenas*
    Lovee D. Sarenas
    Jamie Mottola
Counsel to Peter J. Mastan,
Chapter 7 Trustee

#31344782v3

## **DECLARATION OF PETER J. MASTAN**

I, Peter J. Mastan, declare as follows:

1.     I am the duly-appointed chapter 7 Trustee in the within case.

2.     I submit this declaration ("Declaration") in support of the *Motion for the Entry of an Order: (A) Approving Sale and Bid Procedures in Connection with Sale of Real Property Free and Clear of All Interests; (B) Approving the Form and Manner of Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D) Approving Procedures for Determining Cure Amounts for Assumed Contracts; and (E) Approving Break-Up Fee* ("Motion").[1]

3.     The facts stated below are personally known to me, except for those matters based upon information and belief and as to those, I believe them to be true. If called as a witness, I could and would competently testify to the truth of such facts.

4.     After reviewing a number of formal and informal offers, in the exercise of my business judgment, I have decided to select the third party offer of 3507 JNA LLC, a Delaware limited liability company, as buyer and the "Stalking Horse Bidder" ("3507 JNA").  I decided in my business judgment that it was in the best interests of the Estate to select the 3507 JNA offer as the Stalking Horse Bid. I based this business judgment on at least the following:

     i.     I believe the offer of 3507 JNA is in the range of anticipated purchase prices for the Property, and since it is devoid of any financing and other contingencies that may adversely impact a sale, it represents a fair and reasonable price for the Property;

     ii.     the Break-Up Fee is reasonable and, in my estimation, is within the range of acceptable Break-Up Fee in the district;

     iii.     the Sale will enable the Estate to Close a sale within a reasonable time to meet the milestones under its compromise with Grand Pacific;

     iv.     I intend to continue to market the Property in the hopes of securing an overbidder at the Auction to be held concerning the Sale;

---

[1]  Capitalized terms not defined herein shall have the same meaning ascribed to such terms in the Motion or the Sale and Bid Procedures.

#31344782v3

v.      3507 JNA has the financial wherewithal to close the Sale; and

vi.     The first deposit from 3507 JNA has been made is held at Escrow with the second deposit due at the conclusion of due diligence.

5.      I believe that, in the event there are no overbid, 3507 JNA will be able to close.

6.      I am informed and believe that the proposed purchase price exceeds the likely allowed amount of each alleged secured claim against the Property, and that certain aspects of the alleged secured claims may be the subject of bona fide dispute with regard to fees, interest, and the like.

7.      My dealings with 3507 JNA have been at arm's length, and have entailed detailed and serious negotiations. To the best of my knowledge, I have no prior association with any persons or principals of 3507 JNA, and believe the negotiations have been conducted by both parties in good faith. I submit that 3507 JNA qualifies as a "good faith purchaser" within the meaning of the Bankruptcy Code.

8.      From my perspective and in the exercising my business judgment, conducting a sale and auction of the Property in an efficient and expeditious manner will provide the significant value to the Estate.

9.      The proposed Bid and Sale Procedures, submitted with the Motion has been developed with my counsel, and exercising my business judgment, believe them to be fair and reasonable, and designed to ensure that the sale results in receipt of the best possible price for the Property while containing the risk regarding closing.

10.     It is my belief that buyers who are interested in the Property will be able to meet the overbid terms and procedures and meet the deadlines set forth therein. I believe the Motion is in the best interests of the estate and its creditors and parties in interest.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed this 20th day of July 2023, at Los Angeles, California.

Peter J. Mastan

24

#31344782v2

## DECLARATION OF MATTHEW PALUMBO

I, Matthew Palumbo, declare as follows:

1.     I am a commercial real estate broker with EXP Commercial and one of the chapter 7 trustee Peter Mastan's proposed real estate brokers in this Case.

2.     I submit this declaration in support of the *Motion for the Entry of an Order: (A) Approving Sale and Bid Procedures in Connection with Sale of Real Property Free and Clear of All Interests; (B) Approving the Form and Manner of Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D) Approving Procedures for Determining Cure Amounts for Assumed Contracts; and (E) Approving Break-Up Fee* ("Motion").[2]

3.     The facts stated below are personally known to me, except for those matters based upon information and belief and as to those, I believe them to be true. If called as a witness, I could and would competently testify to the truth of such facts.

4.     Along with commercial real estate brokers Lee Johnson and Evangelo Karantonis, the principal of the Debtor Hawthorne Hangar Operations ("Debtor"), Dan Wolfe, previously reached out to us to serve as the Debtor's real estate brokers ("Brokers") and assist with the marketing and selling of HHO's commercial real property generally described as 3507 Jack Northrop Avenue, Hawthorne, CA 90250 and improvements thereon ("Real Property").

5.     HHO had signed a listing agreement with the Brokers to become HHO's listing agents.

6.     As such, I, along with Messrs. Karantonis and Johnson begun the preliminary marketing of the Real Property while the Case was in chapter 11.

7.     In order to begin the sale of the Real Property, the Brokers began creating a marketing strategy and campaign that included reaching out to each of our client base identifying those who may be interested in purchasing the Real Property.

8.     During that time, the Brokers also created a website <www.hawthornehangaroperations.com> to market the Real Property.  The HHO sale information

---

[2]  Capitalized terms not defined herein shall have the same meaning ascribed to such terms in the Motion or the Sale and Bid Procedures.

#31344782v3

and brochure were also blasted worldwide to over 6,000 potential buyers who may be interested in purchasing an FBO or who are in the aviation industry.

9.      The sale listing is featured on eXp Realty's website which has access to over 80,000 agents worldwide and is syndicated through various other commercial real estate websites.

10.     The Brokers have also called owners of similar assets and industrial assets in various municipal airport like Hawthorne Airport and Van Nuys Airport.

11.     On or about May 2, 2023, the Debtor's chapter 11 case was converted to chapter 7 prior to the Court's approval of the Broker's employment.

12.     The Trustee proposes to hire the Brokers to serve as the real estate brokers for the chapter 7 Estate given our experience in selling commercial real estate, and the considerable knowledge that we have acquired about HHO and the Real Property particularly in dealing with the Hawthorne Airport, the City of Hawthorne and the FAA, and the various agreements that involve HHO.

13.     As part of the robust marketing plan, the Brokers are preparing marketing materials to inform potential purchaser of the Real Property in addition to the marketing efforts previously taken. Brokers also intend to show the Real Property to potential buyers, and field offers and interests to procure viable bids for the Auction.

14.     Upon the Bankruptcy Court's approval of the Sale and Bid Procedures, the Brokers will include a copy of the Sale and Bid Procedures in all of the marketing materials, electronic listing services, and the data room.  A copy of the Assumed Contracts will also be posted in the data room for Potential Bidders.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed this____21 day of July 2023, at Los Angeles, California.



_____
Matthew Palumbo

#31344782v3

# EXHIBIT 1

1  Lovee D. Sarenas (SBN 204361)
   lovee.sarenas@dinsmore.com
2  Jonathan Serrano (SBN 333225)
   jonathan.serrano@dinsmore.com
3  Jamie Mottola (SBN 309934)
   Jamie.mottola@dinsmore.com
4  **DINSMORE & SHOHL LLP**
   550 S. Hope Street, Suite 1765
5  Los Angeles, CA  90071
   Telephone:  213.335.7737
6
   Counsel to Peter J. Mastan,
7  Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

10

| | |
|---|---|
| In re: | Case No. 2:23-bk-11789-BR |
| HAWTHORNE HANGAR OPERATIONS, L.P., | Chapter 7 |
| | **ORDER GRANTING THE MOTION AND** |
| Debtor. | **(A) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH SALE OF REAL PROPERTY FREE AND CLEAR OF ALL INTERESTS;** |
| | **(B) APPROVING THE FORM AND MANNER OF NOTICE OF THE BID PROCEDURES;** |
| | **(C) SCHEDULING AN AUCTION AND SALE HEARING;** |
| | **(D) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS FOR ASSUMED CONTRACTS; AND** |
| | **(E) APPROVING BREAK-UP FEE.** |
| | Date:<br>Time:   10:00 a.m.<br>Judge:  Hon. Barry Russell<br>Place:   Courtroom 1668<br>255 East Temple Street<br>Los Angeles, CA 90012 |

A hearing on *Motion for the Entry of an Order: (A) Approving Sale and Bid Procedures in Connection with Sale of Real Property Free and Clear of All Interests; (B) Approving the Form and Manner of Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D) Approving Procedures for Determining Cure Amounts for Assumed Contracts; and (E) Approving Break-Up Fee* ("Motion") [Dkt. No. _____], filed by the chapter 7 trustee Peter J. Mastan ("Trustee") in the above-captioned chapter 7 bankruptcy case ("Case") of the Debtor Hawthorne Hangar Operations, L.P. ("Debtor") was held on July __, 2023 ("Hearing") before the Honorable Barry Russell, United States Bankruptcy Judge, in Courtroom 1668 of the United States Bankruptcy Court, Los Angeles Division. Lovee Sarenas of Dinsmore & Shohl, LLP, appeared on behalf of the Trustee. All other appearances were as noted on the record.

The Court, having reviewed and considered the Motion and the documents filed in support thereof; having heard argument of counsel, the evidence presented in support of the relief requested in the Motion at the Hearing and the record before it; and for other good cause appearing,

**THIS COURT HEREBY FINDS THAT:**

1.       The Bankruptcy Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. § 1408.

2.       The statutory predicates for relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

3.       Due and adequate notice of the Motion and the Sale and Bid Procedures has been given pursuant to Local Bankruptcy Rule 6004-1(b), and no other or further notice of the Motion, the Sale and Bid Procedures or any other form of relief granted herein is or shall be required except as expressly provided in this Order.

4.       The Sale and Bid Procedures, in the form attached hereto as **Exhibit 1** ("Sale and Bid Procedures"), are fair, reasonable and appropriate under the circumstances of this Case.

5.       The form of notice regarding the bid deadline, the auction and the proposed sale ("Bid and Sale Notice") attached hereto as **Exhibit 2** is reasonably calculated to provide all

1

interested parties with timely and proper notice of the Sale and Bid Procedures, the Bid Deadline, the Auction, and the Sale Hearing.

6.      The Assumption and Assignment Procedures and the form of notice to Counterparties of the Assumed Contracts provided in accordance with the Assumption and Assignment Procedures ("Assumption Notice") attached hereto as **Exhibit 3** are reasonably calculated to provide Counterparties to the Assumed Contracts with the opportunity to respond and with proper notice of the intended assumption and assignment of their executory contracts, unexpired leases or other agreements, any Cure Amounts relating thereto and the Assumption and Assignment Procedures.

7.      The Trustee has established facts to support approval of the Break-Up Fee in the amount of $200,000.00 to 3507 JNA, LLC as the Stalking Horse Bidder ("3507 JNA" or "Stalking Horse Bidder") as provided in the Motion, the Agreement of Purchase and Sale ("Purchase Agreement") and the Sale and Bid Procedures.  The amount of the Break-Up Fee is reasonable, equitable, and appropriate in view of the size and nature of the proposed Sale, the efforts that have been and will be expended by 3507 JNA in connection with the Sale of the Property, and the risk involved in becoming the Stalking Horse Bidder under the circumstances in this Case.

8.      All other findings are set forth on the record.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted in its entirety.

2.      Any and all objections to the relief requested in the Motion and/or entry of this Order that have not been withdrawn, waived or settled or not otherwise addressed herein or at the hearing are hereby overruled.

3.      The Agreement of Purchase and Sale ("Purchase Agreement"), attached hereto as **Exhibit 4**, which is in substantially the form as filed by the Trustee in connection with the Hearing, is hereby approved in its entirety for use in connection with the Auction, the Sale, and the Sale and Bid Procedures.  Final approval of the Purchase Agreement and Sale to the Stalking Horse Bidder or the Successful Bidder at the Auction based on a higher or better bid, shall be made by the Bankruptcy Court at the Sale Hearing.

**A.**     <u>Bid Procedures</u>

    4.       The form of the Bid and Sale Notice is approved.

    5.       The Sale and Bid Procedures are hereby approved and shall govern the Bidding, Auction and Sale processes.  Bids that do not conform to the Sale and Bid Procedures will not be considered for participation in the Auction. The Trustee is authorized to take any and all actions necessary or appropriate to implement the Sale and Bid Procedures.

    6.       The deadline to submit Bids and Qualified Bids (as defined in the Sale and Bid Procedures) shall be **5:00 p.m. (prevailing Pacific Time) on August 28, 2023** (the "<u>Bid Deadline</u>").

    7.       If a timely and conforming Qualified Bid other than the Stalking Horse Bid under the Purchase Agreement is received by the Bid Deadline, the Auction shall take place on **August 30, 2023** commencing at \_\_\_\_ **a.m./p.m.** in Courtroom 1668 of the United States Bankruptcy Court for the Central District of California - Los Angeles Division located at 255 E. Temple Street, Courtroom 1539, Los Angeles, CA 90012.  If the only Qualified Bid received at the expiration of the Bid Deadline is the Stalking Horse Bid, no Auction will take place and the Trustee will seek authority to consummate the transactions with 3507 JNA contemplated by the Purchase Agreement at the Sale Hearing.

    8.       This Order is deemed to be the Sale and Bid Procedures Order as provided in the Purchase Agreement.

**B.**     <u>Sale Hearing</u>

    9.       The Sale Hearing shall be held before this Court on **August 30, 2023** at \_\_\_\_ **a.m./p.m.**, in conjunction with the Auction in Courtroom 1668 of the United States Bankruptcy Court for the Central District of California - Los Angeles Division located at 255 E. Temple Street, Courtroom 1539, Los Angeles, CA 90012 whereby this Court will consider approval of the Sale of the Property 3507 JNA or to the Successful Bidder at the Auction.

    10.       The Sale Motion shall be filed no later than **August 9, 2023** and shall be served on all appropriate parties under the applicable Bankruptcy Rules including those prospective buyers who have expressed interest in purchasing the Property and all known Counterparties to the Assumed Contracts.

Exhibit 1, page 31

11.     Objections, if any, to the Sale of the Property (as defined in the Purchase Agreement) or opposition to the Sale Motion must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Bankruptcy Rules, (d) be filed with the Bankruptcy Court and served on the Trustee, his counsel, and counsel to the Stalking Horse Bidder, and all other parties in interest, so as to be actually received no later than **August 16, 2023**, provided, however, that objections to the assumption and assignment of the Assumed Contracts and the proposed Cure Amounts shall be filed in accordance with the Assumption and Assignment Procedures set forth herein.

12.     The failure of any objecting person or entity to timely file its objection shall be a bar to the assertion of any objection to the Motion and the consummation and performance of the Sale, and shall be deemed to constitute such party's consent to the Sale and the transactions and documents related thereto.

13.     Any reply to an objection to the Sale shall be filed no later than **August 23, 2023**.

14.     Within three (3) business days of the entry of this Sale and Bid Procedures Order, the Trustee (or his agents or representatives) shall serve by first class mail, e-mail or via the Court's electronic noticing, copies of (1) the Bid and Sale Notice; (2) this Order; (3) the Sale and Bid Procedures; and (3) a copy of the Purchase Agreement upon:

(a)     prospective buyers who have expressed interest in purchasing the Property;

(b)     the contractual parties to the Debtor's executory contracts and unexpired leases;

(c)     all creditors; and

(d)     all other the parties who were served with the Sale and Bid Procedures Motion (collectively, the "Notice Parties").

C.     **Assumption and Assignment Procedure**

15.     The form of the Assumption Notice is hereby approved.  The schedule of Assumed Contracts and the Cure Amounts attached to the Assumption Notice may be modified pursuant to the procedure set forth in the Motion.

4

16.    The following Assumption and Assignment Procedures ("Assumption and Assignment Procedures") shall govern the assumption and assignment of Assumed Contracts in connection with the Sale of the Property:

(a)    Within three (3) business days of the entry of this Sale and Bid Procedures Order, the Trustee (or his agents or representatives) shall file and serve on all known Counterparties to an Assumed Contract the Assumption Notice, including the schedule of Assumed Contracts (Schedule 1.(a).(5) to the Purchase Agreement) attached thereto as then existing that may be assumed and assigned to the Buyer, including the proposed Cure Amounts (as defined in the Motion), if any, required pursuant to Bankruptcy Code § 365 for their assumption and assignment.

(b)    Each Counterparty to an Assumed Contract shall have seven (7) days from the service of the Assumption Notice to file and serve upon the Trustee, his counsel, and counsel to the Stalking Horse Bidder any objection setting forth with particularity the grounds for objecting to assumption and assignment of its contract and its asserted proper Cure Amount with documentation supporting such Cure Amount.  Any objection to an executory contract or unexpired lease added to the list of Assumed Contracts by the Stalking Horse Bidder or any Qualified Bidder after the opposition period but prior to the Bid Deadline shall be addressed at the Sale Hearing if not resolved prior to the Sale Hearing.

(c)    The holding date to hear any such unresolved objection shall be on **August 22, 2023 at _____ a.m./pm.**

(d)    A reply that provides an explanation of the dispute between the parties shall be filed no later than **August 19, 2023.**

(e)    In the absence of any timely objection to the Cure Amount of the proposed assumption and assignment of an Assumed Contract, the Cure Amount set forth in Schedule 1.(a).(5) of the Purchase Agreement shall be controlling (or such lesser amount actually owing) and any Counterparty to an executory contract or unexpired lease or other agreement in the Schedule of Assumed Contracts will be barred from asserting an inconsistent position in connection with the assumption or assignment of any executory contract or unexpired lease or other agreement; and such

Counterparty will be deemed to have consented to the assumption and assignment of such Assumed Contract.

17.     This Order is without prejudice to additional authorizations for the Trustee to implement and administer the Sale which may be ordered or approved in the Sale Order as part of approval of the Sale or any other order of the Bankruptcy Court.

18.     The amount of the Break-Up Fee of $200,000.00 to 3507 JNA as the Stalking Horse Bidder is hereby approved and the Trustee is authorized, but not directed, to pay to 3507 JNA such Break-Up Fee in accordance with the terms of the Purchase Agreement.

19.     The Trustee and his agents and representatives are authorized to take all actions as contemplated by the Sale and Bid Procedures as necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and the Sale and Bid Procedures including receiving Bids and Bid Packages and reporting the information relating thereto as set forth in the Sale and Bid Procedures.

20.     The dates, docket numbers and applicable deadline to be inserted into the Bid and Sale Notice, the Assumption Notice and/or the Sale and Bid Procedures reentry of this Order may be inserted into the respective documents without the need for further approval of such documents.

21.     The Bankruptcy Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including but not limited to any matter, claim or dispute arising from or relating to the Sale and Bid Procedures, the Auction, or the Sale.

###

1

## **EXHIBIT 1**

**Sale and Bid Procedures**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **EXHIBIT 2**

**Bid and Sale Notice**

# EXHIBIT 3

**Assumption Notice**

# **EXHIBIT 4**

## **Purchase Agreement**

# EXHIBIT 2

## SALE AND BID PROCEDURES

The following sale and bid procedures (the "Bid Procedures") govern the sale (the "Sale") of certain assets of the estate (the "Estate"), and defined as the "Property" in the Agreement of Purchase and Sale dated as of July 12, 2023, as at any time amended or modified (the "Purchase Agreement"), between 3507 JNA LLC, a Delaware limited liability company ("3507 JNA") and Peter J. Mastan, in his capacity as the duly appointed chapter 7 trustee of the Debtor Hawthorne Hangar Operations, L.P.'s ("Debtor") chapter 7 bankruptcy case, pending as Case No. 2:23-bk-11789-BR (the "Bankruptcy Case") before the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). By order of the Bankruptcy Court, these Bid Procedures have been approved and are applicable to all bidders and bids, with any proposed Sale of the Property to be subject to the final approval of the Bankruptcy Court pursuant to Title 11 of the United States Code (the "Bankruptcy Code").[1]

## I.    THE PROPERTY

**A.**    The Property is comprised of all of the Estate's right, title and interest in and to the real property owned by the Estate and generally referred to as 3507 Jack Northrop Avenue, Hawthorne, CA 90250 ("Real Property") and all other assets identified and as more particularly described in the Purchase Agreement. Notwithstanding the foregoing, expressly excluded from Property are claims, causes of action and rights of recovery pursuant to sections 544 through 550 and section 553 of the Bankruptcy Code and other Excluded Property as defined in the Purchase Agreement.[2]

**B.**    The Property, as more particularly described in the Purchase Agreement, is to be sold in a single transaction at the auction provided for under these Bid Procedures (the "Auction"), subject to competitive bidding in accordance with these Bid Procedures and Bankruptcy Court approval.

**C.    "AS IS, WHERE IS".** THE SALE OF THE PROPERTY WILL BE ON AN "AS IS, WHERE IS" BASIS AND WITH ALL FAULTS AND WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND, NATURE, OR DESCRIPTION, EXPRESS OR IMPLIED, BY THE DEBTOR, ITS ESTATE, THE TRUSTEE, OR THEIR RESPECTIVE AGENTS WITH RESPECT TO THE PROPERTY INCLUDING, WITHOUT LIMITATION, THE ACTUAL NATURE, QUALITY, QUANTITY, OWNERSHIP, THE LOCATION OR VALUE OF THE PROPERTY AND THE EXISTENCE, MERCHANTABILITY, QUALITY, USABILITY, THE VALUE, AND CONDITION OF THE FUEL, OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR THE EXISTENCE OR AMOUNT OF ACCOUNTS, LIABILITIES, ASSUMED LIABILITIES AND CONTRACTS, LIENS, CLAIMS OR ENCUMBRANCES.

NONE OF THE DEBTOR, THE TRUSTEE NOR THEIR RESPECTIVE COUNSEL, PROFESSIONALS, BROKERS, OFFICERS, EMPLOYEES, REPRESENTATIVES OR AGENTS MAKES ANY REPRESENTATION OR WARRANTY REGARDING THE PROPERTY, OR REGARDING THE DEBTOR, THE DEBTOR'S OPERATIONS, ASSETS,

---

[1] All dates set forth herein are subject to Bankruptcy Court approval and may be revised by the Bankruptcy Court.
[2] The Purchase Agreement, as defined herein, shall contain the definitive and controlling list of the Property and the Excluded Property. The description of such Property and the Excluded Property in these Bid Procedures is intended solely for informational purposes.

#31355215v9

Exhibit 2, page 40

**LIABILITIES, CONTRACTS, LIENS OR FINANCIAL CONDITION PROVIDED TO A POTENTIAL BIDDER, QUALIFIED BIDDER, SUCCESSFUL BIDDER OR BACK-UP BIDDER IN CONNECTION WITH THE BID PROCEDURES SET FORTH HEREIN, THE SALE, THE AUCTION, OR THE PROPERTY. CONSEQUENTLY, NO REPRESENTATION IS MADE BY THE DEBTOR, THE TRUSTEE OR THEIR RESPECTIVE COUNSEL, PROFESSIONALS, BROKERS, OFFICERS, EMPLOYEES, REPRESENTATIVES OR AGENTS REGARDING THE ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH OR RELATED TO THESE BID PROCEDURES, THE PROPERTY, THE AUCTION, OR THE SALE AND ALL INTERESTED PARTIES ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.**

       **D.**      The Sale must be entirely for cash consideration, except as expressly provided otherwise herein or in the Purchase Agreement.

       **E.**      <u>Sale Free and Clear.</u> All of the right, title, and interest in and to the Property will be sold free and clear of all interests, claims and encumbrances thereon or therein of an entity other than the Estate, (collectively, the "Liens") with the exception of the "<u>Assumed Liabilities</u>" and "<u>Conditions of Title</u>" (as defined in the Purchase Agreement), except as otherwise set forth herein.

       After closing of the Sale, Liens will attach to any net cash proceeds from the Sale of the Property, in the order of their priority, with the same validity, force, and effect which they now have against the Property.

       **F.**      <u>Purchase Agreement.</u> Except as otherwise set forth herein, any Sale will be made only under the same or substantially identical on both terms and conditions as set forth in the form of the Purchase Agreement with 3507 JNA and attached to the order setting these bid procedures (the "<u>Sale and Bid Procedures Order</u>"). The Purchase Agreement may be obtained by any Potential Bidder (as defined below) by contacting the Trustee's counsel as follows: Lovee D. Sarenas, Esq., Dinsmore & Shohl LLP, 550 S. Hope Street, Suite 1765, Los Angeles, CA 90071, Telephone: 213-335-7737, Facsimile: 213-335-7740, e-mail: lovee.sarenas@dinsmore.com.

       **G.**      <u>Executory Contracts and Unexpired Leases.</u> The Purchase Agreement shall set forth each executory contract and unexpired lease and/or other agreement or permits to be assumed and assigned to the purchaser pursuant thereto, and the estimate of any cure payment amount required for same. Contract counterparties shall have the opportunity to object to the assumption and/or assignment of any such executory contract or unexpired lease and/or other agreement and to the proposed cure amount related thereto, and to the extent not resolved consensually prior to the Sale Hearing (as defined below), the Bankruptcy Court shall resolve any such objection at the Sale Hearing (or other date set by the Bankruptcy Court).

2

## II.      STALKING HORSE BIDDER

**A.**      Stalking Horse Bidder and Purchase Price. 3507 JNA is the stalking horse bidder (the "Stalking Horse Bidder") and the purchaser under the Purchase Agreement to purchase the Property for Thirteen Million Three Hundred Fifty Thousand Dollars ($13,350,000.00), and such amount is the starting bid (the "Starting Bid" or "Purchase Price").  The Purchase Price also includes other components, including Assumed Contracts (as defined in the Purchase Agreement). The Starting Bid is subject to overbid and an auction as set forth herein as well as Bankruptcy Court approval.

**B.**      For the purposes of these Bid Procedures, subject to 3507 JNA paying the Deposit as defined and required under the Purchase Agreement, 3507 JNA is a "Qualified Bidder" (as defined herein).

**C.**      Break-Up Fee.  Subject to approval of the Bankruptcy Court, in recognition of 3507 JNA's expenditure of time, energy and resources as the Stalking Horse Bidder, if 3507 JNA is not deemed the Successful Bidder pursuant to the approved overbid procedures and the Sale of the Property does not close with 3507 JNA but closes with another designated Successful Bidder, 3507 JNA will be paid a fixed break-up fee of Two Hundred Thousand Dollars ($200,000.00) ("Break-Up Fee").  In the event 3507 JNA is entitled to the Break-Up Fee, the Break-Up Fee shall be paid to 3507 JNA at the time of the closing of the Sale or within ten (10) business days after the forfeiture and release of the Deposit (or portion thereof) to the Trustee or the Estate, whichever occurs first. The Break-Up Fee is an administrative expense of the Estate.

## III.      DUE DILIGENCE

**A.**      Neither the Debtor, the Trustee, nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Property except as ordered by the Bankruptcy Court. Each interested bidder (a "Potential Bidder") is free to review filings made in the Bankruptcy Case and other public filings and information as it desires; provided, nothing herein precludes the Debtor, the Trustee or any other person or entity in their discretion from voluntarily providing information either through an established electronic data room or other means, or access to the Real Property to Potential or Qualified Bidders.[3]

**B.**      Each Potential Bidder, Qualified Bidder, Successful Bidder, Or Back-Up Bidder shall be deemed to acknowledge that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Property, or the completeness of any information provided in connection with the bidding process.

## IV.      BID PACKAGE AND DEADLINE

**A.**      Bid Deadline. Except as set forth in Article V hereof, a Potential Bidder that desires to make a Bid shall deliver written copies of its completed Bid Package to the (1) Trustee at peter.mastan@dinsmore.com; (2) his counsel, Lovee Sarenas, at lovee.sarenas@dinsmore.com; and (3) his brokers, Matthew Palumbo at matthew.palumbo@expcommercial.com, Lee Johnson at lee@leejohnsonre.com, and Evangelo Karantonis at evangelo.karantonis@gmail.com not later than **5:00**

---

[3] No such information, if any, shall act as a representation or warranty of any kind and shall not affect or modify the "AS IS, WHERE IS" nature of the Sale as provided in Article I.C above.

#31355215v9

**p.m. prevailing Pacific Time on August 28, 2023** (the "Bid Deadline").  Hard copies of the Bid Package may be delivered to:  Dinsmore & Shohl, LLP, 550 S. Hope Street, Suite 1765, Los Angeles, CA 90071, Attn.: Lovee Sarenas.  A bid will not be considered by the Trustee, and will not qualify as a Qualified Bid, unless the Bid Package is actually received by the Trustee on or prior to the Bid Deadline, either electronically or hard copy, and includes evidence of the completion of the wire transfer or delivery of the cashier's check for the Deposit (as defined herein).

      **B.**    Initial Overbid Amount. In order for a Potential Bidder's initial bid to purchase the Property (each an "Initial Overbid") to qualify as a "Qualified Bid", the Initial Overbid must be **at least Thirteen Million Six Hundred Fifty Thousand Dollars ($13,650,000.00)** which includes the Purchase Price, the amount of the Break-Up Fee, and the overbid amount of at least $100,000.  For clarity purposes, no Qualified Bid shall provide for a credit bid of a Break-up Fee.

      **C.**    Qualified Bid Requirement(s).  Only bids submitted in writing along with the following documents in the Bid Package by the Bid Deadline may be considered a "Qualified Bid:

      **1.**    Bid Packages. In order for an Initial Overbid to qualify for consideration, such Bid must also consist of the following information and items (collectively, the "Bid Package") and be delivered to the Trustee in accordance with Article IV.A. so that it is actually received no later than the Bid Deadline, without extension:

      **a.**    Copy of Purchase Agreement. A written offer in the form of the Purchase Agreement executed by the Potential Bidder or its duly-authorized representative (if an entity), to acquire the Property for an exact amount of consideration, in U.S. Dollars, which must:

      **i.**    provide that such consideration is payable by wire transfer at closing of the Sale;

      **ii.**    be unconditional, save and except for Bankruptcy Court approval, and without limiting the generality of the foregoing, must not be conditioned upon acceptance of one or more other bids, financing or additional due diligence, and shall not entitle the Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or compensation;

      **iii.**    be for the entirety of the Property as described in the Purchase Agreement; and

      **iv.**    contain the same or substantially identical terms and conditions as the Purchase Agreement except as modified by these Bid Procedures, or such "other" terms as determined by the Bankruptcy Court.

      **b.**    A "redlined" or otherwise marked copy of the Purchase Agreement reflecting any revisions, changes and differences made to conform the Purchase Agreement to the Potential Bidder's Purchase Agreement, provided that such Potential Bidder's Purchase Agreement shall not be effective until, if applicable, such overbidder is declared the Successful Bidder or Backup Bidder (and the Purchase Agreement may be required to be conformed to the Successful Bid or Backup Bid) as provided in these Bid Procedures.

      **c.**    The Potential Bidder's written, binding commitment that:

4

      **i.**      the Initial Overbid, including the Deposit, is irrevocable until the closing of the Sale to the Successful Bidder;

      **ii.**      it agrees to keep its Initial Overbid confidential except to the extent that disclosure is expressly contemplated or provided in these Bid Procedures;

      **iii.**      if the Potential Bidder is deemed a Qualified Bidder and is selected as the Successful Bidder, such Qualified Bidder is ready, willing and able to close on the purchase of the Property with no contingencies whatsoever, other than Bankruptcy Court approval of the transaction;

      **iv.**      that Potential Bidder is prepared to consummate the Sale transaction by no later than two (2) days following the date on which all closing conditions have been satisfied, which such Sale consummation closing date shall be no later than September 15, 2023; and

      **v.**      if the Qualified Bidder is selected as the Backup Bidder, then should the Sale to the Successful Bidder fail to close for any reason and the Trustee notifies the Backup Bidder that it has elected to sell the Property to the Backup Bidder then the Backup Bidder is ready, willing and able to close on the purchase of the Property with no contingencies whatsoever other than Bankruptcy Court approval of the transaction, within two (2) business days of receipt of written notice from the Trustee of such election.

      **d.**      Satisfactory financial information (as determined in the Trustee's sole discretion) demonstrating an ability to close and consummate the transaction proposed under the Initial Overbid and to perform all obligations associated therewith:

      **i.**      recent financial statements of the Potential Bidder (or if the Potential Bidder is an entity recently formed for the purpose of acquiring the Property, current financial statements of one or more direct or indirect equity holder(s) of the Potential Bidder), current audited financial statements, a non-contingent financing commitment from an accredited financial institution, copies of current statements or correspondence from a bank or other accredited financial institution evidencing that the Potential Bidder has sufficient liquid assets available to consummate the Sale and to perform all ongoing obligations associated therewith (together with a certification under oath that such assets shall not be withdrawn until the closing of the Sale (if the Potential Bidder is the Successful Bidder or Backup Bidder) or until after the Auction (if the Bidder is not the Successful Bidder or Backup Bidder), as applicable), or other evidence reasonably satisfactory to the Trustee; and

      **ii.**      such other or alternative financial disclosure acceptable to the Trustee (including evidence that the Potential Bidder has adequate resources to close the transaction) which demonstrates the financial capability of the Potential Bidder to both consummate the Sale through its specific Bid and provide "adequate assurance of future performance," within the meaning of § 365(f)(2)(B) of the Bankruptcy Code, in relation to any Assumed Contracts and Assumed Liabilities (as defined in the Purchase Agreement) and to be assigned to such Potential Bidder under the proposed transaction.

      **iii.**      Without limiting the foregoing, evidence of financial capability means at a minimum the provision of documentation establishing the unconditional availability of funds or unconditional loan commitments to the Potential Bidder sufficient to pay the Initial Overbid consideration in cash.

#31355215v9

       **e.**     Evidence that the Potential Bidder has obtained the requisite internal capacity and legal authorizations and approvals necessary to consummate the proposed transaction without the necessity of obtaining the consent of any other person or entity;

       **f.**     A written statement identifying all of the Potential Bidder's (including its officers, directors, shareholders, affiliates, general partners, limited partners, managing members, managers, financial partners, and/or members, as applicable) connections (if any) with the Debtor, its principal, Dan Wolfe, the Debtor's creditors, the Trustee, and any other party in interest in the Bankruptcy Case known to the Potential Bidder;

       **g.**     A written statement setting forth any post-closing relationship or connection the Potential Bidder contemplates having with the Debtor (including any officer, director, shareholder, member, insider or affiliate of the Debtor);

       **h.**     A cashier's check made payable to the Trustee, as representative of the Estate for purposes of these Bid Procedures, or a wire transfer, in an amount of Five Hundred Thousand Dollars ($500,000.00) (the "Deposit"). Wire instructions shall be provided upon request. The Deposit of the Potential Bidder shall be applied to the Successful Bid amount upon the closing of the Sale if the Potential Bidder is the Successful Bidder.  Among other things, the Bankruptcy Court's order approving these Bid Procedures shall expressly provide for the Bidder's forfeiture of the Deposit if:

       **i.**     the Potential Bidder is determined to be a Qualified Bidder and withdraws its Initial Overbid or withdraws any Increased Bid (defined below) before the announcement of the Successful Bidder and Backup Bidder;

       **ii.**     the Qualified Bidder is determined to be the Successful Bidder and attempts to modify or withdraw its Initial Overbid or any Increased Bid without closing the Sale transaction pursuant to such Successful Bid or order of the Bankruptcy Court;

       **iii.**     the Qualified Bidder is determined to be the Backup Bidder and attempts to modify or withdraw its designated Backup Bid prior to closing on the Sale, unless the Sale shall have closed with the Successful Bidder; or

       **iv.**     the Successful Bidder or Backup Bidder, as applicable, fails to close without any fault of the Trustee or the Estate.

The Deposit shall be returned to the Potential Bidder if (i) the Potential Bidder is determined not to be a Qualified Bidder, (ii) the Qualified Bidder is determined not to be the Successful Bidder or Backup Bidder, or (iii) the Qualified Bidder is determined to be the Backup Bidder and the Sale is closed with the Successful Bidder. Deposits shall be returned, as applicable, interest free, within five (5) business days following the Auction, provided however, that in the case of the Backup Bidder, its Deposit shall be returned, interest free, within five (5) business days of the closing of the Sale to the Successful Bidder.

       **i.**     A completed "Bidder Information Sheet" in the form of Exhibit "1" attached hereto.

**D.**      Form of Purchase Agreement Required.  In addition to the foregoing requirements, the Initial Overbid and Potential Bidder's Purchase Agreement (i) shall not contain terms that are materially more burdensome or conditional than the terms of the Purchase Agreement, (ii) shall not be conditioned on the Potential Bidder obtaining financing or additional due diligence, and (iii) shall not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment.

## V.    QUALIFIED BIDDERS

**A.**      Subject to the discretion of the Trustee, only those Potential Bidders who submit a Bid Package in compliance with all of the foregoing requirements on or before the Bid Deadline shall be entitled to have their respective Qualified Bid considered by the Trustee and such Potential Bidder deemed a "Qualified Bidder". Each Qualified Bidder shall be notified of such designation by the Trustee.  A Potential Bidder who timely submits a written bid but fails to satisfy all of the above requirements shall be promptly notified by the Trustee and given an opportunity to promptly cure such defects to the satisfaction of the Trustee, in his reasonable discretion. Only Qualified Bidders with Qualified Bids shall be allowed to participate at the Auction.  Subject to 3507 JNA paying the "Deposit" as required under the Purchase Agreement, 3507 JNA is deemed a Qualified Bidder. The Bankruptcy Court shall reserve jurisdiction to determine whether any Potential Bidder is a Qualified Bidder and whether any Initial Overbid is a Qualified Bid.

## VI.    THE AUCTION

**A.**      Time and Place of Auction. The Auction will occur only if more than one Qualified Bid for the Property is received by the Trustee by the Bid Deadline. If no Qualified Bid is made other than the deemed Qualified Bid made by 3507 JNA,[4] such Qualified Bid (i.e. the 3507 JNA Bid) shall be submitted to the Bankruptcy Court for approval at the Sale Hearing without the need for an Auction.

**1.**      If an Auction is held, the Auction will be conducted on _____, 2023, at 10:00 a.m., prevailing Pacific Time, at the Bankruptcy Court before the Honorable Barry Russell, United States Bankruptcy Court, Central District of California, 255 East Temple Street, Courtroom 1668, Los Angeles, California 90012. Attendance at the Auction must be in person by an authorized representative.

**B.**      Auction Procedures. The Bankruptcy Court will conduct the Auction in the manner that it determines is likely to result in the highest, best, or otherwise financially superior offer(s) for the Property taking into account the circumstances of the Case. Notwithstanding the foregoing, the Trustee reserves the right to reject any bid that he, in his unfettered exercise of his discretion, believes is neither a better or higher bid.  In conducting the Auction, the following procedures (collectively, the "Auction Procedures") shall apply:

**1.**      Prior to the Auction, the Trustee shall provide all Qualified Bidders with the amount of what the Trustee considers to be the highest or best Initial Overbid received, as determined by the Trustee taking into account all matters as the Trustee deems relevant (including price, including the cash and other

---

[4] Subject to its payment of the "Deposit" as required under the Asset Purchase Agreement, 3507 JNA is deemed a Qualified Bidder, its proposed purchase under the Asset Purchase Agreement is deemed a Qualified Bid, and it is not required to submit a Bid Package.

7

consideration, modifications to the Purchase Agreement, closing risk, risk of delay, financial condition and such other factors as the Trustee may deem relevant) (the "Qualified Opening Bid"), and the need to qualify for at least that amount in order to participate in the Auction. Qualified Bidders must qualify up to the amount of the Qualified Opening Bid in order to attend the Auction. Qualified Bidders who submit an Increased Bid above the level to which they have demonstrated financial capability to consummate a transaction to the satisfaction of the Trustee may be required to provide proof of their ability to consummate the Increased Bid prior to acceptance of such an Increased Bid. All Qualified Bidders are encouraged to prequalify to the amount for which they may wish to bid.

2.    At the outset of the Auction, the Trustee shall advise the Bankruptcy Court of the Qualified Opening Bid determined by the Trustee to be the highest or best Qualified Opening Bid received, taking into account all relevant factors. The Bankruptcy Court shall then confirm the Trustee's determination so long as such determination is reasonable.  Qualified Bidders will be permitted to submit successive bids more than their Initial Overbids or the last highest Increased Bid at the Auction (each subsequent increased bid, an "Increased Bid"), provided however that:

a.    The minimum amount of increased consideration required for each successive Increased Bid (the "Minimum Bid Increment") after the Initial Overbid will be $50,000;

b.    Qualified Bidders are free to submit an Increased Bid in an amount in excess of the Minimum Bid Increment; and

c.    Qualified Bidders may submit Increased Bids at the Auction by submitting the Increased Bid amount to the Trustee and the Bankruptcy Court verbally at the Auction.

3.    Any party in interest in the Bankruptcy Case may challenge whether any Potential Bidder is a Qualified Bidder and whether any bid is a Qualified Bid; provided that subject to the terms of the Purchase Agreement, 3507 JNA is deemed to be a Qualified Bidder and to have made a Qualified Bid that shall not be challenged.

4.    The Auction shall commence with the Qualified Opening Bid as confirmed or determined by the Bankruptcy Court. The Trustee and/or the Bankruptcy Court may limit a Qualified Bidder's time to submit a next Increased Bid as determined reasonable by the Trustee or the Bankruptcy Court. All incremental Increased Bids at Auction shall be made and received in one room, on an open basis, and all Qualified Bidders shall be entitled to be present for all bidding with the understanding that the amount of each Increased Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.  Trustee may, in his reasonable business judgment, announce increases or reductions to the Increased Bid amounts at any time during the Auction.

5.    The Qualified Bidder with the highest or best final Increased Bid for the Property at the close of the Auction (the "Successful Bid"), as determined by the Trustee but subject to confirmation by the Bankruptcy Court, shall be the "Successful Bidder." The Bankruptcy Court's final determination of what constitutes the first and second "highest or best" bids will be based upon the exercise of the Trustee's and the Bankruptcy Court's discretion and may take into consideration price (including the cash and other consideration under the Purchase Agreement), modifications to the Purchase Agreement, closing risk, risk of delay, financial condition, and such other factors as the Trustee and/or the Bankruptcy Court may deem relevant. The Successful Bid shall remain open, irrevocable and binding on the Successful Bidder until

8

the closing of the Sale and shall be deemed withdrawn only in the event it is not approved by the Bankruptcy Court.

**6.**      The Qualified Bidder having the next highest Increased Bid below the Successful Bid (the "Backup Bid") shall be the "Backup Bidder" as determined and confirmed by the Bankruptcy Court.  The Backup Bid shall remain open, irrevocable and binding on the Backup Bidder until the closing of the Sale to the Successful Bidder.

**7.**      No Successful Bid or Backup Bid is binding on the Trustee or the Estate until the Bankruptcy Court enters an Order approving the Sale of the Property to the Successful Bidder / Backup Bidder.

**8.**      Bids attempted to be made after the Bankruptcy Court closes the Auction are automatically disqualified.

**9.**      At the conclusion of the Auction, the Trustee shall declare, and the Court shall confirm, the identity of the Successful Bidder and the Backup Bidder to all parties present at the Auction.

**10.**      The Bankruptcy Court, in consultation with the Trustee, may adopt such other Auction procedures that, in the Bankruptcy Court's reasonable judgment, will best promote the goal of a fair and competitive bidding process consistent with these Bid Procedures and any applicable Bankruptcy Court orders.

**11.**      At the conclusion of the Auction:

**a.**      The Successful Bidder and the Backup Bidder shall modify and execute the Purchase Agreement to be consistent with the results of the Auction promptly after the Auction (and no later than two (2) days thereafter); and

**b.**      If the Successful Bidder (or Backup Bidder in the event the Successful Bidder defaults) fails to close without fault of the Trustee under the terms of the Purchase Agreement, the Estate shall retain the Deposit.

## VII.    SALE HEARING

**A.**      The Trustee shall file a motion for approval of the Sale of the Property, subject to the completion of the sale process set out in these Bid Procedures (the "Sale and Bid Procedures Motion"). The Bankruptcy Court will hold a hearing to approve the Sale (the "Sale Hearing") immediately after conclusion of the Auction, at which hearing it will consider approval of the Sale to the Successful Bidder at the Auction.

#31355215v9

Exhibit 2, page 48

## VIII.    MISCELLANEOUS

**A.**    A party's participation in the sale process outlined herein shall constitute: (i) consent by such party to be subject to the jurisdiction of the Bankruptcy Court, for all purposes, in connection with any and all matters relating to the Sale of the Property and these Bid Procedures; and (ii) the party's acknowledgment of its review, understanding and acceptance of all of the Bid Procedures outlined herein.

## IX.    BIDDER'S ACKNOWLEDGEMENTS OF TRUSTEE'S FIDUCIARY OBLIGATION

**A.**    Nothing in these Bid Procedures shall require Trustee or the Estate to take any action or to refrain from taking any action with respect to these Bid Procedures when Trustee determines, based on the advice of his professionals, that taking such action or refraining from taking such action, as applicable, is required to comply with applicable law or fiduciary obligations under applicable law.

#31355215v9

**EXHIBIT "1"**

**BIDDER INFORMATION SHEET**

The following information is hereby provided by the Potential Bidder (identified below) in accordance with the Bid Procedures approved by order of the United States Bankruptcy Court for the Central District of California in the case of Hawthorne Hangar Operations, Case No. 2:23-bk-11789-BR (the "Bid Procedures"). Unless separately defined herein, all capitalized terms shall have the meanings assigned to them in the Bid Procedures.

**POTENTIAL BIDDER'S NAME:**

_____ ("Potential Bidder")

TAX IDENTIFICATION NUMBER: _____

**POTENTIAL BIDDER'S ADDRESS:**

_____

_____

_____

**POTENTIAL BIDDER'S LEGAL COUNSEL:**

_____

_____

_____

_____

**AUTHORIZED OFFICER(S)/AGENT(S):***
* such individuals as have been authorized to act on behalf of Potential Bidder in communicating on matters regulated by the Bid Procedures:

| | |
|---|---|
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Office Phone: _____ | Office Phone: _____ |
| Fax: _____ | Fax: _____ |
| Cell Phone: _____ | Cell Phone: _____ |
| E-Mail: _____ | E-Mail: _____ |

[add additional names and contact information as appropriate]

**ACKNOWLEDGMENT**

By signing below, the undersigned (as the Potential Bidder or through its authorized representative to execute and submit this Bidder Information Sheet on behalf of the Potential Bidder) hereby (i) represents that Potential Bidder has a bona fide interest in submitting an Initial Overbid for the purchase of the Property, as defined in the Bid Procedures, and that Potential Bidder is hereby submitting this executed Bidder Information Sheet to participate in the sale process established under the Bid Procedures; (ii) acknowledges that the undersigned has reviewed and understands all of the Bid Procedures and that Potential Bidder accepts and agrees to be bound by all of the Bid Procedures; (iii) acknowledges Potential Bidder's consent to be subject to the jurisdiction of the United States Bankruptcy Court for the Central District of California, for all purposes, in connection with any and all matters relating to the Sale of the Property and the Bid Procedures; and (iv) certifies, under penalty of perjury, that the

**EXHIBIT "1"**
1

Potential Bidder has satisfied the provisions of Article IV.C. of the Bid Procedures, including that the Potential Bidder has liquid assets sufficient to consummate the Sale and to perform all on-going obligations associated therewith and will not withdraw such assets until the closing of the Sale (if the Potential Bidder is the Successful Bidder or Backup Bidder) or until after the Auction (if the Potential Bidder is not the Successful Bidder or Backup Bidder), as applicable.

Dated: _____

_____

[signature] [to be acknowledged on next page]

Title:

_____

**EXHIBIT "1"**
2

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                              )

                                                ) ss.

COUNTY OF _____                        )

On _____ , 20__, before me, _____ , a Notary Public, personally appeared_____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

**EXHIBIT "1"**
3

# EXHIBIT  3

[EXECUTION COPY]

## AGREEMENT OF PURCHASE AND SALE

THIS AGREEMENT OF PURCHASE AND SALE (this **"Agreement"),** dated as of July 12, 2023 (the **"Effective Date"**), is made by and between Peter Mastan, solely in his capacity as the duly appointed and acting trustee (**the "Trustee"**) in the Bankruptcy Case (as defined below) of Debtor (as defined below) (the **"Seller"**), and 3507 JNA LLC, a Delaware limited liability company, and/or its assigns (herein **"Buyer,"** including any assignee of Buyer expressly permitted in accordance with the terms of **Section 20** below) (together, the **"Parties"**) with reference to the following:

### RECITALS

**A.**  On or about March 26, 2023 (the **"Petition Date"),** Hawthorne Hangar Operations, L.P., a California limited partnership (**"Debtor"),** filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"**) (Case No. 2:23-bk-11789 BR) (the **"Bankruptcy Case"**) in the United States Bankruptcy Court of the Central District of California (the **"Bankruptcy Court").**

**B.**  On May 2, 2023, the Court entered an Order Converting Case from Chapter 11 to Chapter 7 [ECF 75] ("**Conversion Order**") and further authorized the chapter 7 trustee to continue the Debtor's operation for one year from the date of the entry of the Conversion Order.  On May 4, 2023, the Trustee accepted his appointment as the chapter 7 trustee in the Bankruptcy Case.

**C.**  The bankruptcy estate (the **"Estate"**) of Debtor is the owner of an airplane hangar facility at the Hawthorne Airport located at 3507 Jack Northrop Avenue, Hawthorne, CA 90250 ("**Real Property**") and legally described on **Exhibit "A"** attached hereto.

**D.**  Seller desires to sell all of the Estate's right, title and interest in and to the Property (as defined herein) to Buyer, and Buyer desires to purchase all of the Estate's right, title and interest in and to the Property from Seller upon the terms and subject to the conditions hereinafter set forth and in the Sale Order (as defined herein).

**E.**  It is intended that Buyer will be a "stalking horse bidder," and as inducement for being a "stalking horse bidder," Buyer may be entitled to a fixed Breakup Fee if Buyer is outbid for the Property (as defined below) as set forth in **Section 17** of this Agreement. It is contemplated by Buyer and Seller as set forth in **Section 17** of this Agreement, that Seller will file with the Bankruptcy Court as part of the motion seeking approval of the sale a request that the Bankruptcy Court approve the sale and bid procedures relating to the sale of the Property substantially in the form attached hereto as **Exhibit "B"** (the **"Sale and Bid Procedures"**). This Agreement and the sale of the Property to Buyer are subject to potential overbid pursuant to the Sale and Bid Procedures and to the Bankruptcy Court issuing an order (the **"Sale Order"**) at a sale hearing in the Bankruptcy Case (the **"Sale Hearing"**) approving the sale to Buyer under this Agreement, as the successful bidder pursuant to the Sale and Bid Procedures.

**F.**  If Buyer is the successful bidder at the Sale Hearing, the Sale Order will authorize (1) the

4868-2705-9559.16

1

#31318367v5

sale of the Property to Buyer pursuant to the terms and conditions of this Agreement and the other documents, instruments, certificates and agreements to be entered into to effectuate the transactions contemplated therein (collectively, the **"Transaction Documents"**), and (2) Seller's execution and delivery of this Agreement and the other Transaction Documents, and Seller to otherwise take such actions as reasonable and necessary to effectuate this Agreement and the other Transaction Documents, and the transactions contemplated herein and therein.

**AGREEMENT**

**NOW THEREFORE,** in consideration of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree that the terms and conditions of this Agreement and the instructions to Escrow Holder, if any, with regard to the escrow (the **"Escrow"**) to be created pursuant hereto are as follows:

1.      **Purchased Assets and Sale.** Subject to the Bankruptcy Court entering the Sale Order in favor of Buyer as the successful bidder at the Sale Hearing, Seller agrees to sell, transfer and convey to Buyer, and Buyer agrees to purchase from Seller, all of Seller's and the Estate's right, title and interest in and to the Property on an "as-is, where is" basis and subject to the Conditions of Title (as defined below), upon the terms and conditions of this Agreement and the Sale Order.

    **(a)**      For purposes hereof, the Property shall consist of all of Seller's and the Estate's right, title and interest in and to the Property including:

        (1)      the parcel of land described in Exhibit A ("**Land**");

        (2)      any and all improvements including all buildings, structures, fixtures, and the underground fuel tanks located on the land ("**Improvements**");

        (3)      all fuel, if any, located in the underground fuel tanks and above-ground fuel tank existing at Closing; provided, however, that the Parties understand that the County of Los Angeles may require the Trustee to remove the fuel from the underground fuel tanks prior to Closing pursuant to the County's health and safety regulation, and that the failure to transfer and assign the fuel shall not be a condition precedent to Buyer's performance of its obligations hereunder, and the failure of such transfer or assignment by the Closing shall not permit Buyer to terminate this Agreement or receive refund of the Deposit provided that net proceeds from the removal of the fuel, if any, in order to comply with any County demand or requirement shall be paid to the Buyer at Closing;

        (4)      any and all rights, privileges, easements, and appurtenances located on or in or inuring to the benefit of the Land and Improvements;

        (5)      those executory contracts and unexpired leases ("**Leases**"), licenses, and other related agreements of Debtor and/or the Estate including any amendments thereto (collectively, the **"Assumed Contracts"**) as set forth on **Schedule 1.(a).(5)** attached hereto and incorporated herein, as such may be amended from time to time,

[EXECUTION COPY]

all subject to **Section 1(c)** below;

(6)    all rights, title, and interests of Debtor, Hawthorne Hangar Operations, LP in and to the "Through-the-Fence Agreement" with the City of Hawthorne dated November 16, 2009 along with any amendment thereto or replacement thereof that is entered into in accordance with this Agreement (collectively, the "**T.T.F. Agreement**"). The approval by the City of Hawthorne and the FAA of the assignment to Buyer by the Closing  shall be a condition precedent to Buyer's performance of its obligations hereunder and the failure to obtain an approval shall permit Buyer to terminate this Agreement and receive refund of the Deposit; provided, however, that the obligation to obtain approval from the FAA and the City of Hawthorne of the assignment of the T.T.F. Agreement shall be with the Buyer and the failure to obtain such approval shall not be a breach by the Seller; provided, however, Seller shall cooperate and assist in correcting the Seller's legal name in the assignment documentation;

(7)    all rights, title, and interests of Debtor in and to the Concession Agreement for Aviation Fueling Operations at the Hawthorne Municipal Airport/Fueling Agreement dated April 11, 2017 with the City of Hawthorne along with any amendment thereto or replacement thereof that is entered into in accordance with this Agreement (collectively, the "**Fueling Agreement**"). The approval by the City of Hawthorne of the assignment of the Fueling Agreement shall be a condition precedent to Buyer's performance of its obligations hereunder, and the failure to obtain such approval by the Closing shall permit Buyer to terminate this Agreement and receive refund of the Deposit; provided, however, that the obligation to obtain approval from the City of Hawthorne of the assignment of the Fueling Agreement, as necessary, shall be with the Buyer and the failure to obtain such approval shall not be a breach by the Seller;

(8)    all deposits, if any, relating to the Assumed Contracts, including, without limitation, all known security deposits (but only to the extent any such security deposit exists and are in the actual possession of Seller) in connection therewith (Seller is unaware of the existence of any security deposit as of the Petition Date and does not hold any security deposit); provided, however, that the failure to transfer any such deposit shall not be a condition precedent to Buyer's performance of its obligations hereunder, a breach by Seller, or otherwise permit Buyer to terminate this Agreement;

(9)    all permits and all pending applications therefore relating to the Property and/or the Assumed Contracts (collectively, the "**Assumed Permits**"), if any, to the extent assignable or transferable in accordance with the terms and conditions of such permits and/or pending applications therefore or applicable law; provided, however, that the failure to transfer an Assumed Permit shall not be a condition precedent to Buyer's performance of its obligations hereunder, a breach by Seller, or otherwise permit Buyer to terminate this Agreement; and

(10)    all rights, claims, credits, or rights of set off, if any, against third parties

relating to the Assumed Contracts (excluding any claims, defenses, damages, and/or liabilities of the Debtor or the Estate in connection with the actions pending as of the Petition Date or other actions relating to the Property prior to the Closing Date, and any appeal(s) relating thereto pursuant to **Section 1(b)** and Excluded Actions in Schedule (1)(b)(13)).

**(b)**    For the avoidance of doubt, notwithstanding the foregoing, the following assets, properties or rights of Debtor, Seller and/or the Estate, whether or not relating to the Property, shall be expressly excluded from the Property hereunder (collectively, the "**Excluded Assets**"):

(1)    all of Seller's or the Estate's cash on hand and/or in financial institutions (other than deposits included in **Section 1(a)(8)** above), deposit accounts, cash equivalents, surety bonds (or deposits relating thereto), marketable securities and bonds and short-term investments;

(2)    any and all of Seller's or the Estate's claims, causes of action, rights of setoff and rights of recovery relating to (A) any assets other than the Property, (B) Excluded Actions, and (C) claims and causes of action under Sections 544 through 550 and 553 of the Bankruptcy Code.

(3)    Seller's rights under this Agreement or the other Transaction Documents;

(4)    all accounts receivable (including amounts relating to the Property, whether billed or unbilled, for the period (or for any due date) prior to the Closing), prepayments, prepaid expenses, retainers, deposits, instruments, stocks, securities, investments, bonds, promissory notes, surety bonds and/or claims or deposits related to surety bonds, financial investments and financial assets (other than deposits included in **Section 1(a)(8)** above), in each case whether relating to the Property or other property;

(5)    all rights, suits, claims, choses in action, causes of action, defenses, rights of setoff, judgments, damages, rights to payment, litigation rights of any kind or nature whatsoever (whether arising in contract, tort or otherwise), or any equitable remedy for breach of performance if such breach gives rise to a right to payment (other than any items included in **Section 1(a)(10)**) (**"Claims"**) or any interest in any of the foregoing;

(6)    all claims for refunds, insurance proceeds and/or credits for taxes applicable to the period prior to the Closing;

(7)    the minute books, organizational record books, financial statements, records, books of account and tax returns of Seller, Debtor or the Estate;

(8)    any and all records relating to Excluded Assets;

(9)    all Executory Contracts and Other Contracts and leases, which are not Assumed Contracts (the "**Excluded Contracts**"). The term "**Executory Contracts**" as used herein means those service, maintenance, operating, and other

[EXECUTION COPY]

contracts with respect to the Property, all listed on the attached Schedule 1(b)(9) (and by referring to them as "executory contracts" herein does not mean that a determination has been made as to whether they are truly executory or not as that term is utilized in Section 365 of the Bankruptcy Code); "**Other Contracts**" means all service, maintenance, operating, and other contracts with respect to or relating to the Property as listed on attached Schedule 1(b)(9), which are not Executory Contracts;

(10)    all personnel records and other records that Debtor or Seller is required by law to retain in its possession and any retained copies of any record or document included in the Property (collectively, the "**Retained Records**"); provided Buyer shall have a right to copies of the foregoing items at Buyer's expense;

(11)    all actions or causes of action arising in favor of or against Seller or the Estate pursuant to the Bankruptcy Code, and all preference, avoidance and/or similar other rights, claims and actions of Debtor, Seller and/or the Estate, including, without limitation, any such rights, claims and actions arising under Sections 544, 545, 546, 547, 548, 549, and 553 of the Bankruptcy Code;

(12)    those items excluded pursuant to the provisions of **Section 1(a)** above;

(13)    any claims or defenses of the Debtor or the Estate in connection with any actions pending as of the Closing Date relating to the Property and any appeal(s) relating thereto as listed in Schedule 1.(b).(13) ("**Excluded Actions**"); and

(14)    all records, writings and other items that are protected from discovery by the attorney-client privilege, the attorney work product doctrine or any other cognizable privilege or protection.

(c)    Notwithstanding anything in this Agreement to the contrary, Buyer may revise **Schedule 1(a)(5) (Schedule of Assumed Contracts)** to include or exclude any Executory Contract or Other Contract as an Assumed Contract up to five (5) days prior to the Sale Hearing; provided, however, that, as a condition of designating any Executory Contract or Other Contract as an Assumed Contract: (1) Buyer must initially advise Seller of any such contracts to be included as an Assumed Contract by no later than the expiration of the Due Diligence Period, (2) Seller upon timely receiving such notification by Buyer shall provide notice to those non-Debtor parties to the Executory Contracts or Other Contracts that Buyer elects to designate as Assumed Contracts, (3) the Sale and Bid Procedures shall provide for the Bankruptcy Court to hear any objections to the assumption and assignment of, and cure amounts for, Assumed Contracts pursuant to the Bankruptcy Court's shortened notice procedure, and (4) the parties hereto acknowledge and agree that the amount of the Purchase Price shall not be increased or decreased based on which Executory Contracts or Other Contracts are Assumed Contracts and/or whether an Assumed Contract is assigned to Buyer at the Closing. To the extent that any cure amounts arise under any Executory Contracts that are added to the Assumed Contracts under this **Section 1(c)**, as to such obligation, Buyer shall be solely liable for satisfying in full any such cure amount. Seller shall provide Buyer with a list of Executory Contracts and Other Contracts and all cure amounts, and the proposed process and deadlines for confirmation of

[EXECUTION COPY]

cure amounts so that objections to cure amounts are received by no later than the date which is ten (10) business days prior to any auction. Notwithstanding the foregoing, Seller, and not Buyer, shall satisfy any administrative claims related to the Assumed Contracts.

**(d)**    Without limiting the provisions of this **Section 1** or any other provision of this Agreement, Buyer acknowledges that Seller is not selling or otherwise transferring to Buyer any property that Seller may not sell or transfer under applicable law, including without limitation any such property the sale, transfer or use of which is restricted under applicable licensing, copyright, patent, trademark or other similar laws or which may not be transferred without the consent of a third party (including any licensor), and the use, disposition, sale or disposition of certain of the Property by Buyer may be limited as a result thereof. Buyer assumes responsibility for obtaining all required licenses, copyrights, patents trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use, sell, operate or dispose of the Property and/or businesses thereon.

2.    **Purchase Price; Payment of Purchase Price; Assumption of Liability.**

**(a)**    The aggregate purchase price ("**Purchase Price**") for the Property shall be Thirteen Million Three Hundred and Fifty Thousand Dollars ($13,350,000.00). The Purchase Price for the Property shall be paid to Seller by Buyer as follows:

**(1)**    Within four (4) business days of the parties' execution hereof, Buyer shall deposit or cause to be deposited with Escrow Holder (in an interest bearing account if requested by Buyer and reasonably available to Escrow Holder) the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) in immediately available funds (the "**First Deposit**"), which shall remain fully refundable to Buyer until Buyer provides Approval Notice, and as otherwise provided for in this Agreement.

**(2)**    Within four (4) business days of the expiration of the Due Diligence Period, Buyer shall deliver a second Deposit ("**Second Deposit**" and together with the First Deposit, "**Deposit**") to the Escrow Holder in the sum of Two Hundred Fifty Thousand Dollars ($250,000.00) in immediately available funds to be held by the Escrow Holder (in an interest bearing account if requested by Buyer and reasonably available to Escrow Holder).

**(3)**    The Deposit (and any portion thereof) shall be held by Escrow Holder and shall be nonrefundable except as otherwise expressly provided in this Agreement (including, without limitation, **Section 2(a)(1)**, **Section 5**, and **Section 16(b)** below). The Deposit (including any interest earned thereon, if any) shall be applicable to the Purchase Price upon the Closing.

BUYER AND SELLER AGREE THAT BASED UPON THE CIRCUMSTANCES NOW EXISTING, KNOWN OR UNKNOWN, IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH SELLER'S DAMAGE BY

DocuSign Envelope ID: 2FFE96A8-E381-4F25-A383-3D59BDAW79U

[EXECUTION COPY]

REASON OF BUYER'S DEFAULT UNDER THIS AGREEMENT AND FAILURE TO CLOSE ESCROW. ACCORDINGLY, BUYER AND SELLER AGREE THAT IN THE EVENT OF A FAILURE TO CLOSE ESCROW AS A RESULT OF SECTION 16(a)(4) HEREUNDER, IT WOULD BE REASONABLE AT SUCH TIME TO AWARD SELLER, AS SELLER'S SOLE AND EXCLUSIVE REMEDY AT LAW, "LIQUIDATED DAMAGES" EQUAL TO THE AMOUNT REPRESENTED BY THE DEPOSIT. THEREFORE, IF THE PARTIES HERETO FAIL TO CLOSE ESCROW AS A RESULT OF SECTION 16(a)(4) HEREUNDER, SELLER MAY RETAIN THE DEPOSIT AND CANCEL THE ESCROW, WHEREUPON (A) SELLER SHALL IMMEDIATELY BE ENTITLED TO RETAIN THE DEPOSIT, (B) SELLER SHALL BE RELIEVED FROM ALL OBLIGATIONS AND LIABILITIES HEREUNDER, AND, (C) PROMPTLY FOLLOWING ESCROW HOLDER'S RECEIPT OF SUCH INSTRUCTION TO CANCEL THE ESCROW, ESCROW HOLDER SHALL CANCEL THE ESCROW.

_____                          _____
Seller Initials                          Buyer Initials

In the event the Close of Escrow and the consummation of the transaction contemplated by this Agreement do not occur by reason of a Seller's material default as provided in **Section 16(a)(5)** below, then Buyer, as its sole remedy, shall be entitled to terminate this Agreement, in which case Seller and Escrow Holder shall promptly return the Deposit to Buyer.

       (4)    At Closing, Buyer shall deposit or cause to be deposited with Escrow Holder in immediately available funds the balance of the Purchase Price plus Escrow Holder's estimate of Buyer's share of closing costs, pro-rations and charges payable pursuant to this Agreement.

    **(b)**    Buyer shall provide proof of funds and ability to close the sale prior to the execution of this Agreement; provided, such proof of funds and ability to close the sale shall be for Buyer or for a capital partner, Affiliate or other Buyer assignee permitted under this Agreement.

    **(c)**    Buyer hereby agrees to assume the following obligations as of the Closing (the "**Assumed Liabilities**"): (1) any obligations of Debtor, Seller or the Estate as of the Closing relating to the Assumed Contracts, T.T.F. Agreement and Fueling Agreement including, without limitation, cure costs if any, fees, expenses, and all obligations relating to the foregoing contracts and agreement, which first accrue and apply to the period from and after the Closing Date, and (2) any and all obligations of Buyer under this Agreement and the other Transaction Documents. Except with respect to the Assumed Liabilities and the Conditions of Title, Buyer does not assume any other liabilities or obligations of Debtor, Seller or the Estate, of any type or nature whatsoever.

**3.**    **Escrow.**

[EXECUTION COPY]

(a)    **Opening of Escrow.** For purposes of this Agreement, Escrow shall be deemed opened on the date Escrow Holder shall have received a fully executed original or originally executed counterparts of this Agreement from Seller and Buyer, and Escrow Holder shall notify Buyer and Seller, in writing, of the date Escrow is opened and provide each of the Parties hereto with a full set of signature pages to this Agreement. "Escrow Holder" shall mean A&A Escrow Services, Inc., 15250 Ventura Boulevard, #715, Sherman Oaks, CA 91403, Attn: Antonia Delgado, Tel.: 550-6055 ext. 127, Email: antonia@aaescrow.com. Buyer and Seller agree to execute, deliver and be bound by any reasonable and customary supplemental escrow instructions of Escrow Holder or other instruments as may reasonably be required by Escrow Holder in order to consummate the transactions contemplated by this Agreement; provided, however, that any such supplemental instructions shall not conflict with, amend or supersede any portions of this Agreement or the Sale Order. To the extent of any inconsistency between the provisions of such supplemental instructions and the provisions of this Agreement and the Sale Order, the provisions of this Agreement and the Sale Order shall control.

(b)    **Closing.** The consummation of the transactions contemplated hereby (the "**Closing**") shall be held at the offices of the Escrow Holder on the date (the **"Closing Date"**) that is the first Business Day which is at least thirty (30) days after the entry in the Bankruptcy Case of the Sale Order provided there is no stay then in effect of the Sale Order; provided, however, that the Parties may mutually agree that the Closing Date may occur earlier if the Bankruptcy Court has waived the provisions of Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rule**") 6004(h) and 6006(d) as part of the Sale Order; and further provided that if the Closing Date does not occur by such date because of an uncured breach of this Agreement by Buyer, Seller shall have the right to extend the Closing Date; provided further, Buyer and Seller may mutually agree to extend the Closing Date. At the Closing, Seller and Buyer shall perform the obligations set forth in, respectively, **Sections 7** and **8** hereof, the performance of which obligations shall be concurrent conditions; provided that the Quitclaim Deeds in the form attached hereto as **Exhibit "C"** shall not be recorded in the Official Records of the Los Angeles County, California Recorder's Office (the **"Official Records"**) until Escrow Holder has received in escrow the full amount of the Purchase Price from Buyer, adjusted by proration as set forth herein and approval from Seller and Buyer to proceed with the Closing. The balance of the Purchase Price and all documents shall be deposited with the Escrow Holder as escrowee.

(c)    **Prorations.**

(1)    Rental income, and taxes, insurance, utilities, and maintenance payments collected from tenants shall be prorated as of the Closing Date. The Seller shall be credited or paid for any rental income, and taxes, insurance, utilities, and maintenance payments collected from tenants that are attributable to the pre-Closing period and actually received by the Buyer. The Buyer shall be credited for any rental income, and taxes, insurance, utilities, and maintenance payments collected from tenants that are attributable to the post-Closing period and actually received by the Seller or Buyer. If the amount of any such item is not known at the time of the Closing, such item shall be apportioned on an estimated basis at Closing based on the amounts paid by the Seller in prior months, if any. All prorations and adjustments under this **Section 3.(c)** that are made on an

[EXECUTION COPY]

estimated basis at Closing shall be subject to reconciliation or reapportionment after Closing to reflect the actual amount of the particular revenue or expense item, within sixty (60) days of the Closing Date or as soon thereafter as the amount of the item is actually determined. Notwithstanding anything to the contrary contained in this **Section 3.(c)**, all rent collected after the Closing Date shall be paid in the following order: (i) first to Buyer for all post-closing rent, and (ii) then to Seller for any pre-closing delinquent rent; provided, after the 6 month period set forth **Section 3.(c)(3)** below, all rent and other income collected shall go to Buyer (and Seller waives any rights to the same).

(2)    Any real property taxes and assessments, utilities, and the like, ("**Operating Expenses**") shall be prorated as of the Closing Date. Buyer shall be charged for any Operating Expenses paid by Seller pre-Closing that is attributable to post-Closing Operating Expenses. Operating Expenses incurred before Closing shall be the obligation of the Seller. If the amount of any such item is not known at the time of the Closing, such item shall be apportioned on an estimated basis at Closing based on the amounts paid by the Seller in prior months, if any. All prorations and adjustments under this **Section 3.(c)** that are made on an estimated basis at Closing shall be subject to reconciliation or reapportionment after Closing to reflect the actual amount of the particular revenue or expense item, within sixty (60) days of the Closing Date or as soon thereafter as the amount of the item is actually determined.

(3)    The provisions of this **Section 3.(c)** shall survive the Closing for a period of six (6) months.

4.    **Conditions of Title.** It shall be a condition to the Closing for Buyer's benefit that title to the Land and Improvements portion of the Property shall be conveyed to Buyer by the Quitclaim Deeds subject to the following liens, claims, encumbrances and charges (the **"Conditions of Title"**):

(a)    a lien to secure payment of general and special real property taxes and assessments, not delinquent;

(b)    the lien of supplemental taxes assessed pursuant to Chapter 3.5 commencing with Paragraph 75 of the California Revenue and Taxation Code;

(c)    matters affecting the Conditions of Title created by or with the written consent of Buyer; provided, however, that (1) Buyer shall have no right or authority to create or impose any such matters affecting the Conditions of Title prior to the Closing, and (2) such matters affecting the Conditions of Title shall not be recorded or effective prior to the Closing Date;

(d)    all matters which a professional survey and inspection of the Property would disclose;

[EXECUTION COPY]

(e)    all title exceptions noted in the Preliminary Report issued by Fidelity National Title  attached hereto as **Exhibit "D" ("Title Report"),** other than with respect to liens (except those pursuant to clauses (a) and (b) this **Section 4),** mortgages, deeds of trust, any other monetary encumbrances, mechanics and other liens, judgments, abstracts of judgment, and notices of pendency of action (lis pendens) (all of which shall be removed from title prior to the Closing Date and the Property will be transferred free and clear of any of the same pursuant to the Sale Order);

(f)    all Leases that are Assumed Contracts; and

(g)    all other applicable easements, rights-of-way, covenants, conditions, restrictions, obligations, liabilities, laws, ordinances, rules and governmental regulations (including, but not limited to, those relative to building, zoning and land use) or other matters affecting the development, use, occupancy or enjoyment of the Property which are of record in the Official Records (as defined below) as of the Closing.

## 5.    Condition of the Property; Due Diligence.

(a)    Buyer acknowledges having had the opportunity to review and investigate, in its sole discretion, all aspects relating to the condition (including the environmental condition) of the Property including, without limitation, the Improvements, the soil, groundwater, and suitability for Buyer's intended use; and Buyer expressly acknowledges and agrees that Buyer is purchasing the Property on an "as is, where is" basis, with all faults, subject to the Conditions of Title and that neither Seller nor any Person including Seller's professionals has made any representations, warranties, covenants, statements, or agreements of whatsoever kind and nature concerning the Property, and the existence of the fuel in the underground fuels tanks whether express or implied, including, without limitation, its merchantability, quality, usability, condition or use, and compliance with government or other applicable laws or the truth, accuracy, or completeness of any document related to the Property including the fuel or any other information provided by, or on behalf of, the Seller to the Buyer or any other matter or thing regarding the Property.   As such, there are no such conditions to Buyer's obligation to consummate the transactions contemplated herein. Buyer further acknowledges and agrees that Buyer has retained independent counsel and advisors, and has had the opportunity to review and discuss this Agreement and the other Transaction Documents, and understands the terms and conditions set forth in the Transaction Documents and the status and condition of the Property, all prior to entering into this Agreement and the other Transaction Documents.  To the extent that Buyer has not undertaken investigations or other forms of due diligence in regard to the condition of the Property, Buyer hereby expressly acknowledges that Buyer is relying solely on Buyer's own due diligence and investigations, and further expressly waives any and all claims and causes of action of whatsoever kind and nature as to any matters which may have been disclosed if such investigations were undertaken.

(b)    During the Due Diligence Period, Buyer may perform, at its expense, any and all investigations, analyses, evaluations, and other diligence on or relating to the Property that Buyer desires or requires (collectively, the **"Due Diligence"**).  Seller shall reasonably facilitate and cooperate with the Due Diligence. Until the Closing, Buyer and its agents, representatives, and vendors may enter upon the Real Property to conduct the Due Diligence. All Due Diligence at

4868-2705-9559.16                                        10

#31318367v5

[EXECUTION COPY]

the Property shall be performed during reasonable hours.  Buyer may talk to the City of Hawthorne, the Hawthorne Municipal Airport, and Tenants or other parties to any Assumed, Executory or Other Contracts, with at least twenty-four (24) hours' prior notice to the Seller and his professionals and Seller having the right to participate in any such interview.  Buyer shall not conduct any invasive environmental site assessment without Seller's prior consent, except that (i) Buyer may conduct a Phase 1 assessment and a Phase II assessment of the Property without Seller consent, and (ii) unless granted by express written approval of Seller, Buyer shall not perform any physical, invasive, or similar sampling, monitoring, or testing (other than Phase II sampling), at, upon, under, or near the Premises. Buyer shall promptly repair any physical damage to the Property caused by the Due Diligence, and shall keep the Real Property free and clear of any mechanic's or materialman's liens arising from the Due Diligence.  Buyer shall indemnify, defend, and hold Seller harmless from any actual loss, damage, liability, or expense (excluding any loss relating to preexisting conditions and any consequential or indirect damages) that is caused by (A) Buyer's failure to comply with its obligations in this subsection or (B) any negligent acts or willful misconduct by Buyer or any of its agents, representatives, or vendors; provided, however that the foregoing indemnity shall be reduced to the extent such loss, damage, liability, or expense is caused by any negligence or willful misconduct by, through, or under Seller. Buyer shall maintain (or cause its vendors to maintain) general liability insurance with minimum single limits of One Million Dollars ($1,000,000) for personal injury, death, or property damage. Upon Seller's request, Buyer shall deliver to Seller a certificate of such insurance.

(c)     Within seven (7) days of the beginning of the Due Diligence Period Buyer shall commence, and delivered proof to the Seller of, the process necessary to obtain approval from the FAA, the City of Hawthorne, and any other necessary governmental agency.;

(d)     Buyer shall notify Seller and Escrow Holder in writing at any time on or before the expiration of the Due Diligence Period of Buyer's approval of the Due Diligence Items, the condition of the Property and Buyer's investigations with respect thereto (the "**Approval Notice**").  Failure of Buyer to deliver the Approval Notice before the expiration of the Due Diligence Period shall be deemed as Buyer's disapproval of such matters, and shall result in the termination of this Agreement, and refund of the First Deposit to Buyer.  Upon such termination, neither party shall have any further liability to the other, except for any obligations that are expressly set forth herein to survive such termination.

(e)     **Without limiting the foregoing provisions of this Section 5, Buyer expressly acknowledges and agrees that: THE PROPERTY IS BEING TRANSFERRED "AS IS" AND "WHERE IS" AND WITH ALL FAULTS; BUYER AGREES TO ACQUIRE THE PROPERTY FROM SELLER "AS IS" AND "WHERE IS" WITH ALL FAULTS, AND ACKNOWLEDGES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PROPERTY (INCLUDING AS TO THE ACTUAL NATURE, QUALITY, QUANTITY, OWNERSHIP, LOCATION OR VALUE OF THE PROPERTY AND THE EXISTENCE, MERCHANTABILITY, QUALITY, USABILITY, AND CONDITION OF THE FUEL), LIABILITIES, ASSUMED CONTRACTS OR ASSUMED LIABILITIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING TITLE TO OR CONDITION OF THE PROPERTY, OR**

[EXECUTION COPY]

THE VALUE THEREOF, OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR THE EXISTENCE OR AMOUNT OF ACCOUNTS, LIABILITIES, ASSUMED LIABILITIES, LIENS, CLAIMS OR ENCUMBRANCES. BUYER FURTHER ACKNOWLEDGES AND REPRESENTS THAT IT IS FULLY INFORMED AND ADVISED WITH RESPECT TO THE PROPERTY, ASSUMED CONTRACTS, ASSUMED LIABILITIES AND OPERATIONS OF THE PROPERTY, IT HAS REVIEWED AND INSPECTED THE PROPERTY, HAS HAD THE OPPORTUNITY TO INSPECT THE BOOKS AND RECORDS RELATING TO THE PROPERTY AND THE PUBLIC FILING RECORDS (INCLUDING LOS ANGELES COUNTY PROPERTY RECORDS AND FILINGS IN THE BANKRUPTCY CASE) AND ENTERS INTO THIS AGREEMENT AFTER INDEPENDENT INVESTIGATION OF THE FACTS AND CIRCUMSTANCES RELATING TO THE PROPERTY AND THE TRANSACTIONS DESCRIBED IN THIS AGREEMENT. BUYER FURTHER ACKNOWLEDGES THAT SELLER IS THE TRUSTEE APPOINTED IN THE BANKRUPTCY CASE AND HE HAS LITTLE OR NO INFORMATION RELATING TO THE PROPERTY AND MATTERS PERTAINING THERETO AND THAT ANY INFORMATION PROVIDED BY THE TRUSTEE OR HIS AGENTS OR REPRESENTATIVES IS BASED UPON INFORMATION PROVIDED BY DEBTOR OR ITS REPRESENTATIVES OR AGENTS AND/OR MATTERS FILED IN THE BANKRUPTCY CASE BY OTHER PERSONS OR PUBLIC RECORDS, AND SELLER HAS NOT INDEPENDENTLY REVIEWED ANY SUCH INFORMATION FOR ACCURACY OR COMPLETENESS. BUYER AGREES THAT SELLER SHALL HAVE NO LIABILITY OR OBLIGATION WHATSOEVER FOR ANY INACCURACY IN OR OMISSION FROM ANY DOCUMENT OR REPORT FURNISHED TO BUYER. SELLER HAS NO OBLIGATION OR LIABILITY WHATSOEVER WITH RESPECT TO ANY SEPARATE AGREEMENTS, INDEMNITIES, REPRESENTATIONS OR WARRANTIES ENTERED INTO BY BUYER WITH ANY OTHER PERSON.

6.    <u>Conditions to Closing.</u>

   (a)    <u>Conditions to Buyer's Obligations.</u> Buyer's obligation to consummate the transactions contemplated by this Agreement at the Closing is subject to the satisfaction of the following conditions for Buyer's benefit (or Buyer's waiver thereof, it being agreed that Buyer may waive any or all of such conditions) on or prior to the dates designated below for the satisfaction of such conditions.

      (1)    The Bankruptcy Court shall have entered the Sale Order, which, among other things, approves and authorizes pursuant to applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer free and clear of liens, liabilities, adverse claims of ownership and other interests of any kind and nature (other than the Assumed Liabilities and the Conditions of Title), with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale and provides (or related findings provide) a finding that Buyer is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code;

[EXECUTION COPY]

(2)     All representations and warranties of Seller expressly set forth in this Agreement are true and correct in all material respects as of the Closing;

(3)     No stay or injunction is in effect under applicable law or court order of the Sale Order or otherwise restraining or prohibiting the consummation of the transactions contemplated by this Agreement;

(4)     Seller shall have delivered to or for the benefit of Buyer all of Seller's Deliverables (as defined at **Section** 7 below), and otherwise timely performed all of the obligations required by the terms of this Agreement to be performed by Seller;

(5)     The Title Company shall be prepared to issue the Title Policy in favor of Buyer, subject to the [Permitted Exceptions] and any standard pre-printed policy exceptions and in accordance with the Sale Order;

(6)     Seller shall have delivered to Buyer estoppel certificates executed by the City of Hawthorne for the T.T.F. Agreement and the Fueling Agreement, from the Century Business Center Owners' Association, a California nonprofit mutual benefit corporation, in connection with any association agreements affecting the Property or the Buyer, and by the tenants under all Leases, in a form as reasonably approved by the parties hereto, confirming, without limitation, each agreement's material monetary terms and the remaining term of each agreement, any remaining improvements or concessions, no actual or threatened defaults, no changes to the terms, and other typical estoppels provisions.

(7)     Buyer shall have obtained the transfer and assignments set forth in Sections 1(a)(3), (6), and (7), for which Seller shall cooperate and assist as reasonably requested, and Buyer shall have the right to contact the pertinent parties in connection therewith.

(8)     All approvals required for the transactions contemplated under this Agreement as required by applicable state, federal, and local laws, including, without limitation, as required by the FAA and the City of Hawthorne, shall have been obtained.

(9)     To the extent Buyer intends to obtain financing in connection with this Agreement, Seller shall allow Buyer to contact all tenants of the Property in order to obtain executed SNDA's as may be required by Buyer's lender, and Seller shall reasonably cooperate with such efforts; provided, Buyer's receipt of executed SNDA's from the tenants shall not be a condition precedent to the Closing under this Agreement.

By way of illustration and not of limitation, Buyer expressly acknowledges and agrees that,

4868-2705-9559.16                                  13

#31318367v5

except as expressly set forth in this **Section 6(a)** and with respect to the Due Diligence Period, there are no "contingencies" to Closing, including, without limitation, no due diligence or financing contingency as a condition to Buyer's obligations hereunder.

      **(b)**     <u>**Conditions to Seller's Obligations.**</u> Seller's obligation to consummate the transactions contemplated by this Agreement at the Closing is subject to the satisfaction of the following conditions for Seller's benefit (or Seller's waiver thereof, it being agreed that Seller may waive any or all of such conditions) on or prior to the dates designated below for the satisfaction of such conditions.

      **(1)**     The Bankruptcy Court shall have entered the Sale Order, which, among other things, approves and authorizes pursuant to applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer free and clear of liens, liabilities, adverse claims of ownership and other interests of any kind and nature (other than the Assumed Liabilities and Conditions of Title), with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale and provides (or related findings provide) a finding that Buyer is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code;

      **(2)**     The Bankruptcy Court has entered its order approving the Sale and Bid Procedures;

      **(3)**     No stay or injunction is in effect under applicable law or court order of the Sale Order or otherwise restraining or prohibiting the consummation of the transactions contemplated by this Agreement;

      **(4)**     All representations and warranties of Buyer expressly set forth in this Agreement are true and correct in all material respects as of the Closing;

      **(5)**     Buyer shall have delivered to or for the benefit of Seller all of the Buyer's Deliverables as defined in **Section 8** below, and otherwise timely performed all of the obligations required by the terms of this Agreement to be performed by Buyer; and

      **(6)**     No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

**7.**     <u>**Deposits by Seller.**</u> At or prior to the Closing, Seller shall deposit or cause to be deposited with Escrow Holder the following documents and instruments (the **"Seller's Deliverables"),** each of which shall have been duly executed and, where applicable, acknowledged and/or sworn on behalf of Seller and shall be dated as of the Closing Date:

[EXECUTION COPY]

**(a)**    the Quitclaim Deed;

**(b)**    a General Assignment and Assumption Agreement, the form of which is attached hereto and incorporated herein as **Exhibit "E"** (the **"Assumption Agreement"**); and

**(c)**    any other documents, certificates, instruments and agreements reasonably requested by Fidelity National Title, or such other title company reasonably acceptable to Seller (the **"Title Company"**), or by Buyer, to consummate the sale of the Property as contemplated herein.

**8.    Deposits by Buyer.** At or prior to the Closing, (a) Buyer shall deposit or cause to be deposited with Escrow Holder the balance of the Purchase Price in immediately available funds, and (b) Buyer shall deliver for the benefit of Seller the following (**"Buyer's Deliverables"**), each of which shall have been duly executed and, where applicable, acknowledged and/or sworn on behalf of Buyer and shall be dated as of the Closing Date:

**(a)**    the Assumption Agreement;

**(b)**    written proof of approval of the Buyer by the FAA, the City of Hawthorne, and any other required government agency as the successor of the Debtor;

**(c)**    resolutions (in form and substance reasonable to Seller) from Buyer duly authorizing Buyer to enter into and perform its obligations under this Agreement and the other Transaction Documents; and

**(d)**    any other documents, instruments, certificates and agreements reasonably requested by the Title Company and/or Seller to consummate the sale of the Property as contemplated herein.

**9.    Taxes; Costs and Expenses**.  The cost of all documentary transfer taxes payable in connection with the recordation of the Quitclaim Deeds shall be paid by Seller. The cost of recording fees payable in connection with the recordation of the Quitclaim Deeds, and all other taxes, fees, charges, costs and liabilities due in connection with the sale of the Property (other than income taxes due by Seller in connection with said sale) shall be the obligation of and promptly paid by Buyer. The escrow fee of Escrow Holder shall be shared equally by Seller and Buyer.  The costs for the standard coverage portion of the Title Policy shall be paid by Seller, with Buyer to pay for any extended coverage or endorsements it requests. Each party shall be responsible for payment of their own legal fees. Buyer and Seller shall pay, respectively, any other of Escrow Holder's reasonable and customary charges to buyers and sellers for document drafting and miscellaneous charges, which charges shall be provided in advance and in writing by each of Buyer and Seller prior to the Closing.

**10.    Fair Consideration.**  The Parties acknowledge and agree that the Purchase Price represents fair consideration and reasonable equivalent value for the sale and transfer of the Property, and the transactions, covenants, and agreements set forth in this Agreement, which consideration was agreed upon as the result of arm's-length good-faith negotiations among the Parties and their respective representatives.

[EXECUTION COPY]

11.    **Real Property Taxes.** Real property taxes and assessments, utilities, and the like, shall be borne by the Buyer from and after the Closing Date.

12.    **Disbursements and Other Actions by Escrow Holder; Actions At Closing.**

(a)    Upon the Closing, Escrow Holder shall promptly undertake all of the following in the manner indicated:

(1)    **Recording.** Cause the Quitclaim Deed and any other documents, which the Parties hereto may mutually direct, to be recorded in the Official Records, in the order directed by such parties.

(2)    **Closing Statement.** Escrow Holder shall generate and circulate to each of Buyer and Seller a written closing statement (**"Closing Statement"**), listing, among other things, the flow of funds, and require that each of Buyer and Seller execute and deliver said Closing Statement as a condition of Closing. Pursuant to the Closing Statement, Escrow Holder shall disburse from funds deposited by Buyer with Escrow Holder towards payment of the Purchase Price to Seller and payment of expenses expressly agreed to by Seller pursuant to the terms and conditions hereof and set forth in the Closing Statement, including, without limitation, payment of the broker fees to the brokers as set forth in **Section 15** below.

(3)    Deliver to (i) Buyer: Seller's signatures with respect to the Assumption Agreement, and (ii) Seller: Buyer's signatures with respect to the Assumption Agreement.

(b)    Except as otherwise provided herein, upon the Closing (and subject to satisfaction of all of Buyer's obligations in connection therewith), title to all of the Property shall pass to Buyer, subject to the terms and conditions hereof.

13.    **Seller Representations and Warranties.**    In consideration of Buyer entering into this Agreement and as an inducement to Buyer to purchase the Property from Seller subject to the terms and conditions hereof, Seller hereby makes the following representations and warranties to Buyer as of the Effective Date of this Agreement:

(a)    Subject to the entry of the Sale Order and the Sale and Bid Procedures Order in the Bankruptcy Case by the Bankruptcy Court, Seller (i) has the power and authority to enter into this Agreement and to consummate the transactions contemplated herein, and (ii) this Agreement and all instruments, documents and agreements to be executed by Seller in connection therewith are or when delivered will be duly authorized, executed and delivered by Seller and will be valid, binding and enforceable obligations of the Estate, subject to the Sale Order and general equity principles, in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or similar laws affecting the rights of creditors generally.

(b)    Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended (i.e., Seller is not a non-resident alien, foreign corporation,

4868-2705-9559.16                                                16

#31318367v5

[EXECUTION COPY]

foreign partnership, foreign trust or foreign estate as those terms are defined in the Code and regulations promulgated thereunder).

**14.**         **Buyer's Representations and Warranties.**  In consideration of Seller entering into this Agreement and as an inducement to Seller to consummate the transactions contemplated herein, Buyer hereby makes the following representations and warranties to Seller as of the Effective Date of this Agreement:

**(a)**         Buyer is a limited liability company, duly organized and validly existing under the laws of the State of Delaware and qualified to transact business in the State of California. Buyer has full organizational power and authority to enter into and execute this Agreement and the other Transaction Documents to which it is a party and the transactions contemplated hereby and thereby. This Agreement and such Transaction Documents and all transactions required hereunder and thereunder to be performed by Buyer have, subject to the Sale Order, been duly and validly authorized and approved by all necessary action on the part of Buyer. This Agreement and such other Transaction Documents have been duly and validly executed and delivered on behalf of Buyer by its duly authorized partners/ officers, as the case may be, and constitute the valid and legally binding obligations of Buyer and are enforceable, subject to the Sale Order and general equity principles, in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or similar laws affecting the rights of creditors generally. Furthermore, the undersigned represents and warrants that he/she is duly authorized to execute and deliver this Agreement by and on behalf of Buyer.

**(b)**         Neither the execution and delivery of this Agreement or such Transaction Documents, nor the consummation of the transactions hereby or thereby contemplated, will constitute a violation or breach of any provision of any contract or other instrument to which Buyer is a party or by which any of the assets of such Buyer may be affected or secured, or any order, writ, injunction, decree, statute, rule, or regulation to which Buyer is subject, or will result in an acceleration of any debt or the creation of any lien, charge, or encumbrance on any of the assets of Buyer which will prevent or interfere with the consummation of the transactions contemplated herein and in the other Transaction Documents, or which might be deemed to adversely affect Buyer's ability to fully and promptly perform its obligations hereunder or under the other Transaction Documents.

**(c)**         Except as otherwise provided in this Agreement, the execution and delivery by Buyer of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby in accordance with the Sale Order will not require the consent, approval or action of, or any filing with or notice to, any Person or any public, governmental, judicial, or regulatory authority, other than the Bankruptcy Court. There are no material actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened) whether at law or in equity, which will prevent the consummation of the transactions as contemplated herein or which might otherwise affect Buyer's ability to close the transactions contemplated herein and in the other Transaction Documents.

**(d)**         Buyer expressly acknowledges and agrees that Buyer, and its Affiliates or capital partners, have sufficient financial resources, including, without limitation, the necessary liquid funds, to promptly pay the balance of the Purchase Price and to pay and perform the Assumed

4868-2705-9559.16                                                17

Contracts and the Assumed Liabilities as and when due, and to consummate the transactions contemplated herein and in the other Transaction Documents, to assume and pay in full as due any claims, charges, expenses or liabilities due with respect to the Conditions of Title or otherwise arising in connection with the Assumed Contracts or any other Property, and to perform all of Buyer's obligations hereunder and under the other Transaction Documents. Furthermore, with respect to the Assumed Contracts, Buyer shall establish adequate assurance of the future performance of such Assumed Contracts as required by Sections 365(b)(1)(C) and/or 365(f)(2)(B) of the Bankruptcy Code, as applicable.

(e)    There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.

**(f)    IT IS UNDERSTOOD AND AGREED THAT, UNLESS EXPRESSLY STATED HEREIN, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY AND/OR THE CONDITIONS OF TITLE, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO TITLE. BUYER ACKNOWLEDGES AND AGREES THAT, UPON THE CLOSING, SELLER SHALL SELL AND CONVEY TO BUYER, AND BUYER SHALL ACCEPT, THE PROPERTY SUBJECT TO THE CONDITIONS OF TITLE, "AS IS, WHERE IS, WITH ALL FAULTS." FURTHER, BUYER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTEES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY, OR RELATING THERETO MADE OR FURNISHED BY SELLER OR ITS REPRESENTATIVES, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, EXCEPT AS EXPRESSLY STATED HEREIN. BUYER ALSO ACKNOWLEDGES THAT THE PURCHASE PRICE REFLECTS AND TAKES INTO ACCOUNT THAT THE PROPERTY IS BEING TRANSFERRED HEREUNDER SUBJECT TO THE CONDITIONS OF TITLE ON AN "AS IS, WHERE IS, WITH ALL FAULTS BASIS."**

**(g)    BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAS HAD THE OPPORTUNITY TO CONDUCT DURING THE DUE DILIGENCE PERIOD SUCH INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AND/OR CONDITIONS OF TITLE AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PROPERTY AND ITS ACQUISITION THEREOF AND THE OBLIGATIONS IN CONNECTION THEREWITH. BUYER FURTHER WARRANTS AND REPRESENTS TO SELLER THAT BUYER WILL RELY SOLELY ON ITS OWN REVIEW AND OTHER INSPECTIONS AND INVESTIGATIONS IN THIS TRANSACTION AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER, OR ITS REPRESENTATIVES OR ANY OTHER PERSON WITH RESPECT THERETO. BUYER HEREBY ASSUMES THE RISK THAT ADVERSE MATTERS INCLUDING, BUT NOT LIMITED TO, LATENT OR PATENT DEFECTS, ADVERSE PHYSICAL OR OTHER ADVERSE MATTERS, MAY NOT HAVE BEEN**

[EXECUTION COPY]

**REVEALED BY BUYER'S REVIEW AND INSPECTIONS AND INVESTIGATIONS, AND BUYER EXPRESSLY ACKNOWLEDGES AND AGREES THAT IT HAS CONCLUDED ITS DUE DILIGENCE.**

(h) Buyer represents and warrants that all materials submitted by Buyer, its Affiliates and its and their duly authorized representatives to Seller prior to the Effective Date in connection with Buyer, any such Affiliate, and its and their financial ability to consummate the transactions contemplated herein and in the other Transaction Documents (the **"Bid Documentation"**) is true, correct, complete in all material respects and sets forth in a manner that is not misleading as of the Effective Date hereof and as of such date received by Seller through the Closing Date.

15. **Brokers.** Seller has retained EXP Commercial, Berkshire Hathaway, and Evangelo Karantonis (collectively, the **"Broker"**) to act as its broker in connection with the sale of the Property pursuant to the terms and conditions hereof. Seller shall pay all commissions owed to Broker in connection with this Agreement, pursuant to a separate agreement between Seller and Broker. Buyer represents and warrants that it has not retained a broker in connection with the sale of the Property.  Except with respect to the brokerage fees due to the Broker, Seller and Buyer each represent and warrant to the other that there are no commissions, finder's fees or brokerage fees arising out of the transactions contemplated by this Agreement. Notwithstanding the foregoing provisions of this **Section 15,** Buyer and Seller acknowledge that retention of and the amount and payment of compensation to the Broker (or any other broker of the Estate) is subject to approval of the Bankruptcy Court and orders of the Bankruptcy Court relating thereto.

16. **Termination; Return of Deposit.**

(a) This Agreement may be terminated at any time prior to the Closing as follows:

(1) By mutual written consent of the Parties;

(2) By Buyer if the Bankruptcy Court enters a Sale Order approving the sale of the Property and designating as the Successful Bidder a Person other than Buyer (unless Buyer is the approved Backup Bidder); provided, however, that Buyer is not then otherwise in default under this Agreement and/or the other Transaction Documents;

(3) By Seller if the Bankruptcy Court enters a Sale Order approving the sale of the Property and designating as the Successful Bidder a Person other than Buyer (unless Buyer is the approved Backup Bidder);

(4) By Seller if Buyer breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents, subject to prior written notice and a three (3) business day cure period, if and only if such breach is subject to cure; provided, however, that Seller is not then otherwise in default under this Agreement and/or the other Transaction Documents;

[EXECUTION COPY]

**(5)** By Buyer if Seller breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents, subject to prior written notice and a three (3) business day cure period, if and only if such breach is subject to cure; provided, however, that Buyer is not then otherwise in default under this Agreement and/or the other Transaction Documents; or

**(6)** By Seller upon the closing of the sale contemplated herein with a Person other than Buyer; provided, subject to the terms of this Agreement, all rights of Seller against Buyer are preserved if Buyer is then in default under this Agreement.

**(7)** If Buyer does not provide Approval Notice by the expiration of the Due Diligence Period.

**(8)** In the event of any termination for casualty or condemnation of the Property under **Section 24** below.

**(b)** Upon termination of this Agreement as set forth in **Section 16(a)** above (but excluding **Section 16(a)(4)**), the Deposit (plus any interest earned thereon, if any) shall be immediately refunded to Buyer except if the Buyer is in default entitling the Seller to liquidated damages as provided under **Section 2.**

**(c)** With respect to the Deposit, except as otherwise provided in **Section 16(a)** and **(b)** above, or the failure of any condition precedent set forth in **Section 6** above, the Deposit is nonrefundable. Upon the termination of this Agreement and written notice thereof to Seller, Buyer and Escrow Holder, the party entitled to the Deposit shall receive the same from Escrow Holder, together with any and all interest that may have accrued thereon, pursuant to this **Section 16(c)(1).**

**(d)** Without limiting the other provisions of **Section 16**, and except as otherwise expressly provided for or allowed under this Agreement, Buyer acknowledges that the Deposit is subject to forfeiture if:

**(1)** Buyer seeks to terminate this Agreement before the announcement of the Successful Bidder and Backup Bidder;

**(2)** Buyer is determined to be the Successful Bidder and attempts to modify or withdraw its offer or terminate this Agreement without closing the transactions contemplated hereby; or

**(3)** Buyer is determined to be the Backup Bidder and attempts to modify or withdraw its offer or terminate this Agreement prior to closing on the sale, unless the sale shall have closed with the Successful Bidder.

[EXECUTION COPY]

17.    **Bankruptcy Court Approval; Sale Hearing; and Breakup Fee.**

**(a)**    This Agreement, and the sale of the Property, are subject to possible overbid pursuant to the Sale and Bid Procedures approved by the Bankruptcy Court and the Sale Order in the Bankruptcy Case at the Sale Hearing. Upon expiration of the Due Diligence Period (with Buyer's Approval Notice provided prior thereto), Seller will file the necessary pleadings (collectively, the **"Sale Motion"**) in the Bankruptcy Case (after first providing a copy of the Sale Motion to Buyer for review and comment) to request, and Seller and Buyer shall use good faith efforts to obtain, the Sale and Bid Procedures Order approving the following:

(1)    The Sale and Bid Procedures; and

(2)    This Agreement, subject to notice and possible overbid pursuant to the Sale and Bid Procedures at the Sale Hearing.

**(b)**    In the event this Agreement and the sale and assignments contemplated herein are not approved by the Bankruptcy Court, this Agreement shall be null and void and the Deposit shall be promptly returned to Buyer as set forth in **Section 16**, unless any modifying condition or term to this Agreement imposed or proposed by the Bankruptcy Court to this Agreement is reasonably acceptable to Seller and Buyer, in which event this Agreement will be modified accordingly.

**(c)**    The Sale Order shall be in a form acceptable to Seller and Buyer, shall be entered by the Bankruptcy Court, and shall include without limitation (unless otherwise agreed to by Buyer) that the Sale and Bid Procedures are approved.

**(d)**    Buyer has expended substantial funds and other resources in connection with the transactions contemplated hereby, including costs in connection with legal and business due diligence. Buyer has devoted significant internal resources and efforts in connection with the planning, due diligence and negotiation of this Agreement, the costs of which are not recoverable. Buyer will be harmed if such transaction is not consummated, and that it would be unfair for Buyer to bear such harm in view of the fact that both Buyer, on the one hand, and Seller, on the other hand, hope to benefit from such transaction. Accordingly, in the event that, the Bankruptcy Court enters a Sale Order approving the sale of the Property and designating as the Successful Bidder a Person other than Buyer (an **"Alternative Transaction"**), and provided that Buyer is not then otherwise in default under this Agreement and/or the other Transaction Documents:

(1)    Subject to approval of the Breakup Fee by the Bankruptcy Court, Seller shall pay, or cause the Escrow Holder to pay, to Buyer the Breakup Fee from the proceeds received from the sale of the Property in the Alternative Transaction at the time of the closing of the Alternative Transaction or within ten (10) Business Days after the forfeiture and release of the purchase price deposit from the other Person to Seller, whichever occurs first.

(2)    Anything to the contrary contained herein notwithstanding, the failure to pay the Breakup Fee within the time periods set forth above shall not be deemed a breach of this Agreement by Seller; provided, however, that until the Breakup Fee

[EXECUTION COPY]

is paid to Buyer, this payment obligation shall constitute an administrative expense of the Estate and no other administrative expenses will be paid unless the Breakup Fee is paid in full at the same time.

(3)      Anything to the contrary contained herein notwithstanding, Buyer acknowledges and agrees that: the Breakup Fee is subject to approval of the Bankruptcy Court; Seller agrees the Breakup Fee is fair and appropriate and will seek approval of the Breakup Fee by the Bankruptcy Court but makes no representation that the Breakup Fee will be approved; the Bankruptcy Court may not approve the Breakup Fee at all, or the Bankruptcy Court may approve the Breakup Fee in a reduced amount; and the failure of the Bankruptcy Court to approve the Breakup Fee, or the Bankruptcy Court's reduction in the amount of the Breakup Fee, or the Bankruptcy Court's imposition or change in terms relating to the Breakup Fee shall not excuse Buyer's obligations under this Agreement.

(4)      Further, anything to the contrary contained herein notwithstanding, no Breakup Fee, even if approved by the Bankruptcy Court, shall be payable to Buyer unless the Alternative Transaction actually closes or the purchase price deposit from the other Person is actually forfeited and released to Seller.

(5)      Upon distribution or refund of the Deposit, as the case may be, together with any and all interest that may have accrued thereon, and distribution of the Breakup Fee, all as subject to the terms and conditions hereof, and distribution of all other funds received and/or held by Escrow Holder in the Escrow pursuant to the terms and conditions hereof, as well as delivery of all of the documents, instruments, certificates and agreements required to be delivered by Escrow Holder to each of the Parties hereto pursuant to the terms and conditions hereof, and subject to the approval of the Bankruptcy Court, Escrow Holder shall close the Escrow.

18.    **Definitions**.  For purposes hereof:

(a)      **"Affiliate"** shall mean, as applied to any Person, (a) an entity that directly or indirectly controls, is controlled by or is under common control with that Person, or (b) an entity at least fifty-one percent (51%) of whose economic interest is owned by that Person. The term "**control**" means the power to direct in management of such entity through voting rights, ownership or controlled obligations.

(b)      **"Auction"** shall mean the auction to be conducted at the Sale Hearing pursuant to the Sale and Bid Procedures pursuant to which Qualified Bidders submit the highest Qualified Bids to acquire the Property;

(c)      **"Backup Bidder"** shall mean the bidder who submitted the next highest bid below the bid of the Successful Bidder as determined by Seller and confirmed by the Bankruptcy Court;

(d)      **"Breakup Fee"** shall equal Two Hundred Thousand Dollars ($200,000.00);

[EXECUTION COPY]

(e)    **"Due Diligence Period"** shall be the period between the Effective Date and the forty-fifth (45th) day after the Effective Date unless further extended as agreed upon by the Parties in writing.

(f)    **"Person"** means and includes natural persons, corporations, limited partnerships, limited liability companies, general partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts, Indian tribes or other organizations, whether or not legal entities;

(g)    **"Qualified Bid"** means a bid submitted by a Qualified Bidder that meets the requirements of a "Qualified Bid" as set forth in the Sale and Bid Procedures;

(h)    **"Qualified Bidder"** means a "Qualified Bidder" as set forth in the Sale and Bid Procedures. Subject to receipt of the Deposit, Buyer is deemed a Qualified Bidder.

(i)    **"Successful Bid"** shall mean the bid that is determined to be the highest and best bid submitted pursuant to the Sale and Bid Procedures; and

(j)    **"Successful Bidder"** shall mean the bidder who submitted the Successful Bid as determined by Seller and confirmed by the Bankruptcy Court.

**19.    Notices.**  All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or delivered by facsimile or email (provided, if sent by email the recipient party (or its attorney) shall confirm receipt thereof), or by overnight courier such as FedEx, Express Mail, etc., for the next Business Day delivery, and shall be deemed received upon the earlier of (i) if personally delivered or sent via facsimile or email, the Business Day of delivery to the address of the person to receive such notice, or (ii) if delivered by overnight courier, the next Business Day.

|  |  |
|---|---|
| If to Seller: | Peter Mastan, Trustee |
|  | Dinsmore & Shohl LLP |
|  | 550 S. Hope Street, Suite 1765 |
|  | Los Angeles, California 90071 |
|  | Email: peter.mastan@dinsmore.com |
|  |  |
| With a copy to: | Dinsmore & Shohl LLP |
|  | Attn.: Lovee D. Sarenas |
|  | 550 S. Hope Street, Suite 1765 |
|  | Los Angeles, California 90071 |
|  | Email: lovee.sarenas@dinsmore.com |
|  |  |
| If to Buyer: | 3507 JNA LLC |
|  | c/o Sherwood Real Estate Partners |
|  | 1223 Wilshire Boulevard, #241 |
|  | Santa Monica, CA 90403 |

[EXECUTION COPY]

                            Attn: Brian Novak
                            Email: brian@sherwoodrp.com

With a copy to:             Sklar Kirsh LLP
                            1880 Century Park East, Suite 300
                            Los Angeles, CA 90067
                            Attention: Andrew Kirsh
                            Email: akirsh@sklarkirsh.com

If to Escrow Holder:        A&A Escrow Services, Inc.
                            15250 Ventura Boulevard, #715
                            Sherman Oaks, CA 91403
                            Attn: Antonia Delgado
                            Tel.: 550-6055 ext. 127
                            Email: antonia@aaescrow.com.

Notice of change of address shall be given by written notice in the manner detailed in this **Section 19.** Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to constitute receipt of the notice, demand, request or communication sent. Failure to provide "courtesy-only" copies shall not invalidate the notice otherwise given.

**20.**     **Assignment.**     This Agreement may not be assigned, nor may the obligations be delegated, by the Parties hereto without the prior written consent of the other Party or Parties hereto, provided, however, that Buyer may assign its rights under this Agreement to an entity or entities (formed or to be formed) that is an Affiliate of Buyer, upon notice to Seller; provided further, that such assignment shall not limit, modify, amend or terminate any obligations of the initial named Buyer hereunder. Any assignment must be made and notice provided to Seller no later than five (5) Business Days prior to the Sale Hearing.

**21.**     **Confidentiality.** As a condition of entering into this Agreement and discussing the transactions contemplated herein, Buyer represents, warrants and covenants to Seller that:

(a)     Except as required by applicable law, or as mutually agreed upon by the Parties in writing, Buyer shall maintain the confidentiality of, and may not disclose to any Person other than its officers, directors, partners, members, consultants, Affiliates, agents, representatives, and current or prospective lenders, partners or investors (collectively "**Buyer Parties**"), any confidential, secret, or proprietary information of or regarding Seller, the Estate and/or Debtor which is either marked "confidential" or "proprietary" or, by its nature, is confidential or proprietary to Seller, the Estate and/or Debtor (**"Confidential Information"**), including, without limitation, any Confidential Information obtained by Buyer and any Buyer Parties during its due diligence investigation of the Property. Seller makes no representations or warranties as to the accuracy or completeness of the Confidential Information. Buyer and the Buyer Parties shall hold all Confidential Information of Seller in confidence and shall protect the same with reasonable care.

(b)     For purposes hereof, the Parties acknowledge and agree that any documents or

4868-2705-9559.16                              24

#31318367v5

Exhibit 3, page 77

[EXECUTION COPY]

information that are otherwise in the public domain (through no fault of Buyer) or are disclosed in connection with the Bankruptcy Case, and are not "sealed" by the Bankruptcy Court, shall not be deemed Confidential Information hereunder.

(c)    Buyer reaffirms its obligations contained in the Confidentiality and Property Access Agreement previously executed by Buyer and/or its Affiliates in favor of Seller and the Estate, subject to the terms contained in this Agreement.

## 22.    **Cooperation.**

(a)    The Parties shall use commercially reasonable good faith efforts to assist the other party and cooperate with its respective legal counsel, brokers, and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement and the other Transaction Documents; and all Parties shall use their commercially reasonable good faith efforts to promptly consummate the transactions contemplated herein and to fulfill their obligations hereunder. Buyer and Seller each agree to use its commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper, or advisable to satisfy the conditions to the other party's obligation to promptly consummate and make effective the transactions contemplated by this Agreement; provided, however, that nothing contained herein shall represent a covenant or guaranty of approval, completion or success with respect to any or all such procedures.

(b)    From time to time following the Closing, Seller and Buyer shall execute, acknowledge and deliver all such further conveyances, notices, assumptions and releases, and such other instruments, and shall take such further actions as may be reasonably necessary or appropriate to assure fully to Buyer and its successors and assigns, all of the properties, rights, titles, interests, estates, remedies, powers, and privileges intended to be conveyed to Buyer under this Agreement and the other Transaction Documents, and to assure fully to Seller and its respective successors and assigns, the assumption of the liabilities and obligations intended to be assumed by Buyer under this Agreement and the other Transaction Documents, and to otherwise make effective the transactions contemplated hereby and thereby.

(c)    Buyer acknowledges that this Agreement and its terms will be made public as part of the Bankruptcy Case and filings therein.

(d)    Buyer acknowledges that notwithstanding its execution of this Agreement, and/or the reference to the "Effective Date" herein, Seller's execution of and entry into this Agreement and the other Transaction Documents is expressly subject to obtaining approval of the Bankruptcy Court.

**23.    Indemnification.** From and after the Closing Date, Buyer agrees to indemnify, defend and save Seller, the Estate and its and their authorized agents, attorneys, accountants, lenders, representatives, counsel and advisors, and their respective heirs, successors and assigns (each, a **"Seller Indemnified Party"**) from, and hold harmless each Seller Indemnified Party against, and shall pay on demand, any and all claims, damages, obligations, costs, charges, fees, losses, liabilities and expenses (including, without limitation, the fees, charges and disbursements of counsel for any Seller Indemnified Party) incurred by or asserted against any Seller Indemnified

[EXECUTION COPY]

Party, in each case arising out of or in connection with or resulting from (a) the ownership and/or use of the Property from and after the Closing, and (b) all payment and/or performance obligations due or owing by Buyer pursuant to this Agreement and the other Transaction Documents.

## 24.    Casualty Losses.

(a)    **Insurance.** In the event that there shall have been suffered between the Effective Date and the Closing any casualty loss relating to the Land or the Improvements, Seller will promptly notify Buyer of such event. Seller shall assign to Buyer at the Closing all claims to insurance proceeds and all other rights of Seller against third parties arising from such casualty loss (the **"Insurance Claims"**), with the Purchase Price to be reduced by the amount of any deductible; provided, however, if either party determines, in the exercise of their commercially reasonable discretion, that the uninsured portion of any such casualty loss (deductibles being deemed uninsured losses for these purposes) is too high or the process to restore such loss would take too long, Buyer shall have the right to terminate this Agreement upon written notice to Seller, in which case the Deposit shall be refunded to Buyer.

(b)    **Condemnation.** Subject to **Sections 16.a.8 and 16.b.** above, If condemnation or eminent domain proceedings or an agreement with a governmental agency in lieu of such proceedings should affect all or a portion of the Land or the Improvements prior to the Closing the Parties shall consummate this transaction without abatement of the Purchase Price, provided, however, that Seller shall assign to Buyer all of Seller's right, title and interest in and to any award made or to be made in connection with such proceedings or agreement and shall permit Buyer to conduct all negotiations and enter into all agreements with respect thereto, provided any such entered agreement shall not be effective prior to the Closing.

## 25.    Miscellaneous.

(a)    **Survival of Covenants.** The covenants, representations and warranties of Buyer and Seller set forth in this Agreement shall survive the recordation of the Quitclaim Deeds and the Closing for a period of one (1) year thereafter, and shall be deemed merged into the Quitclaim Deeds upon its recordation.

(b)    **Time of Essence.** Time is of the essence of each and every term, condition, obligation and provision hereof.

(c)    **Captions.** Any captions or headings of the sections, subsections, paragraphs or subparagraphs of this Agreement are solely for the convenience of the Parties hereto, are not a part of this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

(d)    **No Obligation to Third Parties.** Except as otherwise expressly provided herein, the execution and delivery of this Agreement shall not be deemed to confer any rights upon nor obligate either of Buyer or of Seller to, any person or entity other than the Parties hereto.

(e)    **Exhibits and Recitals**. The Exhibits attached hereto are hereby incorporated herein by this reference for all purposes. The Recitals set forth above are hereby incorporated

[EXECUTION COPY]

by reference.

(f)    **Amendment to this Agreement.** The terms of this Agreement may not be modified or amended except by an instrument in writing executed by each of the Parties hereto.

(g)    **Waiver.** Any term or condition of this Agreement may be waived at any time by the party that is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party. No failure on the part of any party hereto to exercise, and no delay in exercising any right, power or remedy created hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy by any such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. No waiver by any party hereto of any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

(h)    **Governing Law.** This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of California without regards to the rules of such state relating to the conflict of laws. Subject to **Section 25(i)** below, the Parties hereto hereby submit to personal jurisdiction in the State of California, County of Los Angeles.

(i)    **Bankruptcy Court Jurisdiction.** The Parties hereto agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement and the other Transaction Documents (and/or any ancillary document executed pursuant hereto) and/or the Property, provided, however, that if the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction with respect to any such action: (A) such abstention or refusal shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such action, and (B) the Parties hereto expressly agree that any disputes between such Parties shall be submitted to the District Court for the Central District of California and, to the extent that the District Court for the Central District of California abstains from exercising or declines to exercise jurisdiction, to any court of competent jurisdiction in Los Angeles County, California.

(j)    **Fees and Other Expenses.** In the event of the bringing of any action or suit by a party hereto against another party hereunder by reason of any breach of any of the covenants or agreements or any material inaccuracies in any of the representations and warranties on the part of the other party arising out of this Agreement, then in that event, the prevailing party in such action or dispute, whether by final judgment, or out of court settlement shall be entitled to have and recover of and from the other party all costs and expenses of suit, including actual attorneys' fees. Any judgment or order entered in any final judgment shall contain a specific provision providing for the recovery of all costs and expenses of suit, including reasonable attorneys' fees incurred in enforcing, perfecting and executing such judgment. Except as otherwise provided in this **Section 25(j)** or **Section 9 above or as otherwise set forth herein,** each of the Parties shall pay its own fees and expenses in connection with the negotiation and preparation of this Agreement.

(k)    **Entire Agreement.**    This  Agreement  supersedes  any  prior  agreements,

4868-2705-9559.16                                       27

#31318367v5

[EXECUTION COPY]

negotiations and communications, oral or written, and contains the entire agreement between Buyer and Seller as to the subject matter hereof; provided, however, that this Agreement and the other Transaction Documents remain subject to the Sale Order.  No subsequent agreement, representation or promise made by either party hereto, or by or to an employee, officer, agent or representative of either party shall be of any effect unless it is in writing and executed by the party to be bound thereby.  This Agreement shall not be altered or amended except by an instrument in writing signed by or on behalf of the party entitled to the benefit of the provision against whom enforcement is sought.

(l)    **Successors and Assigns.**  This Agreement shall be binding upon, and shall inure to the benefit of, the successors, and permitted assigns of the Parties hereto.

(m)    **Business Days**.  As used in this Agreement, the term "Business Day" or "Business Days" shall be defined as any day on which national banking institutions in Los Angeles County, California, are open for the transaction of banking business (excepting any Saturday or Sunday).

(n)    **Signatures by Electronic Delivery.** With the exception of the Quitclaim Deed, any and all documents to be executed by any party hereto (including this Agreement) may when executed be transmitted to the other party and to Escrow Holder (as applicable) by facsimile and/or by email of a .pdf or other electronic data format, and such facsimile and/or email of a .pdf or other electronic data format transmission shall constitute delivery of such document, provided, however, that the original of such document bearing the original signature(s) is sent on the date of the facsimile or email of the .pdf or other electronic data format transmission to the recipient via overnight courier for the next Business Day delivery.

(o)    **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

(p)    **Partial Invalidity.** All rights and restrictions contained herein may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws, and are intended to be limited to the extent necessary to render this Agreement legal, valid and enforceable.  If any term of this Agreement, or part thereof, not essential to the commercial purpose of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the Parties that the remaining terms hereof, or part thereof shall constitute their agreement with respect to the subject matter hereof and all such remaining terms, or parts thereof, shall remain in full force and effect.  To the extent legally permissible, any illegal, invalid or unenforceable provision of this Agreement shall be replaced by a valid provision that will implement the commercial purpose of the illegal, invalid or unenforceable provision.

(q)    **No Construction Against Preparer.** No provision of this Agreement or the other Transaction Documents shall be construed against or interpreted to the disadvantage of any party by any court or other governmental or judicial authority by reason of such party's having or being deemed to **have** prepared or imposed such provision.

[EXECUTION COPY]

(r)      LIMITATION OF LIABILITY-SELLER, THE ESTATE AND THEIR REPRESENTATIVES. THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS TO THE CONTRARY, ANY CLAIM OF BUYER AGAINST SELLER AND/OR THE ESTATE SHALL BE EXPRESSLY LIMITED TO SELLER'S AND THE ESTATE'S INTEREST IN THE PROPERTY AND IN NO EVENT OR CIRCUMSTANCE WILL ANY OF SELLER, THE ESTATE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, ATTORNEYS OR OTHER REPRESENTATIVES HAVE ANY LIABILITY FOR ANY CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY ARISING OUT OF OR IN CONNECTION WITH ANY ONE OR MORE OF THE FOLLOWING: (1) THIS AGREEMENT, (2) ANY ONE OR MORE OF THE OTHER TRANSACTION DOCUMENTS, OR (3) ANY OTHER AGREEMENT CONTEMPLATED UNDER THIS AGREEMENT, WHETHER BASED ON CONTRACT, COMMON LAW, STATUTE, EQUITY, OR OTHERWISE. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS TO THE CONTRARY, IN NO EVENT OR CIRCUMSTANCE WILL SELLER, THE ESTATE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, ATTORNEYS OR OTHER REPRESENTATIVES BE LIABLE FOR NOR SHALL BUYER SEEK ANY CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OF ANY TYPE OR NATURE WHATSOEVER. THE PROVISIONS OF THIS SECTION 25(r) SHALL SURVIVE BOTH THE CLOSING AND THE TERMINATION OF THIS AGREEMENT REGARDLESS OF THE BASIS OR REASON FOR ANY SUCH TERMINATION.

FURTHER, NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS, THE LIABILITY OF SELLER HEREUNDER AND THEREUNDER SHALL BE NONRECOURSE.  SELLER IS SELLING THE PROPERTY SOLELY IN HIS CAPACITY AS TRUSTEE APPOINTED IN THE BANKRUPTCY CASE, AND NO LIABILITY OR OBLIGATION SHALL BE ASSERTED AGAINST OR ACCRUE TO SELLER AS A RESULT OF THE SALE OR OTHER TRANSACTIONS CONTEMPLATED HEREIN OR THE OTHER TRANSACTION DOCUMENTS OR OTHERWISE.

[SIGNATURE PAGE IMMEDIATELY FOLLOWING]

DocuSign Envelope ID: 2FFE96A8-E381-4F25-A383-5B9880A4F794

[EXECUTION COPY]

**IN WITNESS WHEREOF,** Buyer and Seller have executed this Agreement of Purchase effective as of the Effective Date.

**SELLER**    Chapter 7 Trustee

Peter Mastan, solely in his capacity as trustee in the bankruptcy case of Hawthorne Hangar Operations L.P.

**BUYER**

DocuSigned by:

Jackson Brissette

15BFEB23FE22447...

**3507 JNA LLC,** a Delaware limited liability company, and/or its assignee

[EXECUTION COPY]

# EXHIBIT "A"
## LEGAL DESCRIPTION OF REAL PROPERTY

Real property commonly known as: 3507 Jack Northrop Avenue, Hawthorne, CA 90250 and described as follows:

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL A:

LOT 1 OF TRACT NO. 65804-01, IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 1351, PAGES 1 THROUGH 8, INCLUSIVE OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

AND ALSO EXCEPT THEREFROM ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND
UNDER SAID LAND AS RESERVED BY VARIOUS DEEDS OF RECORD.

PARCEL B:

A PERPETUAL, NON-EXCLUSIVE EASEMENT FOR PARKING PURPOSES OVER AND ACROSS THE PARKING AREA DESCRIBED WITHIN THE PARKING AGREEMENT RECORDED ON OCTOBER 28, 2011 AS

INSTRUMENT NO. 2011-1465469, OF OFFICIAL RECORDS.

**Assessor's Parcel Number:4049-018-001**

[EXECUTION COPY]

## EXHIBIT "B"
## SALE AND BID PROCEDURES

The proposed contents of Exhibit "B" shall be provided by Seller to Buyer within 7 days of execution of the Agreement, which final sale and bid procedures provisions shall be mutually agreeable to Seller and Buyer.

[EXECUTION COPY]

# EXHIBIT C

## FORM OF QUITCLAIM DEED

[EXECUTION COPY]

Recording Requested By:

When recorded mail document to:

APN:   **4049-018-001**                                   Above Space for Recorder's Use Only

## QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $ _____

    □  computed on full value of property conveyed, or
    □  computed on full value of items or encumbrances remaining at time of sale,
    □  Uncorporated area □ City of _____

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **PETER J. MASTAN**
("**Grantor**"), in his sole and limited capacity as the trustee appointed in the chapter 7 case of Hawthorne
Hangar Operations, LP ("**Debtor**"), and subject to the proceedings pending in the United States Bankruptcy
Court for the Central District of California, Los Angeles Division ("**Bankruptcy Court**") entitled In re
Hawthorne Hangar Operations, LP (Case No. 2:23-bk-11789 BR), hereby remises, releases and forever
quitclaims to **3507 JNA LLC, a Delaware limited liability company**, the real property in the County of Los
Angeles, State of California, that is legally described on **Exhibit "A"** attached hereto and incorporated herein
by this reference ("**Real Property**"), pursuant to that certain order of the Bankruptcy Court entered on
_____ [Docket No. _____] approving, among other things, the sale of the Real Property pursuant thereto
("**Sale Order**").

Dated: _____          _____

                                             _____

                                             _____
                                             Printed Name(s) of Grantor(s)

**MAIL TAX STATEMENTS TO PARTY SHOWN ON THE FOLLOWING LINE: IF NO PARTY SO SHOWN, MAIL AS DIRECTED
ABOVE.**

_____    _____    _____
Name                      Street Address                  City State & Zip

[EXECUTION COPY]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                                    }
COUNTY OF _____ }

On _____ before me, _____ ,
Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/their/her authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Signature* _____

[EXECUTION COPY]

## Exhibit A to Quit Claim Deed

**LEGAL DESCRIPTION OF REAL PROPERTY**

Real property commonly known as: 3507 Jack Northrop Avenue, Hawthorne, CA 90250 and described as follows:

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL A:

LOT 1 OF TRACT NO. 65804-01, IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1351, PAGES 1 THROUGH 8, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

AND ALSO EXCEPT THEREFROM ALL OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS RESERVED BY VARIOUS DEEDS OF RECORD.

PARCEL B:

A PERPETUAL, NON-EXCLUSIVE EASEMENT FOR PARKING PURPOSES OVER AND ACROSS THE PARKING AREA DESCRIBED WITHIN THE PARKING AGREEMENT RECORDED ON OCTOBER 28, 2011 AS INSTRUMENT NO. 2011-1465469, OF OFFICIAL RECORDS.

**Assessor's Parcel Number: 4049-018-001**

[EXECUTION COPY]

# EXHIBIT D

# TITLE REPORT

**Fidelity National Title Company**
555 S. Flower Street, Suite 4420, Los Angeles, CA 90071
Phone: (213) 452-7100• Fax:

Issuing Policies of Fidelity National Title Insurance Company

---

Title Officer:  Amy Andries (MA-LA)                          Order No.:  995-**30102788**-2AA
Escrow Officer:  Major Accounts OAC

TO:

West Realty Group
2216 Main  Street, Suite 101
Santa Monica, CA 90405

ATTN:  **Lee Johnson**
YOUR REFERENCE:

**PROPERTY ADDRESS:**      **3507 Jack Northrop Avenue, Hawthorne, CA**

---

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a Florida Corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Countersigned by:

Authorized Signature

---

**Fidelity National Title Company**
555 S. Flower Street, Suite 4420, Los Angeles, CA 90071
Phone: (213) 452-7100• Fax:

## PRELIMINARY REPORT

---

**EFFECTIVE DATE:**          May 9, 2023 at 7:30 a.m.

**ORDER NO.: 995-30102788-2AA**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Standard Owners Policy (6-17-06)**

1.  THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

    **A Fee as to Parcel(s) A**
    **Easement(s) more fully described below as to Parcel(s) B**

2.  TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS <u>VESTED IN:</u>

    **HAWTHORNE HANGAR OPERATIONS, L.P., a California limited partnership, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

    **Name of Debtor:      Hawthorne Hangar Operations, L.P.**
    **Date of Filing: March 26, 2023**
    **U.S. District Court:     Central**
    **Case No:     2:23-bk-11789-BR**

    **Subject to Item No. 23**

3.  THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

    **See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT
Your Reference:

Fidelity National Title Company
Order No.:  995-**30102788**-2AA

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HAWTHORNE IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

LOT 1 OF TRACT NO. 65804-01, IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 1351, PAGES 1 THROUGH 8, INCLUSIVE OF MAPS, RECORDS OF SAID COUNTY.

AND ALSO EXCEPT THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND AS RESERVED BY VARIOUS DEEDS OF RECORDS.

PARCEL B:

A PERPETUAL, NON-EXCLUSIVE EASEMENT FOR PARKING PURPOSES OVER AND ACROSS THE PARKING AREA DESCRIBED WITHIN THE PARKING AGREEMENT RECORDED ON OCTOBER 28, 2011 AS INSTRUMENT NO. 20111465469, OF OFFICIAL RECORDS.

APN:  4049-018-001

## EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2023-2024.

B.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 4049-018-001 |
| Fiscal Year: | 2022-2023 |
| 1st Installment: | $32,856.57, PAID. |
| 2nd Installment: | $32,856.56, DELINQUENT (Delinquent after April 10) |
| Penalty and Cost: | $3,295.65 |
| Homeowners Exemption: | $0.00 |
| Code Area: | 04260 |

C.  NOTICE:  Certain cities in Los Angeles County impose a documentary transfer tax that is in addition to the Los Angeles County documentary transfer tax of $.55 per $500 ($1.10 per $1,000) based upon the purchase price or value of the property transferred.  Additional transfer tax is imposed by the following cities in Los Angeles County:

Culver City
Los Angeles
Pomona
Redondo Beach
Santa Monica

For details about these taxes, please contact your title officer or escrow officer.  Please be advised that, in the City of Santa Monica, effective March 1, 2023, for transfers of property with a sale price or value of $8,000,000 or more, there will be a new, additional transfer tax of $5.60 per $100 ($56.00 per $1,000).  In the City of Los Angeles, effective April 1, 2023, for transfers of property with a sale price or value of $5,000,000 up to $10,000,000, there will be a new, additional transfer tax of 4% of the entire sale price or value; for transfers with a sale price or value of $10,000,000 or more, there will be a new, additional transfer tax of 5.5% of the entire sale price or value.

D.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

1.  Water rights, claims or title to water, whether or not disclosed by the public records.

2.  Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

| | |
|---|---|
| Purpose: | Maintaining water, gas, sewer pipes and electrical poles and wires |
| Recording Date: | January 17, 1927 |
| Recording No: | in Book 4750, Page 139, of Official Records |
| Affects: | Said land |

The exact location and extent of said easement is not disclosed of record.

Exhibit 3, page 94

PRELIMINARY REPORT
Your Reference:

Fidelity National Title Company
Order No.: 995-30102788-2AA

## EXCEPTIONS
### (Continued)

3.  Any easement over Lot 2 in Block 4 and the adjacent alley of Tract No. 9681 that may be disclosed by a line designated as "Center Line of Present Drainage" on the Map of Tract No. 9681. The records in the office of the county recorder do not disclose any grant or reservation of an easement for said purposes nor does the map of said tract dedicate the same.

4.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Los Angeles County |
| Purpose: | Conduits for drainage |
| Recording No: | in Book 6717, Page 374, of Official Records |
| Affects: | As described therein |

5.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | County Sanitation District No. 5 |
| Purpose: | Conduits for sewers |
| Recording No: | in Book 13070, Page 242, of Official Records |
| Affects: | As described therein |

The exact location and extent of said easement is not disclosed of record.

6.  Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

| | |
|---|---|
| Purpose: | Public utilities |
| Recording Date: | March 1, 1943 |
| Recording No: | in Book 19792, Page 380, of Official Records |
| Affects: | As described therein |

The exact location and extent of said easement is not disclosed of record.

7.  Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

| | |
|---|---|
| Purpose: | Pole lines |
| Recording Date: | July 19, 1946 |
| Recording No: | in Book 23389, Page 324, of Official Records |
| Affects: | As described therein |

8.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Southern California Edison Company LTD., a corporation |
| Purpose: | Pole lines |
| Recording Date: | April 9, 1948 |
| Recording No: | as Instrument No. 1988, in Book 26915, Page 124, of Official Records |
| Affects: | As described therein |

The exact location and extent of said easement is not disclosed of record.

Exhibit 3, page 95

## EXCEPTIONS
### (Continued)

9.    The right to grant to any governmental body or public or quasi-public utility, easements and/or rights of way affecting the Land as reserved by deed

| | |
|---|---|
| Recording Date: | October 19, 1951 |
| Recording No.: | as Instrument No. 2191, in Book 37461, Page 32, of Official Records |

Reference is hereby made to said document for full particulars.

The exact location and extent of said easement is not disclosed of record.

10.    An agreement, dated March 19, 1956 between Robert A. Brant, Title Insurance and Trust Company, as Trustee under the Will of O. P. Clark, deceased, W. Herbert Allen and Ruth Allen Finch; and Northrop Aircraft, Inc., a corporation, which purports to confine the drilling site excepted in the deeds recorded in Book 17030 Page 299, Book 17174, Page 91, and Book 17143, Page 208, all of Official Records, to that portion of the South half of the West half of the Southeast quarter of said Section 10 more particularly described therein, said agreement having been recorded May 8, 1956 as Instrument No. 2787 in Book 51116, Page 336 Official Records.

11.    Easement(s) for the purpose(s) shown below and rights incidental thereto as set forth in a document:

| | |
|---|---|
| Purpose: | Overhead and underground electrical supply systems and communication systems |
| Recording Date: | November 15, 1994 |
| Recording No: | as Instrument No. 94-2057897, of Official Records |
| Affects: | As described therein |

The exact location and extent of said easement is not disclosed of record.

12.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | "Agreement Between Owners of Land and Grant of Easements" |
| Recording Date: | March 20, 1995 |
| Recording No: | as Instrument No. 95-406548, of Official Records |

Reference is hereby made to said document for full particulars.

13.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | "Memorandum of Environmental Agreement" |
| Recording Date: | July 26, 2005 |
| Recording No: | as Instrument No. 05-1760800, of Official Records |

Reference is hereby made to said document for full particulars.

14.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | "Memorandum of License Agreement" |
| Recording Date: | July 26, 2005 |
| Recording No: | as Instrument No. 05-1760801, of Official Records |

Reference is hereby made to said document for full particulars.

Exhibit 3, page 96

PRELIMINARY REPORT
Your Reference:

Fidelity National Title Company
Order No.:  995-**30102788**-2AA

## EXCEPTIONS
### (Continued)

15.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

| | |
|---|---|
| Recording Date: | November 29, 2006 |
| Recording No: | as Instrument No. 2006-2636899, of Official Records |

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

Modification(s) of said covenants, conditions and restrictions

| | |
|---|---|
| Recording Date: | February 7, 2007 |
| Recording No: | as Instrument No. 07-0265432, of Official Records |
| and Recording Date: | January 22, 2008 |
| and Recording No: | as Instrument No. 20080113341, of Official records |

16.  Matters contained in that certain document

| | |
|---|---|
| Entitled: | "Agreement" |
| Recording Date: | April 09, 2007 |
| Recording No: | as Instrument No. 20070845022, of Official Records |

Reference is hereby made to said document for full particulars.

17.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | Century Business Center Owner's Association, a nonprofit mutual benefit corporation |
| Purpose: | Electrical, gas, cable, telecommunication, drainage, sewer, water and other utilities |
| Recording Date: | September 15, 2008 |
| Recording No: | as Instrument No. 20081655129, of Official Records |
| Affects: | As described therein |

Matters contained in that certain document

| | |
|---|---|
| Entitled: | "Amendment to Easement Deed" |
| Dated: | November 12th, 2009 |
| Executed by: | MS Kearny Northrop Avenue, LLC, a Delaware limited liability company("Owner"), and Century Business Center Owners' Association, a California nonprofit mutual benefit corporation (the "Association") |
| Recording Date: | November 17, 2009 |
| Recording No: | as Instrument No. 20091729297, of Official Records |

Reference is hereby made to said document for full particulars.

Exhibit 3, page 97

PRELIMINARY REPORT
Your Reference:

Fidelity National Title Company
Order No.: 995-30102788-2AA

## EXCEPTIONS
### (Continued)

18.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | "Parking Easement Agreement" |
| Dated: | September 23rd, 2011 |
| Executed by: | Hawthorne Hangar Operations, L.P., a California limited partnership("Grantee") and MS Kearny Northrop Avenue, LLC, a Delaware limited liability company ("Grantor") |
| Recording Date: | October 28, 2011 |
| Recording No: | as Instrument No. 20111465469, of Official Records |

Reference is hereby made to said document for full particulars.

19.    A Deed of Trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $7,300,000.00 |
| Dated: | January 26, 2021 |
| Trustor/Grantor: | Hawthorne Hangar Operations, L.P., a California limited partnership |
| Trustee: | Stewart Title |
| Beneficiary: | Grand Pacific Financing Corporation, a California Corporation |
| Loan No.: | HAWTHORNE HANGAR OPERATIONS, L.P. |
| Recording Date: | January 2, 2021 |
| Recording No: | as Instrument No. 20210182930, of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Beacon Default Management, Inc., a California corporation |
| Recording Date: | October 31, 2022 |
| Recording No: | as Instrument No. 20221031531, of Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Beacon Default Management, Inc., a California corporation, as trustee |
| Recording Date: | October 31, 2022 |
| Recording No: | as Instrument No. 20221031532, of Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Beacon Default Management, Inc., a California corporation, as trustee |
| Date, Time and Place of Sale: | March 28, 2023 at 10:30 a.m., behind the fountain located in Civic Center Plaza located at 400 Civic Center Plaza, Pomona |
| Recording Date: | February 8, 2023 |
| Recording No: | as Instrument No. 20230082431, of Official Records |

20.    Assignment of Rents and Leases

| | |
|---|---|
| Assigned to: | Grand Pacific Financing Corporation, a California Corporation |
| Assigned by: | Hawthorne Hangar Operations, L.P., a California limited partnership |
| Recording Date: | February 2, 2021 |
| Recording No: | as Instrument No. 20210182931, of Official Records |

Exhibit 3, page 98

## EXCEPTIONS
### (Continued)

21.    A Deed of Trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $400,000.00 |
| Dated: | March 10, 2022 |
| Trustor/Grantor: | Hawthorne Hangar Operations, L.P., a California limited partnership |
| Trustee: | First American Title Insurance Company |
| Beneficiary: | Mary E. Gram Attorney, Inc., a California professional corporation |
| Recording Date: | March 23, 2022 |
| Recording No: | as Instrument No. 20220332262 of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

22.    A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Hawthorne Hangar Operations, L.P., a California limited partnership; Dan Wolfe, an individual; Dan Wolfe, Trustee of the Wolfe Family Trust of 1992 |
| Defendant: | Production Capital, LLC, a California limited liability company; Remington Chase, an individual; Kevin Robl, an individual; Grand Pacific Financing Corporation, Inc., a California corporation; All persons unknown claiming any legal or equitable right, title, estate, lien or interest in the Hawthorne Hangar Property or any portion of said real property described herein adverse to plaintiff's title or any cloud on plaintiff's title thereto and Does 1 through 10 inclusive. |
| County: | Los Angeles |
| Court: | Superior |
| Case No.: | 21STCV39700 |
| Nature of Action: | Object of this action is to demonstrate and enforce Plaintiff's interest in the property |
| Recording Date: | May 16, 2022 |
| Recording No: | as Instrument No. 2022-0530231, of Official Records |

Matters contained in the "Joint Stipulation and Proposed Order" recorded March 10, 2023 as Instrument No. 2023-0155763 of Official Records.

Exhibit 3, page 99

PRELIMINARY REPORT
Your Reference:

Fidelity National Title Company
Order No.: 995-30102788-2AA

## EXCEPTIONS
### (Continued)

23.     Any matters arising out of or by virtue of that certain bankruptcy case:

|                       |                                                      |
|-----------------------|------------------------------------------------------|
| Name of Debtor:       | Hawthorne Hangar Operations, L.P.                    |
| Date of Filing:       | March 26, 2023                                       |
| U. S. District Court: | Central District                                     |
| State:                | California                                           |
| Case No.:             | 2:23-bk-11789-BR                                      |
| Chapter:              | 11                                                   |
| Attorney:             | Richard Baum                                         |
|                       | Law Office of Richard T. Baum                        |
| Attorney's Address:   | 11500 W. Olympic Blvd. Ste 400                       |
|                       | Los Angeles, CA  90064-1525                          |
| Attorney's Phone No:  | (310) 277-2040                                       |
| Recording Date:       | April 5, 2023                                        |
| Recording No:         | as Instrument No. 20230216151 of Official Records    |

24.     Any easements not disclosed by the public records as to matters affecting title to real property, whether or not said easements are visible and apparent.

25.     Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

26.     Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

        The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

        The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

27.     The transaction contemplated in connection with this Report is subject to the review and approval of the Company's Corporate Underwriting Department. The Company reserves the right to add additional items or make further requirements after such review.

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

### END OF EXCEPTIONS

---

Exhibit 3, page 100

PRELIMINARY REPORT
Your Reference:

Fidelity National Title Company
Order No.: 995-**30102788**-2AA

## REQUIREMENTS SECTION

1.  Before issuing its policy of title insurance, the Company will require the following for the below-named limited partnership:

    Name:                          Hawthorne Hangar Operations, L.P., a California limited partnership

    Certificate of Limited Partnership filed with the Secretary of State, in compliance with the provisions of the California Revised Limited Partnership Act, Section 15611 et. seq., Corporations Code.
    Certified Copy of the Certificate of Limited Partnership certified by the Secretary of State filed with the County Recorder.

    The Company reserves the right to add additional items or make further requirements after review of the requested documentation

2.  Unrecorded matters which may be disclosed by an Owner's Affidavit or Declaration. A form of the Owner's Affidavit/Declaration is attached to this Preliminary Report/Commitment. This Affidavit/Declaration is to be completed by the record owner of the land and submitted for review prior to the closing of this transaction. Your prompt attention to this requirement will help avoid delays in the closing of this transaction. Thank you.

    The Company reserves the right to add additional items or make further requirements after review of the requested Affidavit/Declaration.

---

### END OF REQUIREMENTS

---

## INFORMATIONAL NOTES SECTION

1.  None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

2.  The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Commercial property, known as 3507 Jack Northrop Avenue, located within the city of Hawthorne, California, 90250, to an Extended Coverage Loan Policy.

3.  Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

4.  Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

5.  Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

6.  The following Exclusion(s) are added to preliminary reports, commitments and will be  included as an endorsement in the following policies:

    A.  2006 ALTA Owner's Policy (06-17-06).

        6.  Defects, liens, encumbrances, adverse claims, notices, or other matters not  appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

    B.  2006 ALTA Loan Policy (06-17-06).

        8.  Defects, liens, encumbrances, adverse claims, notices, or other matters not  appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

        9.  Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

    C.  ALTA Homeowner's Policy of Title Insurance (12-02-13) and CLTA Homeowner's Policy of Title Insurance (12-02-13).

        10.  Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

    D.  ALTA Expanded Coverage Residential Loan Policy - Assessments Priority (04-02-15).

        12.  Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

        13.  Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the

## INFORMATIONAL NOTES
### (Continued)

Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

E.      CLTA Standard Coverage Policy 1990 (11-09-18).

     7.      Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the public records but that would be disclosed by an examination of any records maintained by or on behalf of a tribe or on behalf of its members.

     8.      Any claim of invalidity, unenforceability, or lack of priority of the lien of the insured mortgage based on the application of a tribe's law resulting from the failure of the insured mortgage to specify state law as the governing law with respect to the lien of the insured mortgage.

7.      Note:  There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

---

### END OF INFORMATIONAL NOTES

---

Amy Andries (MA-LA)/ng

Exhibit 3, page 103

 Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
|:---:|:---:|
| *http://www.fbi.gov* | *http://www.ic3.gov* |

**Fidelity National Title Company**
555 S. Flower Street, Suite 4420, Los Angeles, CA 90071
Phone: (213) 452-7100• Fax:

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC -- Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

**Available Discounts**

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

Notice of Available Discounts (Rev. 01-15-20)                    Last Saved: May 25, 2023 by NG
MISC0164 (DSI Rev. 03/12/20)                                     Escrow No.: 30102788-995-MAL-2AA

Exhibit 3, page 105

# ATTACHMENT ONE

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II
(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE OWNER'S POLICY (02-04-22)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
        i.    the occupancy, use, or enjoyment of the Land;
        ii.   the character, dimensions, or location of any improvement on the Land;
        iii.  the subdivision of land; or
        iv.   environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:

Exhibit 3, page 106

a.  created, suffered, assumed, or agreed to by the Insured Claimant;

b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

c.  resulting in no loss or damage to the Insured Claimant;

d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or

e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:

a.  fraudulent conveyance or fraudulent transfer;

b.  voidable transfer under the Uniform Voidable Transactions Act; or

c.  preferential transfer:

    i.  to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or

    ii.  for any other reason not stated in Covered Risk 9.b.

5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.

6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.

7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.

4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.

7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:

    i.  the occupancy, use, or enjoyment of the Land;

    ii.  the character, dimensions, or location of any improvement on the Land;

    iii.  the subdivision of land; or

    iv.  environmental remediation or protection.

  b.  any governmental forfeiture, police, or regulatory, or national security power.

  c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.

2.  Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.

3.  Any defect, lien, encumbrance, adverse claim, or other matter:

  a.  created, suffered, assumed, or agreed to by You;

  b.  not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;

  c.  resulting in no loss or damage to You;

    d.   attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or

    e.   resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4.   Lack of a right:

    a.   to any land outside the area specifically described and referred to in Item 3 of Schedule A; and

    b.   in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.

    Exclusion 4 does not modify or limit the coverage provided under Covered Risk 14 or 15.

5.   The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.

6.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:

    a.   fraudulent conveyance or fraudulent transfer;

    b.   voidable transfer under the Uniform Voidable Transactions Act; or

    c.   preferential transfer:

       i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or

       ii.   for any other reason not stated in Covered Risk 30.

7.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

8.   Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.

9.   Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.

10.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

    •   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.   building;

    b.   zoning;

    c.   land use;

    d.   improvements on the Land;

    e.   land division; and

    f.   environmental protection.

    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.   The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.

4.   Risks:

    a.   that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;

    b.   that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

    c.   that result in no loss to You; or

    d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.   Failure to pay value for Your Title.

6.   Lack of a right:

    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and

    b.   in streets, alleys, or waterways that touch the Land.

    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

    •   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

Our Maximum Dollar

Attachment One – CA (Rev. 11-04-22)                                                    Last Saved: 5/25/2023 1:15 PM by NG
MISC0267 (DSI Rev. 3/16/23)                        Page 3                               Order No. : 30102788-995-MAL-2AA

Exhibit 3, page 108

| | Your Deductible Amount | Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## ALTA OWNER'S POLICY (07-01-2021)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  a.  any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
    i.   the occupancy, use, or enjoyment of the Land;
    ii.  the character, dimensions, or location of any improvement on the Land;
    iii. the subdivision of land; or
    iv.  environmental remediation or protection.
    b.  any governmental forfeiture, police, regulatory, or national security power.
    c.  the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2.  Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3.  Any defect, lien, encumbrance, adverse claim, or other matter:
    a.  created, suffered, assumed, or agreed to by the Insured Claimant;
    b.  not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    c.  resulting in no loss or damage to the Insured Claimant;
    d.  attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
    e.  resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
    a.  fraudulent conveyance or fraudulent transfer;
    b.  voidable transfer under the Uniform Voidable Transactions Act; or
    c.  preferential transfer:
        i.   to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
        ii.  for any other reason not stated in Covered Risk 9.b.
5.  Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6.  Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7.  Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

### EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1.  (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)   the occupancy, use, or enjoyment of the Land;
        (ii)  the character, dimensions, or location of any improvement erected on the Land;
        (iii) the subdivision of land; or
        (iv)  environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1.  (a)  Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4.  Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7.  Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

Attachment One – CA (Rev. 11-04-22)                                                      Last Saved:  5/25/2023 1:15 PM by NG
MISC0267 (DSI Rev. 3/16/23)                         Page 5                                Order No. : 30102788-995-MAL-2AA

Exhibit 3, page 110



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

Exhibit 3, page 111

# OWNER'S DECLARATION

Escrow No.:          30102788-995-MAL-2AA
Property Address:    3507 Jack Northrop Avenue
                     Hawthorne, CA 90250

The undersigned hereby declares as follows:

1.      (Fill in the applicable paragraph and strike the other)

   a.   Declarant ("Owner") is the owner or lessee, as the case may be, of certain premises located at 3507 Jack Northrop Avenue, Hawthorne, CA 90250, further described as follows:   See Preliminary Report/Commitment No.  for full legal description (the "Land").

   b.   Declarant is the _____ of _____ ("Owner"), which is the owner or lessee, as the case may be, of certain premises located at 3507 Jack Northrop Avenue, Hawthorne, CA 90250, further described as follows:   See Preliminary Report/Commitment No.  for full legal description (the "Land").

2.      (Fill in the applicable paragraph and strike the other)

   a.   During the period of six months immediately preceding the date of this declaration no work has been done, no surveys or architectural or engineering plans have been prepared, and no materials have been furnished in connection with the erection, equipment, repair, protection or removal of any building or other structure on the Land or in connection with the improvement of the Land in any manner whatsoever.

   b.   During the period of six months immediately preceding the date of this declaration certain work has been done and materials furnished in connection with _____ upon the Land in the approximate total sum of $_____, but no work whatever remains to be done and no materials remain to be furnished to complete the construction in full compliance with the plans and specifications, nor are there any unpaid bills incurred for labor and materials used in making such improvements or repairs upon the Land, or for the services of architects, surveyors or engineers, except as follows:  _____. Owner, by the undersigned Declarant, agrees to and does hereby indemnify and hold harmless Fidelity National Title Company against any and all claims arising therefrom.

3.      Owner has not previously conveyed the Land;  is not a debtor in bankruptcy (and if a partnership, the general partner thereof is not a debtor in bankruptcy); and has not received notice of any pending court action affecting the title to the Land.

4.      Except as shown in the above-referenced Preliminary Report/Commitment, there are no unpaid or unsatisfied mortgages, deeds of trust, Uniform Commercial Code financing statements, regular assessments, special assessments, periodic assessments or any assessment from any source, claims of lien, special assessments, or taxes that constitute a lien against the Land or that affect the Land but have not been recorded in the public records. There are no violations of the covenants, conditions and restrictions as shown in the above-referenced Preliminary Report/Commitment.

5.      The Land is currently in use as _____; _____ occupy/occupies the Land;  and the following are all of the leases or other occupancy rights affecting the Land:

        _____

6.      There are no other persons or entities that assert an ownership interest in the Land, nor are there unrecorded easements, claims of easement, or boundary disputes that affect the Land.

7.      There are no outstanding options to purchase or rights of first refusal affecting the Land.

8.      Between the most recent Effective Date of the above-referenced Preliminary Report/Commitment and the date of recording of the Insured Instrument(s), Owner has not taken or allowed, and will not take or allow, any action or inaction to encumber or otherwise affect title to the Land.

This declaration is made with the intention that Fidelity National Title Company (the "Company") and its policy issuing agents will rely upon it in issuing their title insurance policies and endorsements. Owner, by the undersigned Declarant, agrees to indemnify the Company against loss or damage (including attorneys fees, expenses, and costs) incurred by the Company as a result of any untrue statement made herein.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on _____ at _____.

Signature:          _____

Owner's Declaration
MISC0220 (DSI Rev. 10/17/17)

Printed:  6/27/2017 2:26 PM by NG
Page 3

Escro

Exhibit 3, page 113

[EXECUTION COPY]

# EXHIBIT E

## FORM OF ASSIGNMENT AGREEMENT

## GENERAL ASSIGNMENT AND ASSUMPTION AGREEMENT

This General Assignment and Assumption Agreement is made as of _____, 2023 (the "**Closing Date**") by and between 3507 JNA LLC, a Delaware limited liability company ("**Buyer**") and Peter Mastan, solely in his capacity as trustee in the bankruptcy case of Hawthorne Hangar Operations L.P. (the "**Seller**").

### RECITALS

**WHEREAS**, Seller and Buyer have entered into that certain Agreement of Purchase and Sale dated as of July 11, 2023 (as at any time amended, the "**Purchase Agreement**").  Capitalized terms used in this General Assignment and Assumption Agreement and not otherwise defined in this General Assignment and Assumption Agreement shall have the meanings ascribed to them in the Purchase Agreement;

**WHEREAS**, pursuant to the Purchase Agreement, Seller wishes to assign all of Seller's right, title and interest in and to the Assumed Contracts, comprising a part of the Property to Buyer, and Buyer wishes to accept such assignment, on the terms and conditions set forth herein and in the Purchase Agreement; and

**WHEREAS**, pursuant to the Purchase Agreement, Buyer has agreed to assume the obligations remaining to be performed after the Closing Date under such Assumed Contracts and the Assumed Liabilities, all on the terms and conditions set forth herein.

### AGREEMENT

**NOW, THEREFORE**, for and in consideration of the foregoing and of the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties, agreeing to be legally bound, agree as follows:

1.    **Assignment of Assumed Contracts**. Seller does hereby grant, bargain, transfer, sell, assign and convey to Buyer, subject to the provisions of the Purchase Agreement, all of Seller's right, title and interest, in and to the Assumed Contracts, and Buyer does hereby accept such assignment, on the terms and conditions as set forth herein and in the Purchase Agreement.

2.    **Assumption of Liabilities**. Buyer hereby assumes, subject to the terms and conditions of the Purchase Agreement, those obligations remaining to be performed from and after the Closing Date under such Assumed Contracts and the Assumed Liabilities and shall satisfy in full any cure amount necessary to assume such Assumed Contracts as set forth in the Purchase Agreement provided, however, any outstanding administrative claims prior to Closing shall be paid by the Seller in accordance with the Bankruptcy Code pertaining to Assumed Contracts and Assumed Liabilities.

4868-2705-9559.16                                        38

#31318367v5

3.    **Rights Conferred**. Nothing contained in this General Assignment and Assumption Agreement is intended to provide any right or remedy to any Person, other than to Buyer and Seller.

4.    **Purchase Agreement**. This General Assignment and Assumption Agreement shall not be deemed to supersede or modify any of the provisions of the Purchase Agreement, and the representations and warranties contained in the Purchase Agreement are incorporated by reference herein and made a part hereof as if fully set forth herein. In the event of any conflict between this General Assignment and Assumption Agreement and the provisions of the Purchase Agreement, the provisions of the Purchase Agreement shall prevail.

5.    **Successors and Assigns**. This General Assignment and Assumption Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

6.    **Choice of Law**.  This General Assignment and Assumption Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of California without reference to conflict of laws principles.  The Bankruptcy Court shall have jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this General Assignment and Assumption Agreement.

7.    **Notices**. All notices or other communications given under this General Assignment and Assumption Agreement shall be given in accordance with **Section 19** of the Purchase Agreement.

8.    **Counterparts**. This General Assignment and Assumption Agreement may be signed in one or more counterparts, each of which shall be deemed an original and together which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this General Assignment and Assumption Agreement as of the date first above written.

"BUYER"
3507 JNA LLC, a Delaware limited liability company
partnership

By:    _____
Title:    _____

"SELLER"
PETER MASTAN, as the chapter 7 trustee of the bankruptcy
estate of Hawthorne Hangar Operations L.P.

By:    _____

4868-2705-9559.16

#31318367v5

39

[EXECUTION COPY]

## Schedule 1.(a).(5).

## Assumed Contracts

1. Through-the-Fence Agreement dated November 16, 2009 (the "TTF Agreement"), with the City of Hawthorne, a municipal corporation.
   Estimate Cure Amount:        $0.00

2. Ground Lease dated January 3, 2007, as amended by First Amendment to Ground Lease dated November 22, 2005, Second Amendment to Ground Lease dated June 13, 2006, and Third Amendment to Ground Lease dated June 28, 2017 (collectively, the "Ground Lease"), with the City of Hawthorne, a municipal corporation.
   Estimate Cure Amount:        $0.00

3. Concession Agreement for Aviation Fueling Operations at the Hawthorne Municipal Airport dated April 11, 2017 with the City of Hawthorne.
   Estimate Cure Amount:        $0.00

4. Hawthorne Hangar Operations – Lease Agreement entered into on June 15, 2017 with Tesla Inc., a Delaware Corporation and the First Amendment to Lease Agreement entered into effective November 17, 2020, by and between HHO and Tesla (together, the "Tesla Lease").
   Estimate Cure Amount:        $0.00

5. Hawthorne Hangar Operations – Lease Agreement with AMPAIRE, Inc. ("Ampaire Lease") executed April 15, 2021.
   Estimate Cure Amount:        $0.00

6. Hawthorne Hangar Operations, LP License Agreement for Ramp and Hangar Space with Aimpaire, Inc. ("Ampaire License").
   Estimate Cure Amount:        $0.00

7. Hawthorne Hangar Operations – Lease Agreement with Riegl USA, Inc. executed November 5, 2021.
   Estimate Cure Amount:        $0.00

8. Aviation Fuel Supply Agreement with Avfuel Corporation dated November 11, 2016.
   Estimate Cure Amount:        $0.00

9. Weights and Measures Device Registration Certificates issued by the County of Los Angeles for calendar year 2022 (annual) [expired 12/31/22].
   Estimate Cure Amount:        $0.00

10. [General Services Agreement for fuel tanks maintenance and monitoring with Tait Environmental Services, Inc.]
    Estimate Cure Amount:        $10,739.16

4868-2705-9559.16                    40

#31318367v5

[EXECUTION COPY]

11.  FCC Radio Station Authorization License through Aviation Spectrum Resources, Inc. with an effective date of January 11, 2018.
     Estimate Cure Amount:    $0.00

12.  Seller's Permit from the California State Board of Equalization dated February 1, 2017.
     Estimate Cure Amount:    $0.00

13.  Annual Unified Program Facility Permit for the fuel tanks with the Los Angeles County Fire Department and Public Works Department for Fiscal Year 2022-2023.
     Estimate Cure Amount:    $0.00

14.  City of Hawthorne Business Tax Certificate [expired 12/31/2022].
     Estimate Cure Amount:    $0.00

15.  Gardening and landscaping service contract with Gonzalo Gutierrez.
     Estimate Cure Amount:    $3,000.00

16.  [Fire alarm service agreement with Bay Alarm Company.]
     Estimated Cure Amount:    $2,638.62

17.  AT&T internet and telephone service in connection with the alarm systems of HHO (Account Numbers 831-001-1065 865; 831-000-8555 702; and [252937849]).
     Estimated Cure Amount:    $7,826.13

18.  Southern California Edison for utility services (Account No. 700390673709).
     Estimated Cure Amount:    $0.00

19.  [WebPOS equipment rental through Avfuel Corporation.]
     Estimated Cure Amount:    $0.00

20.  [Burglar alarm system service with Access Security Controls, Int., Inc.]
     Estimated Cure Amount:    $0.00

21.  Century Business Center Owners' Association.
     Estimated Cure Amount:    $0.00

[EXECUTION COPY]

## Schedule 1.(b).(9).

### Executory Contracts and Other Contracts

1. **Executory Contracts**

   a.  Equipment Addendum to the Aviation Fuel Supply Agreement with Avfuel Corporation for the lease of a fuel truck dated July 18, 2017.

2. **Other Contracts**

   a.  Lease Agreement with Gyron Systems & Wolfe Air executed January 1, 2010.

   b.  Mobile Mini Storage Rental for portable storage container.

[EXECUTION COPY]

## Schedule 1.(b)(13)

## Excluded Actions

**State Court Actions:**

1. *Messina & Hankin, LLP v. Dan Wolfe, et al.*, (LASC Case No. 22STCV23548)

2. *Hawthorne Hangar Operations, et al. v. Production Capital, et al.* and related cross-complaint (LASC Case No. 21STCV39700)

3. *Steinberg Law v. Daniel Ellis Wolfe, et al.* (Cross-complaint against HHO in the action entitled *Dan Wolfe v. S. Keven Steinberg* (LASC20STCV32017 and 21GDCV00232)

**Appeals:**

1. *Wehrly v. Superior Court of Los Angeles County, et al.* (Court of Appeal Case No. B324458)

2. *Wehrly v. Hawthorne Hangar Operations, L.P., et al.* (Court of Appeal Case No. B324925)

3. *Wehrly v. Hawthorne Hangar Operations LP, et al.* (Court of Appeal Case No B321452)

4868-2705-9559.16

#31318367v5

# EXHIBIT    4

1 | Lovee D. Sarenas (SBN 204361)
lovee.sarenas@dinsmore.com
2 | Jonathan Serrano (SBN 333225)
jonathan.serrano@dinsmore.com
3 | Jamie Mottola (SBN 309934)
Jamie.mottola@dinsmore.com
4 | **DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 1765
5 | Los Angeles, CA 90071
Telephone: 213.335.7737
6 |
Counsel to Peter J. Mastan,
7 | Chapter 7 Trustee

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

10 |

| | |
|---|---|
| In re: | Case No. 2:23-bk-11789-BR |
| HAWTHORNE HANGAR OPERATIONS, L.P., | Chapter 7 |
| Debtor. | **NOTICE OF:**<br>**(1) BIDDING PROCEDURES;**<br><br>**(2) AUCTION;**<br><br>**(3) HEARING ON THE SALE OF CERTAIN PROPERTIES OF THE ESTATE; and**<br><br>**(4) RELATED DEADLINES**<br><br>**Bid Deadline:**    **August 28, 2023 at 5:00 p.m. (prevailing Pacific Time)**<br><br>**Auction and Sale Hearing:**<br>Date:    [August 30, 2023]<br>Time:    [10:00 a.m.]<br>Judge:    Hon. Barry Russell<br>Place:    Courtroom 1668<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

2   **THE UNITED STATES TRUSTEE, DEBTOR AND ITS COUNSEL, ALL CREDITORS**

3   **AND/OR THEIR RESPECTIVE COUNSEL OF RECORD, ALL PROSPECTIVE**

4   **PURCHASERS; AND OTHER PARTIES IN INTEREST AND THOSE THAT HAVE**

5   **REQUESTED SPECIAL NOTICE:**

6      **PLEASE TAKE NOTICE** that, on July 21, 2023, Peter J. Mastan, the duly-appointed

7 Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of the above-captioned debtor

8 ("Debtor"), filed a *Motion for the Entry of an Order: (A) Approving Sale and Bid Procedures in*

9 *Connection with the Sale of Real Property Free and Clear of All Interests; (B) Approving the Form*

10 *and Manner of Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D)*

11 *Approving Procedures for Determining Cure Amounts for Assumed Contracts; and (E) Approving*

12 *Break-Up Fee* [Docket No. _____] seeking, among other things, approval of the bid procedures ("Sale

13 and Bid Procedures")[1] that were submitted with the Motion and will govern the sale of the Estate's

14 rights, title, and interest in property defined as "Property" in that Agreement of Purchase and Sale

15 dated June 12, 2023 ("Purchase Agreement"), between the Trustee and the Stalking Horse Bidder

16 3507 JNA LLC ("3507 JNA" or "Stalking Horse Bidder").

17      **PLEASE TAKE FURTHER NOTICE** that on July ___, 2023, the Bankruptcy Court

18 entered its *Order Granting the Motion and (A) Approving Sale and Bid Procedures in Connection with*

19 *the Sale of Real Property Free and Clear of All Interests; (B) Approving the Form and Manner of*

20 *Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D) Approving Procedures*

21 *for Determining Cure Amounts for Assumed Contracts; and (E) Approving Break-Up Fee* ("Sale and

22 Bid Procedures Order") [ECF _____] which approved, *inter alia,* the Sale and Bid Procedures and

23 established certain deadline dates in connection with the Auction and Sale.  A copy of the Sale and

24 Bid Procedures Order is attached to this Notice as **Exhibit 1**.

25      A copy of the Sale and Bid Procedures is attached to the Sale and Bid Procedures Order, and

26 also published electronically with various commercial property listing services (such as eXp Realty's

27

28

---

[1] Capitalized terms used herein that are not otherwise defined have the same meaning ascribed to
such terms in the Sale and Bid Procedures.

website or other similar listing services) for the sale of commercial real estate and the data room established for this Sale.  Access to the data room may be obtained by making a written request to from the Trustee's real estate broker Matthew Palumbo at matthew.palumbo@expcommercial.com. A copy of the Sale and Bid Procedures, as well as the Sale and Bid Procedures Order, and the Purchase Agreement may also be requested in writing, from Trustee's counsel, Lovee Sarenas, at the address and contact information provided above.

The Sale and Bid Procedures approved by the Bankruptcy Court set the requirements for submitting bids and becoming a Qualified Bidder, the Auction procedures, and the relevant dates relating to the Sale.  Only Potential Bidders who submit a Bid Package in compliance with all of the requirements set forth in the Sale and Bid Procedures on or before the Bid Deadline shall be entitled to have their respective Qualified Bid considered by the Trustee and such Potential Bidder deemed a "Qualified Bidder".  Interested parties are urged to read carefully the Sale and Bid Procedures Order for more particulars.

**The Bid Deadline established by the Court for submitting bids is: <u>August 28, 2023 at 5:00 p.m. (prevailing Pacific Time)</u>.**

**PLEASE TAKE FURTHER NOTICE** that an Auction (as defined in the Sale and Bid Procedures) will be conducted for the Sale of the Property on **August 30, 2023 at ___ a.m. /p.m.** in Courtroom 1668 of the United States Bankruptcy Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, at which date and time, all Qualified Bidders (as such term is defined in the Sale and Bid Procedures) as determined by the Trustee may bid and participate in the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Trustee will file a separate motion seeking, among other things, approval of the Sale of the Property to 3507 JNA as the Stalking Horse Bidder on an "as is, where-is" basis, free and clear of all interests (except as provided in the Purchase Agreement), the assumption of certain executory contracts and unexpired leases (collectively, "<u>Assumed Contracts</u>") and payment of Cure Amounts ("<u>Sale Motion</u>").  The Sale Motion will further seek that the buyer be afforded the protections of a good faith purchaser under § 363(m) of the Bankruptcy Code.  The Sale Motion shall be filed no later than **August 9, 2023.**  Copies of the Sale

Exhibit 4, page 123

Motion may be obtained from Trustee's counsel, Lovee Sarenas, by making a request in writing at the address and contact information provided above.

PLEASE TAKE FURTHER NOTICE that on or before **August 16, 2023** objections to the Sale, if any, must be made in writing and clearly set forth the grounds for such objection. The objection, and must be filed with the Court and served upon the Trustee and his counsel, counsel to 3507 JNA, and the U.S. Trustee at the following addresses:

| Counsel to Chapter 7 Trustee | Counsel to Stalking Horse | United States Trustee |
|---|---|---|
| **Peter J. Mastan** | **Bidder (3507 JNA)** | United States Trustee (LA) |
| Love D. Sarenas | Greg Marsh | 915 Wilshire Blvd, Suite 1850 |
| Dinsmore & Shohl LLP | Robin Itkin | Los Angeles, CA 90017 |
| 550 South Hope St., Ste 1765 | Sklar Kirsh LLP | |
| Los Angeles, CA 90071 | 1880 Century Park East, Ste 300 | |
| Telephone: (213) 335-7737 | Los Angeles, CA 90067 | |
| lovee.sarenas@dinsmore.com | Telephone: (310) 845-6416 | |
| | gmarsh@sklarkirsh.com | |
| | ritkin@sklarkish.com | |

FAILURE OF A PARTY TO FILE A TIMELY OBJECTION TO THE SALE BARS SUCH PARTY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE SALE AND RELATED SALE TRANSACTION AND SHALL BE DEEMED AS CONSENT OF SUCH PARTY TO THE SALE AND THE TRANSACTIONS RELATED THERETO.

PLEASE TAKE FURTHER NOTICE that any reply shall be filed no later than **August 23, 2023**.

PLEASE TAKE FURTHER NOTICE that a hearing on the Sale ("Sale Hearing") will be held immediately following the conclusion of the Auction on **August 30, 2023 at _____ a.m./p.m.** in Courtroom 1668, United States Bankruptcy Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012.

DATED: July 21, 2023                              Respectfully submitted,

DINSMORE & SHOHL LLP

By: _/s/ Lovee D. Sarenas_____
Lovee D. Sarenas
Jonathan Serrano
Counsel to Peter J. Mastan,
Chapter 7 Trustee

3

# EXHIBIT  5

Exhibit 5, page 125

1  Lovee D. Sarenas (SBN 204361)
   lovee.sarenas@dinsmore.com
2  Jonathan Serrano (SBN 333225)
   jonathan.serrano@dinsmore.com
3  Jamie Mottola (SBN 309934)
   Jamie.mottola@dinsmore.com
4  **DINSMORE & SHOHL LLP**
   550 S. Hope Street, Suite 1765
5  Los Angeles, CA  90071
   Telephone:  213.335.7737
6
   Counsel to Peter J. Mastan,
7  Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

10

11  In re:                              Case No. 2:23-bk-11789-BR

12  HAWTHORNE HANGAR OPERATIONS,        Chapter 7
    L.P.,
13                                      **NOTICE OF ASSUMPTION AND
                                        ASSIGNMENT OF CERTAIN**
14          Debtor.                     **EXECUTORY CONTRACTS AND
                                        UNEXPIRED LEASES AND OTHER**
15                                      **AGREEMENTS IN CONNECTION WITH
                                        THE SALE OF PROPERTY**
16

17                                      **Auction and Sale Hearing:**
                                        Date:     [August 30, 2023]
18                                      Time:     [10:00 a.m.]
                                        Judge:    Hon. Barry Russell
19                                      Place:    Courtroom 1668
                                                  255 East Temple Street
20                                                Los Angeles, CA 90012

21

22

23

24

25

26

27

28

                                                        Exhibit 5, page 126

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, DEBTOR AND ITS COUNSEL, ALL KNOWN COUNTERPARTIES TO THE ASSUMED CONTRACTS, THEIR RESPECTIVE COUNSEL OF RECORD, IF ANY, AND OTHER PARTIES THAT HAVE REQUESTED SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that, on July 21, 2023, Peter J. Mastan, the duly-appointed Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of the above-captioned debtor ("Debtor"), filed a *Motion for the Entry of an Order: (A) Approving Sale and Bid Procedures in Connection with the Sale of Real Property Free and Clear of All Interests; (B) Approving the Form and Manner of Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D) Approving Procedures for Determining Cure Amounts for Assumed Contracts; and (E) Approving Break-Up Fee* [Docket No. _____] seeking, among other things, the approval of the bid procedures ("Sale and Bid Procedures")[1] that will govern the sale of the Estate's rights, title, and interest in property defined as "Property" in that Agreement of Purchase and Sale dated June 12, 2023 ("Purchase Agreement"), between the Trustee and the Stalking Horse Bidder 3507 JNA LLC ("3507 JNA" or "Stalking Horse Bidder"), and the establishment of certain procedures for determining the cure amounts for the assumption and assignment of executory contracts and unexpired leases ("Assumption and Assignment Procedures").

**PLEASE TAKE FURTHER NOTICE** that on July ____, 2023, the Bankruptcy Court entered its *Order Granting the Motion and (A) Approving Sale and Bid Procedures in Connection with the Sale of Real Property Free and Clear of All Interests; (B) Approving the Form and Manner of Notice of the Bid Procedures; (C) Scheduling an Auction and Sale Hearing; (D) Approving Procedures for Determining Cure Amounts for Assumed Contracts; and (E) Approving Break-Up Fee* ("Sale and Bid Procedures Order") [ECF _____] which approved, *inter alia,* the Sale and Bid Procedures and the Assumption and Assignment Procedures.  A copy of the Sale and Bid Procedures Order is attached to this Assumption Notice as **Exhibit A**.  A copy of the Sale and Bid Procedures and the Purchase

---

[1] Capitalized terms used herein that are not otherwise defined have the same meaning ascribed to such terms in the Sale and Bid Procedures.

1   Agreement may also be requested in writing, from Trustee's counsel, Lovee Sarenas, at the address

2   and contact information provided above.

3       **PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale, the executory

4   contracts and unexpired leases and other agreements (collectively, the "Assumed Contracts") set forth

5   in Schedule 1.(a).(5). of the Purchase Agreement (as such list of Assumed Contracts may be

6   modified) attached hereto as **Exhibit B** ("Schedule 1.(a).(5). of Assumed Contracts")[2] may be

7   assumed and assigned to 3507 JNA LLC, or any other Successful Bidder at the Auction.  In addition,

8   the cure amounts, if any, necessary for the assumption and assignment of the Assumed Contracts

9   ("Cure Amounts") are set forth on the attached Schedule 1.(a).(5). of Assumed Contracts.   The

10  Stalking Horse Bidder 3507 JNA or any other Successful Bidder at Auction may modify the list of

11  Assumed Contracts to add or delete executory contracts and unexpired leases or other agreements

12  pursuant to the Purchase Agreement and the Assumption and Assignment Procedures.

13      **YOU ARE RECEIVING THIS NOTICE BECAUSE THE TRUSTEE HAS**

14  **IDENTIFIED YOU AS A COUNTERPARTY ("COUNTERPARTY") TO AN ASSUMED**

15  **CONTRACT.**

16      **PLEASE TAKE FURTHER NOTICE THAT** each Counterparty to an Assumed

17  Contract listed in Schedule 1.(a).(5). of Assumed Contracts shall have seven (7) days after service

18  of this Assumption Notice to file with the Court and serve upon the Trustee, his counsel, and counsel

19  to the Stalking Horse Bidder any objection setting forth with particularity the grounds for objecting

20  to assumption and assignment of its contract, and its asserted proper Cure Amount along with

21  documentation supporting such Cure Amount.

22      To the extent that any objection to the Cure Amounts set forth in the Schedule 1.(a).(5). of

23  Assumed Contracts or the assumption and/or assignment of any executory contract or unexpired lease

24  or other agreement included in the Purchase Agreement is not resolved consensually prior to the Sale

25  Hearing, the Bankruptcy Court shall hold a hearing on the objection on **August 22, 2023 at ___ a.m.**

26

27

28  [2] The permits listed in line items 9 and 14 of Schedule 1.(a)(5) of Assumed Contracts are current
    through 2023.

1 **/p.m**.  A reply to the objection shall be filed by August 19, 2023 that includes an explanation of the

2 dispute between the parties.

3 **IN THE ABSENCE OF A TIMELY OBJECTION TO THE CURE AMOUNT OF THE**

4 **PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSUMED CONTRACT, THE**

5 **CURE AMOUNT SET FORTH IN SCHEDULE 1.(A).(5) OF THE PURCHASE**

6 **AGREEMENT SHALL BE CONTROLLING (OR SUCH LESSER AMOUNT ACTUALLY**

7 **OWING) AND ANY COUNTERPARTY TO AN ASSUMED CONTRACT OR OTHER**

8 **CONTRACT IN THE SCHEDULE 1.(A).(5) OF ASSUMED CONTRACTS WILL BE**

9 **BARRED FROM ASSERTING AN INCONSISTENT POSITION IN CONNECTION WITH**

10 **THE ASSUMPTION OR ASSIGNMENT OF ANY EXECUTORY CONTRACT OR**

11 **UNEXPIRED LEASE OR OTHER AGREEMENT, SUCH COUNTERPARTY WILL BE**

12 **DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF SUCH**

13 **ASSUMED CONTRACT.**

14 **PLEASE THE FURTHER NOTICE THAT** the Trustee shall, at the Sale Hearing, seek

15 authority under section 365 of the Bankruptcy Code for the Trustee and the Estate to (a) assume and

16 assign the Assumed Contracts, effective as of the closing of the Sale, and (b) execute and deliver to

17 3507 JNA or any other Successful Bidder at the Auction such documents or other instruments as may

18 be necessary to effectuate the assignment and transfer of the Assumed Contracts.

19

20 DATED: July 21, 2023                                                 Respectfully submitted,

21                                                                                          DINSMORE & SHOHL LLP

22                                                                                          By: _____

23                                                                                          Lovee D. Sarenas
                                                                                            Jonathan Serrano

24                                                                                          Counsel to Peter J. Mastan,
                                                                                            Chapter 7 Trustee

25

26

27

28

3                                    Exhibit 5, page 129

# EXHIBIT "A"

**Sale and Bid Procedures Order**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT B

### Schedule 1.(a).(5). of Assumed Contracts

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, California 90071

A true and correct copy of the foregoing document entitled (*specify*): ***MOTION FOR THE ENTRY OF AN ORDER: (A) APPROVING SALE AND BID PROCEDURES IN CONNECTION WITH SALE OF REAL PROPERTY FREE AND CLEAR OF ALL INTERESTS; (B) APPROVING THE FORM AND MANNER OF NOTICE OF THE BID PROCEDURES; (C) SCHEDULING AN AUCTION AND SALE HEARING; (D) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS FOR ASSUMED CONTRACTS; AND (E) APPROVING BREAK-UP FEE; DECLARATIONS IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 21, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) **July 21, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 21, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 21, 2023 | Katrice Ortiz | /s/ Katrice Ortiz |
| *Date* | *Printed Name* | *Signature* |

#31344782v3

**In re Hawthorne Hangar Operations, L.P.**
**U.S.B.C., Central District of California, Los Angeles**
**Case No. 2:23-bk-11789-BR**

1.    <u>**SERVED ELECTRONICALLY VIA NEF**</u>:

Richard T Baum on behalf of Attorney Richard T. Baum
rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com

Samuel Mushegh Boyamian on behalf of Creditor David Wehrly
samuel@marguliesfaithlaw.com,
angela@marguliesfaithlaw.com,helen@marguliesfaithlaw.com,vicky@marguliesfaithlaw.com

Samuel Mushegh Boyamian on behalf of Interested Party Courtesy NEF
samuel@marguliesfaithlaw.com,
angela@marguliesfaithlaw.com,helen@marguliesfaithlaw.com,vicky@marguliesfaithlaw.com

Jess R Bressi on behalf of Creditor Grand Pacific Financing Corporation
jess.bressi@dentons.com, kimberly.sigismondo@dentons.com

Rosendo Gonzalez on behalf of Debtor Hawthorne Hangar Operations, L.P.
rossgonzalez@gonzalezplc.com,
rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com

Craig G Margulies on behalf of Creditor David Wehrly
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

Ron Maroko on behalf of U.S. Trustee United States Trustee (LA)
ron.maroko@usdoj.gov

Peter J Mastan (TR)
pmastan@iq7technology.com;travis.terry@dinsmore.com;ecf.alert+Mastan@titlexi.com

Lovee D Sarenas on behalf of Trustee Peter J Mastan (TR)
lovee.sarenas@dinsmore.com, katrice.ortiz@dinsmore.com

James R Selth on behalf of Creditor Steinberg Law
jselth@wztslaw.com, jselth@yahoo.com;maraki@wztslaw.com;sfritz@wztslaw.com

Jonathan Serrano on behalf of Trustee Peter J Mastan (TR)
jonathan.serrano@dinsmore.com

Evan L Smith on behalf of Creditor Messina & Hankin LLP
els@elsmithlaw.com

Keven Steinberg on behalf of Interested Party Courtesy NEF
keven@kevensteinberglaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

#31344782v3

2.    **SERVED BY MAIL**:

     N/A

3.    **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, OR EMAIL**

     **Via Overnight Delivery (Fed Ex):**

     **Debtor:**
     Hawthorne Hangar Operations, L.P.
     909 East Green Street
     Pasadena, CA 91106-2906

     **United States Trustee**
     United States Trustee (LA)
     915 Wilshire Blvd, Suite 1850
     Los Angeles, CA 90017

     **United States Bankruptcy Court (personal delivery):**
     Honorable Barry Russell
     United States Bankruptcy Court
     Central District of California
     255 E. Temple Street, Suite 1660/Courtroom 1668
     Los Angeles, CA 90012

     **Via Email:**

     ***Secured Creditor***
     Mary Gram (via email)
     marygramlaw@gmail.com

     ***Professionals of the Estate:***

     Lee Johnson (via email)
     lee@leejohnsonre.com

     Matthew Palumbo (via email)
     matthew.palumbo@expcommercial.com

     Evangelo Karantonis (via email)
     evangelo.karantonis@gmail.com>; californiacommercial1@gmail.com;

     ***Counsel to 3507 JNA:***

     Robbin Itkin (via email)
     ritkin@sklarkirsh.com

     Greg Marsh (via email)
     gmarsh@sklarkirsh.com
     Sklar Kirsh LLP

#31344782v3