Lovee D. Sarenas (SBN 204361)
*E-mail: lovee.sarenas@dinsmore.com*
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 2800
Los Angeles, CA 90071
Telephone: (213) 335-7737
Facsimile: (213) 335-7740

Counsel to Peter J. Mastan, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:23-bk-11789-BR |
| HAWTHORNE HANGAR OPERATIONS, L.P., | Chapter 7 |
| | **TRUSTEE'S REPLY TO CREDITOR MESSINA & HANKIN LLP'S OBJECTION TO TRUSTEE'S FINAL REPORT; DECLARATION OF LOVEE D. SARENAS** |
| Debtor. | |
| | Date: October 21, 2025 |
| | Time: 10:00 a.m. |
| | Judge: Hon. Barry Russell |
| | Place: Courtroom 1668 |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

The chapter 7 trustee Peter J. Mastan ("Trustee") in the above-referenced bankruptcy case of the debtor Hawthorne Hangar Operations, LP ("Debtor") submits this Reply ("Reply") to Creditor Messina & Hankin LLP's Objection ("Objection") to Trustee's Final Report ("TFR"). In support of the TFR, the Trustee provides the following Reply:

## I.    RELEVANT FACTS

On August 11, 2023, Messina & Hankin LLP ("M&H"), filed an amended proof of claim ("Claim 13-2") asserting a secured claim in the sum of $426,462.99 comprised of $326,776.61 in amount owed and $99,686.38 in interest. M&H's claim asserts a lien for attorneys' fees against certain recovery in state court lawsuits not identified in the engagement agreement submitted

1

#64984008v5

1    with the proof of claim but purportedly involving the cases entitled *HHO v. HA* and *Wherly v.*

2    *HHO LLP*. A true and correct copy of Claim 13-2 is attached to the Declaration of Lovee D.

3    Sarenas ("Sarenas Declaration") as **Exhibit A** and incorporated herein by reference.

4          Pursuant to the unredacted copy of the engagement agreement obtained by the Trustee,

5    the agreement is between M&H on the one hand and Wolfe Air Aviation, Ltd., Dan Wolfe,

6    individually and as the Trustee of the Wolfe Family Trust of 1992, and the Debtor, on the other

7    hand, in connection with the LA Superior Court Case No. BC663210 (*Hawthorne Hangar*

8    *Operations LP v. Hawthorne Airport LLC et al.)* and arbitration ADRS Case No. 17-4019 MDM

9    (*David Wehrly v. Hawthorne Hangar Operations, LP and Dan Wolfe as Trustee of the Wolfe*

10    *Family Trust*).[1] A true and correct copy of the engagement agreement is attached to the Sarenas

11    Declaration as **Exhibit B** and incorporated herein by reference. The engagement agreement

12    further states that "each [Client] agrees to be liable, jointly and severally, for all obligations

13    arising under the agreement. *Id.*

14          On or about August 14, 2025, the applications for compensation and reimbursement of

15    costs (collectively, "Final Fee Applications") of the following professionals were filed:

16    Dinsmore & Shohl LLP (Trustee's counsel); SLBiggs LLP (Trustee's accountants); and

17    Marshak Hays (Trustee's special counsel).

18          On September 9, 2025, the Trustee filed his TFR listing M&H's claim as a secured claim

19    pursuant to Claim 13-2 with zero distribution given that no asset from the litigation was

20    administered by the Trustee. [ECF No. 35.] After the TFR was submitted to, and approved by,

21    the U.S. Trustee's Office ("UST"), all creditors were served with the notice of the hearing on the

22    Trustee's TFR. The UST has not filed an objection to the Final Fee Applications or to the TFR.

23    With the exception of M&H, no other party in interest filed an objection to the TFR or the Final

24    Fee Applications.

25          The Objection asserts that M&H's claim was not properly administered as an unsecured

26

27     [1] The Debtor lost the arbitration prepetition and BC663210 concluded in 2021. Under the
engagement agreement, the scope of the work excluded any appeal of the arbitration and related

28    litigation.

1  claim under § 506(a) for what it believes to be the unsecured portion of its claim and that the

2  TFR needs to be amended to reflect that the claim was properly administered. Objection at 3.

3  **II.      DISCUSSION**

4          The Trustee has properly administered Claim 13-2. In order for an unsecured claimant to

5  participate in the distribution among unsecured creditors of the estate in a chapter 7 case, a proof

6  of claim asserting an unsecured claim has to be filed under Bankruptcy Code § 501 and allowed

7  under § 502. Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 3002(a) underscores

8  this point.[2] Fed. R. Bankr. P. 3002(a) (an unsecured creditor "must file a proof of claim . . . for

9  the claim . . . to be allowed.").

10         In contrast, the failure to file proof of a secured claim may not preclude collecting against

11 the collateral under Bankruptcy Rule 3003(a) and § 506(d)(2). The same is not true for unsecured

12 claims. An unsecured creditor in a chapter 7 case must take an affirmative step to pursue an

13 unsecured claim under the Bankruptcy Code and Bankruptcy Rule. The legislative history of §

14 501 explains that:

15         "the section governs the means by which creditors . . . present their claims
           . . . to the court. . . . [Subsection (a)] is permissive only and does not require
16         filing a proof of claim by any creditor. It permits filing where some purpose
           would be served, such as . . . where a creditor with a lien is undersecured
17         and asserts a claim for the balance of the debt owed him (his unsecured
           claim, as determined under proposed 11 U.S.C. 506(a)), or in a liquidation
18         case where there will be a distribution of assets to the holders of allowed
           claims." S. Rep. No. 95-989 (1978).
19
20 The Legislature further explained that:

           unless a claim is listed in a chapter 9 or chapter 11 case and allowed as a
21         result of the list, a proof of claim will be a prerequisite to allowance for
           unsecured claims, including priority claims and the unsecured portion of a
22         claim asserted by the holder of a lien. *Id.*

23 Bankruptcy Rules 3003 and 3001 enforce this principle. Because § 501(a) is permissive, unsecured

24 creditors are not required to pursue a claim in the bankruptcy case. The consequence of not doing

25 so, however, is that non-filing creditors are prevented under the Bankruptcy Code from receiving

26

27 [2] The same principle applies in chapter 11 cases. Fed. R. Bankr. P. 3003(c)(2) provides that any
    creditor who fails to [file a proof of claim] shall not be treated as a creditor with respect to such
28 claim for purposes of voting and distribution.

a distribution from the bankruptcy estate. Conversely, a party in interest need not file an objection to claim when there is no reason to do so.

Here, M&H filed Claim 13-2 as a secured claim and failed to amend its claim prior to the filing of the TFR to assert an unsecured claim. Under § 502, a proof of claim is allowed "unless a party in interest . . . objects." 11 U.S.C. § 502(a). Thus, Claim 13-2 has been allowed as a secured claim on its face under the TFR. However, because the Trustee did not administer an Estate asset relating to the lien, no distribution to M&H is being made on account of the lien. TFR at 1. The Trustee has properly treated Claim 13-2 as a secured claim.

Section 506(a)(1) does not automatically allow a deficiency claim. Instructive to this point are two cases: *Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677 (10th Cir. 1993), whereby the 10th Circuit held that §506(a) does not require a debtor to provide for payment of the unsecured portion of a claim absent an amendment by a creditor to its secured proof of claim or a motion to value the security;[3] and *In re Padget*, 119 B.R. 793,798 (Bankr. D. Co. 1990), which held that the trustee should not, and is not charged with the obligation to, examine a claim with a purpose and view to increasing the claim or improving a claimant's status over that asserted by other creditors. The 9th Circuit BAP in *Olympic Coast Inv., Inc. v. Crum (In re Wright),* 2008 Bankr. LEXIS 4710, at *19 (BAP 9th Cir. Nov. 3, 2008) (unpublished) (JJ. Montali, Dunn and Hollowell), adopted the holdings of *Padget* and *Harrison* in agreeing with the bankruptcy court's reason on the merits for overruling an undersecured creditor's objection to a trustee's final report.

A trustee has no duty to ask an undersecured creditor why it elected not to pursue a deficiency or unsecured claim. The motive for a creditor's decision not to amend a claim and assert an unsecured claim is irrelevant as far as a trustee is concerned. Like the secured creditor bank ("Bank") in *Padget,* M&H argues that it filed a timely proof of claim asserting a secured claim but that it could have become an unsecured or undersecured claim through the lack of value of its collateral. *See Padget,* 119 B.R. at 794; Objection at 2-3.  Like the Bank in *Padget*, M&H failed

---

[3] The same principle applies in chapter 13 cases. Fed. R. Bankr. P. 3002.1.

to file an amended proof of claim for the unsecured portion of its claim but argues nonetheless that the Trustee must pay and treat the claim as one of the unsecured claims. *Id.*

The *Padget* court rejected the Bank's position. A trustee need not pay an undersecured creditor from proceeds of the estate when the creditor filed a proof of claim as a secured creditor. *Padget*, 119 B.R. at 795. The *Padget* court explained that the trustee is not obligated to monitor and independently ascertain the correct legal status of each creditor's claim, particularly those secured claims which devolve into undersecured or unsecured claims during the course of the case. *Padget*, 119 B.R. at 795 and 798. The *Padget* court concluded that an undersecured or wholly unsecured creditor who initially filed a secured claim must timely file an amended or supplemental claim for its unsecured claim if it desires to be treated as an unsecured creditor by the trustee. *Id.* at 796. Because the secured creditor failed to do so, the *Padget* court declined to allow the Bank's unsecured claim. *Id.*

To the extent that M&H believes it has an unsecured or undersecured claim, it had the duty to amend its proof of claim for the unsecured portion of its claim. *See In re Harrison*, 987 F.2d at 681. In this case, the Trustee's focus is on the proofs of claim filed by unsecured creditors for purposes of distribution of estate proceeds as set forth in the TFR.

When a creditor files a secured claim and the claim becomes unsecured, the creditor must file an unsecured proof of claim or amend its secured claim to qualify for distribution from the estate. *In re Channakhon*, 465 B.R. 132, 138 (Bankr. S.D. Ohio 2012) citing *Padget*, 119 B.R. at 796.

While *Padget* involved a motion to reconsider the approval of a trustee's final report that did not provide a distribution to the Bank's unsecured claim, the 9th Circuit BAP in *Wright* reached a similar conclusion involving an objection by a secured creditor, who did not file a proof of claim for its unsecured claim, to the final report of the trustee arguing that the claim should be treated as unsecured and paid along with other unsecured claimants of the estate. *Wright,* 2008 Bankr. LEXIS 4710, at *20. Examining the merits of the bankruptcy court's decision to overrule the objection to the trustee's final report, the BAP in *Wright* agreed with the bankruptcy court that "any undersecured creditor should file a claim for the unsecured portion of its claim . . . in order to

5

participate in any distribution to unsecured creditors." *Id.* The BAP adopted the holding of the bankruptcy court that a trustee does not have to make a distribution to an undersecured creditor who did not amend its claim to assert or estimate the unsecured portion.

M&H has been notified of all the events that have transpired in the case. M&H has had ample opportunity to amend or supplement its claim upon determining that its secured claim may have been reduced to an unsecured claim. M&H failed to do so. M&H did not take affirmative steps to amend its secured claim and assert an unsecured claim.

Asserting an unsecured claim at this point prejudices the other unsecured creditors who filed an unsecured claim timely. Without M&H affirmatively asserting an unsecured claim, the other unsecured creditors have no notice that the pool of unsecured claims increased and by an unknown amount. The obligation to file a proof of claim for the unsecured portion of an undersecured claim rests squarely with such creditor. Thus, while M&H may believe it has an unsecured claim it does not automatically mean that it has an <u>allowed</u> unsecured claim that is entitled to distribution without filing proof of an unsecured claim.

Considering the facts of this case together with the sound reasoning of the case law that have dealt with similar situations, the Court should approve the Trustee's TFR as filed. A secured creditor cannot indicate on its proof of claim that its claim is fully secured and then, expect to have the distribution rights of an unsecured claimant after the trustee's final report has been filed, believing it can leverage an unsecured claimant's status by relying solely on a belief that its "collateral" has insufficient value to support a secured claim.

## III.    CONCLUSION

Based on the foregoing, Trustee requests that the Trustee's final report, the proposed distribution therein, and the Final Fee Applications be approved as filed.

DATED:  October 14, 2025

Respectfully submitted,

DINSMORE & SHOHL LLP

By: /s/ Lovee D. Sarenas
    Lovee D. Sarenas
Counsel to Peter J. Mastan, Chapter 7 Trustee

6

## DECLARATION OF LOVEE D. SARENAS

I, LOVEE D. SARENAS, declare:

1.     I am an attorney admitted to practice law before this Court and I am a partner in the law firm of Dinsmore & Shohl LLP ("Dinsmore"), general bankruptcy counsel to Peter J. Mastan, in his capacity as the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Hawthorne Hangar Operations, L.P.

2.     Unless expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify thereto if requested to do so.

3.     This Declaration is hereby submitted in support of the *Trustee's Reply to the Creditor Messina & Hankin LLP's Objection To Trustee's Final Report*.

4.     The Court may take judicial notice of the following based on the record of this bankruptcy case:

    a.    On August 11, 2023, Messina & Hankin LLP ("M&H"), filed an amended proof of claim ("Claim 13-2") asserting a secured claim in the sum of $426,462.99 comprised of $326,776.61 in amount owed and $99,686.38 in interest.

    b.    On or about August 14, 2025, the applications for compensation and reimbursement of costs (collectively, "Final Fee Applications") of the following professionals were filed:  Dinsmore & Shohl LLP (Trustee's counsel); SLBiggs LLP (Trustee's accountants); and Marshak Hays (Trustee's special counsel).

    c.    On September 9, 2025, the Trustee filed his TFR listing M&H's claim as a secured claim pursuant to Claim 13-2 with zero distribution given that no asset from the litigation was administered by the Trustee. [ECF No. 35.]

    d.    The U.S. Trustee's Office ("UST") has not filed an objection to the Final Fee Applications or to the TFR.

    e.    With the exception of M&H, no other party in interest filed an objection to the TFR or the Final Fee Applications.

#64984008v5

5.    A true and correct copy of Claim 13-2 is attached hereto as **Exhibit A** and incorporated herein by reference.

6.    A true and correct copy of the engagement agreement showing the relevant provisions set forth in the Reply is attached hereto as **Exhibit B** and incorporated herein by reference.

7.    Attached hereto as **Exhibit C** is a copy of the unpublished 9th Circuit BAP opinion *Olympic Coast Inv., Inc. v. Crum (In re Wright),* 2008 Bankr. LEXIS 4710, at *1 (BAP 9th Cir. Nov. 3, 2008) (unpublished) (JJ. Montali, Dunn and Hollowell).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 14th day of October, 2025 in Los Angeles, California.


/s/ Lovee D. Sarenas
LOVEE D. SARENAS

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1   Hawthorne Hangar Operations, L.P.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:   **23–11789**

FILED

**U.S. Bankruptcy Court**
**Central District of California**

8/11/2023

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

MESSINA & HANKIN, LLP c/o Greenbaum Law Group LLP

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

MESSINA & HANKIN, LLP c/o Greenbaum Law Group LLP

Name

160 Newport Center Dr. Ste. 110, 110
110
Newport Beach, CA 92660–110

Contact phone      949–760–1400

Contact email    sshumlas@collectionlaw.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known)   13     Filed on   08/10/2023

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6.**Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | | |
|---|---|---|
| 7.**How much is the claim?** | $ 426462.99 | **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8.**What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Legal services |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☑ Other. Describe: Attorney fees legal services lien<br><br>**Basis for perfection:** Engagement Agmt–Item 7<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br><br>**Amount of the claim that is secured:** $ 426462.99<br><br>**Amount of the claim that is unsecured:** $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) 10 %<br><br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10.**Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11.**Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     8/11/2023
_____
MM / DD / YYYY

/s/  Stephen J. Shumlas
_____
Signature

Print the name of the person who is completing and signing this claim:

Name     Stephen J. Shumlas
_____
First name     Middle name     Last name

Title     Attorney for Creditor
_____

Company     Greenbaum Law Group LLP
_____
Identify the corporate servicer as the company if the authorized agent is a servicer

Address     160 Newport Center Drive, Suite 110
_____
Number    Street
Newport Beach, CA 92660
_____
City   State   ZIP Code

Contact phone     9497601400          Email     sshumlas@collectionlaw.com

# Matter Balance Summary Report (12/10/2021)

██████

| Matter | Accounts Receivable | Work In Progress | Expenses In Progress | Total |
|---|---|---|---|---|
| 00276 - ██████ (HHO v. HA) | $33,116.20 | $297.50 | $0.00 | $33,413.70 |
| 00276 - ██████ - Wehrly v. HHO LLP | $269,982.09 | $23,324.50 | $56.32 | $293,362.91 |
| ██████ | ██████ | ██████ | ██████ | ██████ |
| ██████ | ██████ | ██████ | ██████ | ██████ |
| ██████ | ██████ | ██████ | ██████ | ██████ |
| ██████ | ██████ | ██████ | ██████ | ██████ |
| **Client Total:** | ██████ | ██████ | ██████ | ██████ |

**Client Trust Balance** **$0.00**

- ██████

██████

██████ | ██████ | ██████ | ██████ | ██████

**Trust Balance** **$0.00**

██████

Messina & Hankin LLP - Hawthorne Hangar Operations L.P.

5/2/2023

### HHO v. HA

| Date | Amount | Interest | per diem | # days | Total Interest | Total |
|------|--------|----------|----------|--------|----------------|-------|
| 7/15/2020 | $ 33,413.70 | 10% | $ 9.15 | 1021 | $ 9,346.68 | $ 42,760.38 |

### Wehrly v HHO LLP

| Date | Amount | Interest | per diem | # days | Total Interest | Total |
|------|--------|----------|----------|--------|----------------|-------|
| 4/3/2020 | $ 293,362.91 | 10% | $ 80.37 | 1124 | $ 90,339.70 | $ 383,702.61 |

$ 426,462.99

# MESSINA & HANKIN, LLP

## LAWYERS

JOHN A. MESSINA, JR.
THEODORE M. HANKIN
DAVID A. GRABHORN
MARY E. GRAM
EVAN L. SMITH

24910 LAS BRISAS ROAD, SUITE 102
MURRIETA, CALIFORNIA 92562
www.MessinaHankinLaw.com

TELEPHONE: (951) 894-7332
AUTHOR'S EXTENSION: 108
FACSIMILE: (951) 346-3334
Email: JMessina@MessinaHankinLaw.com

NEWPORT BEACH OFFICE

1400 QUAIL STREET
SUITE 200
NEWPORT BEACH, CA 92660
(949) 383-4356

## ENGAGEMENT AGREEMENT
### (Hourly Fee)

This ENGAGEMENT AGREEMENT ("Agreement") is made and entered into by and between MESSINA & HANKIN LLP ("Attorney" or the "Firm") ███████████████████
████████████████ HAWTHORNE HANGAR OPERATIONS, L.P, a California Limited Partnership; ████████████████████████████████████████
████████████████████████████████████████



**7. Lien.** Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of the representation under this Agreement. The lien will be for any sums owing to Attorney at the conclusion of services performed. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client even if Attorney has been discharged before the end of the case. Because a lien may affect Client's property

rights, Client may seek the advice of an independent lawyer of Client's choice before agreeing to such a lien. By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and—whether or not Client has chosen to consult such an independent lawyer—Client agrees that Attorney will have a lien as specified above.

 (Client Initial Here)

JAM   (Attorney Initial Here)



# EXHIBIT B

# MESSINA & HANKIN, LLP

LAWYERS

JOHN A. MESSINA, JR.
THEODORE M. HANKIN
DAVID A. GRABHORN
MARY E. GRAM
EVAN L. SMITH

24910 LAS BRISAS ROAD, SUITE 102
MURRIETA, CALIFORNIA 92562
www.MessinaHankinLaw.com
TELEPHONE: (951) 894-7332
AUTHOR'S EXTENSION: 108
FACSIMILE: (951) 346-3334
Email: JMessina@MessinaHankinLaw.com

NEWPORT BEACH OFFICE

1400 QUAIL STREET
SUITE 200
NEWPORT BEACH, CA 92660
(949) 383-4356

## ENGAGEMENT AGREEMENT
### (Hourly Fee)

This ENGAGEMENT AGREEMENT ("Agreement") is made and entered into by and between MESSINA & HANKIN LLP ("Attorney" or the "Firm") and WOLFE AIR AVIATION, LTD., a California Corporation; HAWTHORNE HANGAR OPERATIONS, L.P, a California Limited Partnership; DAN WOLFE, as Trustee of the Wolfe Family Trust of 1992, and DAN WOLFE, an individual ("Client") for the purpose of providing legal representation in exchange for payment on the terms and conditions set forth below:



**2. Scope of Representation.**    Client hires The Firm to provide legal services in the following matters: Litigation in the Los Angeles Superior Court, Case Number BC663210 and Arbitration in ADRS Case Number 17-4019-MDM. The scope of representation covered in this Agreement does not include Writs or Appeals. Writs and Appeals will be covered by a separate agreement.



ENGAGEMENT AGREEMENT

**7. Lien.**  Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of the representation under this Agreement. The lien will be for any sums owing to Attorney at the conclusion of services performed. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. The effect of such a lien is that Attorney may be able to compel payment of fees and costs from any such funds recovered on behalf of Client even if Attorney has been discharged before the end of the case. Because a lien may affect Client's property

rights, Client may seek the advice of an independent lawyer of Client's choice before agreeing to such a lien. By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and—whether or not Client has chosen to consult such an independent lawyer—Client agrees that Attorney will have a lien as specified above.

_____ (Client Initial Here)
JAM    (Attorney Initial Here)

(Remainder of this page left blank intentionally.)

THE PARTIES HEREBY ACKNOWLEDGE THAT EACH HAS READ AND UNDERSTANDS THE FOREGOING TERMS AND CONDITIONS.

EACH PARTY AGREES TO THOSE TERMS AND CONDITIONS AS OF THE FIRST DATE AN ATTORNEY OF THE FIRM FIRST PROVIDED SERVICES IN THIS CASE.

EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS ARISING UNDER THIS AGREEMENT.

CLIENTS SHALL BE PROVIDED WITH A FULLY EXECUTED DUPLICATE OF THIS AGREEMENT.

Agreed and accepted on this 26th day of July 2019.

Dan Wolfe, Managing Partner

John A. Messina, Jr., Attorney
Messina & Hankin LLP, the Firm

# EXHIBIT C

⚠ Caution
As of: October 14, 2025 6:04 PM Z

## *Olympic Coast Inv., Inc. v. Crum (In re Wright)*

United States Bankruptcy Appellate Panel for the Ninth Circuit

October 16, 2008, Argued and Submitted at Pasadena, California; November 3, 2008, Filed

BAP No. MT-08-1164-MoDH

**Reporter**
2008 Bankr. LEXIS 4710 *

In re: LAWRENCE D. WRIGHT and ANN MARIE WRIGHT (DECEASED), Debtors. OLYMPIC COAST INVESTMENT, INC., Appellant, v. DARCY M. CRUM, Chapter 7 Trustee, Appellee.

**Notice:** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION. ALTHOUGH IT MAY BE CITED FOR WHATEVER PERSUASIVE VALUE IT MAY HAVE (SEE *FED. R. APP. P. 32.1*), IT HAS NO PRECEDENTIAL VALUE. SEE 9TH CIR. BAP RULE 8013-1.

**Subsequent History:** Affirmed by *Wright v. Crum (In re Wright), 329 Fed. Appx. 137, 2009 U.S. App. LEXIS 15837 (9th Cir., 2009)*

**Prior History:** [*1] Appeal from the United States Bankruptcy Court for the District of Montana. Bk. No. 05-61714. Honorable Ralph B. Kirscher, Chief Bankruptcy Judge, Presiding.

## Core Terms

moot, equitably, disbursement, final report, undersecured, unsecured creditor, effective relief, proof of claim, secured claim, estimate, notice, bankruptcy court, filing proof, abandon, unsecured claim, de novo, stay pending appeal, inequitable, collateral, intervene, disgorge

## Case Summary

**Procedural Posture**
Appellant creditor sought review of a decision entered by the United States Bankruptcy Court for the District of Montana, which approved appellee trustee's final report and distribution in a Chapter 7 bankruptcy case.

**Overview**

The creditor had filed a proof of claim in the total amount of $5.5 million with a secured amount listed at $4.5 million. While the trustee made a motion to abandon the bankruptcy estate's interest in the collateral on the basis of its $50,000 estimated value, the creditor never filed an amended proof of claim indicating the amount of its unsecured deficiency. The creditor objected to the proposed distribution, arguing that the balance of its claim over the collateral's value should be treated as unsecured; the objection was overruled. The creditor did not obtain a stay pending appeal. The appellate panel dismissed the appeal. The appeal had become equitably moot because the creditor failed to obtain a stay and the trustee had already made the approved distributions to other creditors. Reversal would adversely affect the rights of the other creditors as non-parties to the appeal as they would have to disgorge the payments they had received. Even if the appeal would not have been dismissed, the appellate panel would have affirmed on the merits because the creditor failed to amend its claim to assert or estimate the unsecured portion under *Fed. R. Bankr. P. 3002(a)*.

**Outcome**
The court dismissed the creditor's appeal as equitably moot.

## LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Briefs

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

*HN1*[⬇] Issues not raised at the trial court will not be considered for the first time on appeal; arguments not specifically and distinctly made in an appellant's opening

brief are waived.

Bankruptcy Law > ... > Judicial Review > Standards of Review > Clear Error Review

Bankruptcy Law > ... > Judicial Review > Standards of Review > De Novo Standard of Review

*HN2*[⬇] The bankruptcy appellate panel reviews findings of fact for clear error and issues of law de novo.

Bankruptcy Law > ... > Judicial Review > Standards of Review > De Novo Standard of Review

Governments > Courts > Rule Application & Interpretation

Governments > Legislation > Interpretation

*HN3*[⬇] Application of basic rules of procedure and construction of the Bankruptcy Code present questions of law that bankruptcy appellate panel reviews de novo.

Bankruptcy Law > ... > Judicial Review > Standards of Review > De Novo Standard of Review

Civil Procedure > ... > Justiciability > Mootness > General Overview

*HN4*[⬇] Mootness is a question of law that the bankruptcy appellate panel reviews de novo.

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

Civil Procedure > ... > Justiciability > Mootness > General Overview

*HN5*[⬇] The bankruptcy appellate panel lacks jurisdiction over appeals that are moot.

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

Civil Procedure > ... > Justiciability > Mootness > General Overview

*HN6*[⬇] Bankruptcy appeals may become moot in one of two ways. First, events may occur that make it impossible for the appellate court to fashion effective relief. This type of appeal is constitutionally moot.

Constitutional mootness is characterized by an inability to alter the outcome, while equitable mootness involves an unwillingness to alter the outcome. Alternatively, an appeal may become equitably moot when the appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court, thus permitting such a comprehensive change of circumstances to occur as to render it inequitable to consider the merits of the appeal. Equitable mootness occurs when an appellant neglects to obtain a stay pending appeal and the rights of third parties have intervened.

Civil Procedure > ... > Justiciability > Mootness > General Overview

Civil Procedure > ... > Stays of Judgments > Appellate Stays > General Overview

*HN7*[⬇] Even though a failure to obtain a stay does not necessarily render an appeal moot, it is obligatory upon an appellant to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief) if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

Business & Corporate Compliance > Bankruptcy > Case Administration > Estate Funds

Bankruptcy Law > Case Administration > Estate Funds

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

Civil Procedure > ... > Justiciability > Mootness > General Overview

*HN8*[⬇] Effective relief is impossible and a bankruptcy appeal is moot if funds have been disbursed to persons who are not parties to the appeal.

Business & Corporate Compliance > Bankruptcy > Case Administration > Estate Funds

Bankruptcy Law > Case Administration > Estate Funds

Bankruptcy Law > Procedural Matters > Judicial Review > Jurisdiction

Civil Procedure > ... > Justiciability > Mootness > General Overview

HN9[↓] When a disbursement under a final report is not stayed and all disbursements are made to entities that are not parties to the appeal, any challenge to the final report is moot.

Bankruptcy Law > Procedural Matters > Judicial Review > General Overview

Civil Procedure > ... > Justiciability > Mootness > General Overview

HN10[↓] The principle of equitable mootness applies with particular force when a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones. In deciding whether the appeal was equitably moot, the court considers four factors: (1) whether the appellant sought and obtained a stay; (2) whether the equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

Business & Corporate Compliance > Bankruptcy > Case Administration > Estate Funds

Bankruptcy Law > Case Administration > Estate Funds

Bankruptcy Law > Procedural Matters > Judicial Review > Bankruptcy Appeals Procedures

HN11[↓] Disbursement of funds, in and of itself, does not preclude effective relief because a trustee could seek disgorgement of the funds paid. Where funds have been disbursed to a party to the appeal, the appellate court has the ability to fashion effective relief by remanding with instructions to the bankruptcy court to order the return of erroneously disbursed funds.

**Judges:** Before: MONTALI, DUNN and HOLLOWELL, Bankruptcy Judges.

# Opinion

### MEMORANDUM

A creditor filed a proof of claim in the total amount of $5,587,997.76, with the secured amount listed at $4,573,239,78, and the value of its collateral listed as "unknown." Two weeks later, the chapter 7 trustee moved to abandon the estate's interest in the collateral, stating that the debtor had estimated the value at $50,000.00. The creditor never filed an amended proof of claim indicating the amount of its unsecured deficiency. Almost two years later, the trustee filed her notice of final report and distribution, proposing to pay unsecured creditors a dividend of 5.65 percent. The trustee did not propose to make any distribution to the creditor, and instead treated the creditor as a holder of an allowed secured claim in the amount of $5,587,997.76.

The creditor objected to the proposed distribution, arguing that the balance of its claim over $50,000 (the value placed on its collateral by trustee in the motion to abandon) should have been treated as unsecured and [*2] paid accordingly. The trustee argued that because the creditor never filed an amended proof of claim reflecting the full amount of its unsecured deficiency claim, the creditor should not receive any payment as an unsecured creditor. The bankruptcy court overruled the creditor's objection and approved the trustee's final report and proposed distribution.

The creditor appealed, but did not obtain a stay pending appeal. Trustee has made the distributions as proposed and approved, and contends that the appeal is therefore moot. We DISMISS the appeal as equitably moot. Even if the appeal were not equitably moot, we would affirm on the merits.

## I. FACTS

Lawrence D. Wright ("Debtor") and his now-deceased wife filed a chapter 7 petition on June 29, 2005. Appellee Darcy M. Crum ("Trustee") was appointed as the chapter 7 trustee. In Schedule A, Debtor listed certain condominium units in St. Marie, Montana (the "Property"), describing the value as "unknown." In Schedule F, Debtor listed appellant Olympic Coast Investment ("OCI") as an unsecured creditor with a claim in the amount of $4,573,239.78.

OCI filed a timely proof of claim on June 1, 2006, asserting a total claim in the amount of $5,587,997.76, [*3] and a secured claim in the amount of $4,573,239.78. While OCI did not describe the property securing its claim with any particularity, the proof of claim stated that the collateral was "real estate" with an "unknown" value and that the claim arose from a judgment. OCI has never amended its proof of claim.

On June 16, 2006, Trustee filed a notice of her intent to abandon the Property, noting that OCI had asserted a secured claim in the amount of $4,573,239.78 against the Property. Trustee stated that the value of the Property was "unknown (possibly $1,000 per unit)." In her "reason for abandonment," Trustee stated that "Debtor has estimated the value of each unit at $1,000.00, $50,000 for all 50 units. Debtor has owned these units since 1999 and has been unable to market them. The debt secured by the units exceeds their marketable value." No one objected to the abandonment.

On May 19, 2008, Trustee filed her Notice of Final Report and Proposed Distribution. Trustee proposed to pay $43,021.29 to the holders of eighteen unsecured claims. The disbursements to the unsecured creditors varied in amount from $6.72 to $38,408.60. Trustee did not list OCI as an unsecured creditor and therefore [*4] did not propose to pay anything to OCI.

OCI objected to the proposed distribution, arguing that Trustee had "admitted" that the value of the Property was only $50,000 in her notice of intent to abandon. According to OCI, the balance of its claim in excess of $50,000 was unsecured; OCI asserted that the unsecured amount was $4,523,239.78, even though subtracting $50,000 from the total amount of the claim ($5,587,997.76) would equal $5,537,997.76.[2] OCI argued that it was entitled to in pari passu payment on its unsecured claim pursuant to _11 U.S.C. § 726(a)_.[3]

_____

[2] Even though the total amount shown in OCI's proof of claim exceeded the secured amount by more than $1 million ($5,587,997.76 minus 4,573,239,78), OCI never argued before the bankruptcy court or us that the proof of claim on its face reflected an unsecured claim of at least $1 million. Rather, OCI continues to assert that its general unsecured claim is $4,523,239.78. _See_ page 6 of OCI's Opening Brief. Responding to our query at oral argument, OCI's counsel stated that OCI was simply pursuing the difference between $50,000 and its secured claim ($4,573,239.78). Because OCI did not argue that the face of the proof of claim itself reflected [*5] an unsecured deficiency of approximately $1 million, that argument is waived. _Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002)_ (_HN1_[⬆]) issues not raised at the trial court will not be considered for the first time on appeal; arguments not specifically and distinctly made in an appellant's opening brief are waived).

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, _11 U.S.C. §§ 101-1330_, and to the _Federal Rules of Bankruptcy Procedure, Rules 1001-9037_, as enacted and promulgated prior to the

Trustee responded that OCI never filed a proof of claim specifying the amount of its unsecured claim as required by local rule and that a trustee should not be required to estimate the amount of an unsecured claim. In its reply, OCI contended that no authority required it to amend its claim to estimate the unsecured portion. OCI further contended (correctly) that the local rule requiring undersecured creditors to file proofs of claim stating or estimating the unsecured amounts of claims was inapplicable to [*6] holders of nonconsensual judgment liens.

At the hearing on OCI's objection to Trustee's final report and proposed distribution, the court held that "the proof of claim that's filed is filed as a secured claim for the full amount, including interest" and that "it's certainly not the trustee's responsibility to pursue a bifurcation of a claim of a secured creditor." On June 20, 2008, the bankruptcy court entered an order overruling OCI's objection to the final report, approving Trustee's final report and proposed distribution, and authorizing Trustee to make the final distribution.

On June 26, 2008, OCI filed a timely notice of appeal. OCI named Trustee (and her counsel) as the only other parties to the appeal, although it served its notice of appeal on those unsecured creditors receiving payments under Trustee's proposed distribution. On July 8, 2008, OCI served on Trustee and the unsecured creditors a "Response to Trustee's Designation of Additional Issues on Appeal" stating that "distribution of cash does _not_ moot an appeal. The funds can be ordered disgorged from the creditors to whom the Trustee paid the distribution." (Emphasis in original).

OCI never sought a stay pending appeal. [*7] Trustee has made the disbursements proposed in the final report approved by the court.[4]

## II. ISSUES

1. Did the trustee's distribution to creditors render this

_____

effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, **Pub. L. 109-8, 119 Stat. 23**.

[4] Trustee has not stated when the payments were made and has not provided any evidence of such payments apart from a statement on page 2 of her brief. OCI, however, does not dispute that the payments have been made, and acknowledged at oral argument that the payments were made before it sent its notice to unsecured creditors that their payments could be ordered disgorged.

appeal moot?

2. Did the bankruptcy court err in approving the trustee's final report and final distribution?

## III. STANDARD OF REVIEW

*HN2*[↑] We review findings of fact for clear error and issues of law de novo. *Litton Loan Serv'g, LP v. Garvida (In re Garvida), 347 B.R. 697, 703 (9th Cir. BAP 2006)*. *HN3*[↑] Application of basic rules of procedure and construction of the Bankruptcy Code present questions of law that we review de novo. *Ruvalcaba v. Munoz (In re Munoz), 287 B.R. 546, 550 (9th Cir. BAP 2002)*. *HN4*[↑] Mootness is a question of law that we review de novo. *Suter v. Goedert, 504 F.3d 982, 985 (9th Cir. 2007)*.

## IV. DISCUSSION

### A. Jurisdiction

*HN5*[↑] We lack jurisdiction over appeals that are moot. [*9] *Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.), 35 F.3d 1348, 1351 (9th Cir. 1994)*. Trustee contends that this appeal is moot, as OCI did not seek a stay of the order approving the final account and Trustee has already made the proposed distributions to creditors who are not parties to this appeal.

As the Ninth Circuit noted in *Focus Media, Inc. v. Natl. Broad. Co. Inc. (In re Focus Media, Inc.), 378 F.3d 916, 922-23 (9th Cir. 2004)*, *HN6*[↑] bankruptcy appeals may become moot in one of two ways. First, events may occur that make it impossible for the appellate court to fashion effective relief.[5] *Focus Media, 378 F.3d at 922*. Alternatively, an appeal may become equitably moot when the "'[a]ppellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy

---

[5] This type of appeal is constitutionally moot. *Church of Scientology of Cal. v. U.S., 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992)*. The Seventh Circuit has succinctly described the difference between constitutional mootness and equitable mootness: constitutional mootness is characterized by an "inability to alter the outcome" while equitable mootness involves an "unwillingness to alter the outcome." *Matter of UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994)*.

Court,' thus 'permitt[ing] such a comprehensive change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal.'" *Id. at 923* (alterations in original) (quoting *Tron v. Roberts Farms, Inc. (In re Roberts Farms, Inc.), 652 F.2d 793, 798 (9th Cir. 1981))*. Equitable mootness occurs "'when an appellant [*9] neglect[s] to obtain a stay pending appeal and the rights of third parties have intervened." *Arnold & Baker Farms v. U.S. (In re Arnold & Baker Farms), 85 F.3d 1415, 1419-20 (9th Cir. 1996)* (quoting *Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006 (9th Cir. 1993))*.

In this case, OCI never sought a stay of the distribution to other creditors. *HN7*[↑] Even though a failure to obtain a stay does not necessarily render an appeal moot, "it is obligatory upon [an] appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief . . .) if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." [*10] *Roberts Farms, 652 F.2d at 799*.

Here, OCI's decision not to seek a stay permitted distributions to be made to other creditors who are not parties to this appeal. We have noted that disbursement of funds in such circumstances may moot an appeal. *Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.), 211 B.R. 29, 33 (9th Cir. BAP 1997)* ("[t]he disbursement of funds pending appeal may moot the appeal" although that appeal was not moot because appellant had been required to disgorge the funds that had then been distributed to other creditors and "[t]urnabout is fair play"); *Credit Alliance Corp. v. Dunning-Ray Ins. Co. (In re Blumer), 66 B.R. 109, 113 (9th Cir. BAP 1986)* (*HN8*[↑] effective relief is impossible and appeal is moot "if funds have been disbursed to persons who are not parties to the appeal"); cf. *Beatty v. Traub (In re Beatty), 162 B.R. 853, 856 (9th Cir. BAP 1994)* ("in the absence of any transfers of property or disbursements of funds, we do not find that the actions of a trustee in administering the Chapter 7 estate constitute a sufficient change of circumstances to render this appeal moot) (emphasis added), overruled on other grounds in *Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 2008 WL 4330558 (9th Cir., Sept. 24, 2008)*.[6]

---

[6] In [*11] an unpublished non-precedential decision, the Ninth Circuit held an appeal of an order approving a trustee's final report was mooted by disbursements to other creditors.

In a remarkably similar case, a chapter 7 debtor appealed a final order approving a trustee's final report and proposed distribution. *Carr v. King (In re Carr), 321 B.R. 702 (E.D. Va. 2005)*. The debtor did not seek a stay pending appeal and the trustee made the approved disbursements, including a distribution to a non-party creditor. The court found that the appeal was constitutionally and equitably moot.

The Carr court noted that *HN10*[↑] the principle of equitable mootness "applies with particular force when 'a party, seeking **[*12]** a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones.'" *Id. at 706*, quoting *Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002)*. In deciding whether the appeal was equitably moot, the court considered four factors:

(1) whether the appellant sought and obtained a stay;

(2) whether the . . . equitable relief ordered has been substantially consummated;

(3) the extent to which the relief requested on appeal would affect the success of the . . . other equitable relief granted; and

(4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Carr, 321 B.R. at 707*. Here, as in Carr, the first, second and fourth factors weigh in favor of dismissing the appeal as equitably moot. OCI did not seek a stay, the distributions proposed in the final report have been completed, and reversal would adversely affect the rights of non-parties to this appeal, who would have to disgorge payments received.

OCI cites Ninth Circuit cases acknowledging that *HN11*[↑] disbursement of funds, in and of itself, does not preclude effective relief because Trustee could seek disgorgement of the funds paid. See, **[*13]** e.g., *U.S. v. Arkison (In re Cascade Roads, Inc.), 34 F.3d 756, 761*

---

*(9th Cir. 1994)*; *Salomon v. Logan (In re Int'l Environ. Dynamics, Inc.), 718 F.2d 322, 325-26 (9th Cir. 1983)* (where funds have been disbursed to a party to the appeal, the appellate court has the ability to "fashion effective relief by remanding with instructions to the bankruptcy court to order the return of erroneously disbursed funds."). We agree; we could fashion effective relief and the appeal is therefore not constitutionally moot. It is, however, equitably moot, as OCI did not take the simple steps to seek a stay of the appeal and prevent the intervention of the rights of third parties. OCI's inaction permitted "such a comprehensive change of circumstances to occur as to render it inequitable . . . to consider the merits of the appeal.'" *Focus Media, 378 F.3d at 923* (alterations in original).

Unlike in *Cascade Roads* and *International Environmental Dynamics*, the trustee here has actually made disbursements to creditors who are not parties to this appeal; the rights of third parties have intervened.[7] In Cascade Roads, the government paid a claims court judgment to the trustee, but notified the trustee that it **[*14]** would seek to recover any judgment proceeds that he had distributed if it were successful in its appeal of the judgment. *Cascade Roads, 34 F.3d at 761*. The trustee, who was a party to the appeal, retained the proceeds and did not distribute them to creditors. Id. at n.4. The Ninth Circuit could therefore "fashion effective relief by ordering the trustee to return the judgment." Id. In International Environmental Dynamics, unlike here, the creditor who received the distribution was a party to the appeal, so effective relief was possible. *Int'l Environ. Dynamics, 718 F.2d at 325-26*.

For the foregoing reasons, we believe the appeal is equitably moot and therefore will DISMISS it. Even if the appeal were not moot, we would affirm on the merits for the reasons set forth in the next section.

## B. The Merits

The parties did not cite any cases directly **[*15]** on point, but we found and adopt the persuasive analysis of other courts holding that a trustee does not have to

---

*Schafler v. Spear (In re Schafler), 280 Fed.Appx. 648 (9th Cir. 2008)* (*HN9*[↑] "because disbursement under the final report was not stayed and all disbursements were made to entities that were not party to the appeal, the BAP properly concluded that any challenge to the final report was moot"). Although the unpublished decision is not binding, we cite it for its persuasive value. See **Fed. R. App. P. 32.1** and *9th Cir. Rule 36-3(b)* (allowing courts to cite to unpublished decisions issued after January 1, 2007).

---

[7] OCI's purported warning to creditors of a possible disgorgement if it prevailed on appeal is not sufficient to defeat equitable mootness. The warning was interjected into a response to a designation of issues on appeal; the creditors were not parties to the appeal. OCI acknowledged at oral argument that the warning was not given before the distribution.

Case 2:23-bk-11789-BR    Doc 358    Filed 10/14/25    Entered 10/14/25 19:34:43    Desc
Main Document      Page 32 of 36

Page 7 of 8
2008 Bankr. LEXIS 4710, *15

make distributions to an undersecured creditor who did not amend its claim to assert or estimate the unsecured portion.

In *In re Padget*, 119 B.R. 793 (Bankr. D. Colo. 1990), an undersecured creditor filed a secured claim in the debtor's chapter 7 case. The creditor never supplemented or amended its claim to reflect the unsecured deficiency amount. The trustee issued his final report treating the claim as secured and excluding the creditor from the list of unsecured creditors receiving distributions. After the final report was approved and the distributions made, the creditor sought reconsideration, arguing that "(1) after it timely filed its proof of claim in the case, denoted as a secured claim, it did not need to file an amended or supplemental proof of claim to reflect its subsequent status as an unsecured, or undersecured, creditor and, (2) before distribution of estate proceeds, the [t]rustee is responsible for examining and ascertaining the legal status of each claimant in the estate and properly distributing the estate's proceeds to all creditors with unsecured and  **[\*16]** undersecured claims."[8] *Id. at 794*. Both arguments are similar to those advanced by OCI here.

The Padget court framed the issue as follows: "must a trustee pay an undersecured creditor from proceeds of the estate when the creditor filed a proof of claim as a secured creditor?" Id. The court answered "no":

> For the reasons set forth in this Opinion, the Court concludes that a creditor filing a proof of claim denoted a secured claim shall be treated as a creditor with only a secured claim by the trustee for purposes of distribution of estate assets. A creditor with an undersecured or unsecured claim, or a creditor with a secured claim that devolves into an undersecured or unsecured claim, must timely file an amended, or supplemental, proof of claim - or otherwise provide legally sufficient notice of same to the trustee - in order to be treated as an unsecured creditor of the estate and receive a pro rata distribution of estate proceeds.

*Id. at 795* **[\*17]** (emphasis in original).

In support of its holding, the Padget court first observed

that *Rule 3002(a)* requires an unsecured creditor to file a proof of claim in order for the claim to be allowed and paid.[9] The court also noted that under *section 502(a)*, the creditor's statement of the amount and character of its claim is presumptively valid and deemed allowed in the absence of an objection. The creditor could not change the status of its claim after allowance unless it filed a timely amendment or supplemental claim.

Like the creditor in ***Padget***, OCI argues that Trustee is obligated to allow the unsecured amount of OCI's claim, particularly when Trustee filed a notice of abandonment acknowledging that the secured debt on the Property exceeded the value of the Property. The Padget court, not persuaded by a similar argument, held that a trustee is not required to either pay the unsecured portion of the creditor's claim or else object to the creditor's secured claim. A "trustee should not, and is not charged with the obligation to, examine a claim with a purpose and view to increasing the claim or improving a claimant's status over that asserted by other creditors." *Id. at 799*.

> It is not a trustee's duty to protect individual creditors against the consequences of failing to file a claim, filing a late claim, filing an insufficient claim, or failing to properly assert a deficiency claim. It is a trustee's principal duty to object to unsubstantiated, excessive, or unallowable claims.

Id.

Citing Padget, the Tenth Circuit Court of Appeals also held that a creditor who filed a timely secured proof of claim must amend its claim to assert the unsecured, undersecured portion or move for valuation of its  **[\*19]** collateral. *Agricredit Corp. v. Harrison (In re Harrison), 987 F.2d 677, 680 (10th Cir. 1993)*. The Tenth Circuit acknowledged that under *section 506*, the creditor's claim was unsecured to the extent that the amount exceeded the value of the property. That, in and

---

[8] Like OCI here, the creditor's position was predicated on *section 506(a)*; the creditor contended that as a matter of law, its claim is bifurcated into secured and unsecured portions and the trustee must therefore treat the claim as unsecured. *Id.*

[9] *Section 501(a)* provides that a creditor "may" file a proof of claim. The legislative comments to *subsection (a)* note that it is permissive only and does not require filing of a claim. Nonetheless, the comments provide that the Bankruptcy Rules and "practice under the law" will guide creditors as to the necessity of filing a claim. "In general, however, unless a claim is listed in a chapter 9 or chapter 11 case and allowed as a result of the list, a proof of claim will be a prerequisite to allowance for unsecured claims, including priority claims and the unsecured portion of a claim asserted by the holder of a lien." Hist. and Stat. Notes Accompanying 1978 Revisions (emphasis  **[\*18]** added).

of itself, did not require the trustee to provide for payment of the unsecured portion absent an amendment by the creditor to its secured proof of claim or the filing of a motion to value the security. Id.

Montana's Local Rule 3001-1 is consistent with these decisions:

> An undersecured claim which requires an allowance for a deficiency resulting from the enforcement of a security agreement, shall be accompanied by excerpts of the security and perfection documents that are directly germane to establishing the claim, by a summary of the remaining principal balance of the debt, together with the amount of accrued unpaid interest claimed, and the total amount alleged due, as well as a description of the security, and if repossession has occurred, the date of repossession or seizure, whether the sale was public or private, the date of sale, sale price, person to whom sold, the date notice of the sale was given to the debtor and to  [*20] the trustee, and an itemization of the credit allowed toward the original debt. If repossession has not occurred, the estimated time for the proposed method of liquidating the security must be given. The creditor must file a proof of claim stating the dollar amount of the claim which is unsecured (or a good faith estimate, with details providing the basis for such estimate).

Local Rule 3001-1 of the Bankruptcy Court for the District of Montana (emphasis added). OCI contends that Montana Local Rule 3001-1 is inapplicable because its security interest did not arise out of a security agreement but out of a judgment. OCI is correct; technically the rule does apply only to undersecured deficiency claims "resulting from the enforcement of a security agreement." Nonetheless, the principles set forth in *Padget* and presumably underlying the local rule are consistent with the bankruptcy court's conclusion here that any undersecured creditor should file a claim for the unsecured portion of its claim (or a valuation motion) in order to participate in any distribution to unsecured creditors.[10]

---

[10] At oral argument, Trustee stated and OCI agreed that Trustee had encouraged OCI to amend its claim but  [*21] OCI refused. Had OCI simply amended its claim to assert such a deficiency, the amendment could have related back to its original proof of claim and been deemed timely. *In re Spurling, 391 B.R. 783 (Bankr. E.D. Tenn. 2008)* (unsecured deficiency claims filed after bar date related back to filing of original

While *Padget* and *Harrison* are not binding on the panel, their reasoning is sound and persuasive. If we had not opted to dismiss this appeal as equitably moot, we would affirm the bankruptcy court's holding that "it's certainly not the trustee's responsibility to pursue a bifurcation of a claim of a secured creditor."

## V. CONCLUSION

For the foregoing reasons, we DISMISS this appeal as equitably moot.

---

**End of Document**

secured proof of claim; because trustee did not show any inequity in allowing creditors to amend the secured claims, the court overruled the trustee's objection to the claims).

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 655 West Broadway, Suite 800, San Diego, CA 92101

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S REPLY TO CREDITOR MESSINA & HANKIN LLP'S OBJECTION TO TRUSTEE'S FINAL REPORT; DECLARATION OF LOVEE D. SARENAS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 14, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Richard T Baum**    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- **Samuel Mushegh Boyamian**    samuel@marguliesfaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com
- **Jess R Bressi**    jess.bressi@dentons.com, kimberly.sigismondo@dentons.com
- **Marlene Escover**    scif.legal.bk@scif.com
- **Rosendo Gonzalez**    rossgonzalez@gonzalezplc.com, rgonzalez@ecf.axosfs.com;jzavala@gonzalezplc.com;zig@gonzalezplc.com;gig@gonzalezplc.com
- **Mary E Gram**    marygramlaw@gmail.com
- **Martin B Greenbaum**    eparker@collectionlaw.com, mgreenbaum@collectionlaw.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Robbin L. Itkin**    ritkin@sklarkirsh.com, mduran@sklarkirsh.com;KFRAZIER@SKLARKIRSH.COM
- **Ian Landsberg**    ilandsberg@sklarkirsh.com, lskaist@sklarkirsh.com;yalarcon@sklarkirsh.com;mmadden@sklarkirsh.com;ilandsberg@ecf.inforuptcy.com;kfrazier@sklarkirsh.com;mduran@sklarkirsh.com
- **Tinho Mang**    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com
- **Craig G Margulies**    craig@marguliesfaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com;Drew@MarguliesFaithLaw.com
- **Ron Maroko**    ron.maroko@usdoj.gov
- **Peter J Mastan (TR)**    pmastan@iq7technology.com;travis.terry@dinsmore.com;ecf.alert+Mastan@titlexi.com
- **Brian M Metcalf**    brian.metcalf@dinsmore.com, brian-metcalf-9774@ecf.pacerpro.com;katrice.ortiz@dinsmore.com

- **David M Parker**    dparker@ParkerRiggs.com, slawless@ParkerRiggs.com
- **Lovee D Sarenas**    lovee.sarenas@dinsmore.com,
  wendy.yones@dinsmore.com;adelya.ashralieva@dinsmore.com
- **James R Selth**    jselth@yahoo.com,
  jselth@yahoo.com,maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- **Jonathan Serrano**    Jonathan@MarguliesFaithLaw.com,
  vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com
- **Evan L Smith**    els@elsmithlaw.com
- **Keven Steinberg**    keven@kevensteinberglaw.com
- **Matthew J Stockl**    mstockl@otterbourg.com, katrice.ortiz@dinsmore.com
- **Derrick Talerico**    dtalerico@wztslaw.com,
  maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Stephen R Wade**    srw@srwadelaw.com, reception@srwadelaw.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **October 14, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Barry Russell
United States Bankruptcy Court
Edward R. Roybal Federal Building & Courthouse
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

Messina & Hankin LLP
c/o Greenbaum Law Group LLP
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660

SLBiggs
10960 Wilshire Boulevard, Suite 1100
Los Angeles, CA 90024

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 14, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 14, 2025 | Wendy A. Yones | /s/ Wendy A. Yones |
|---|---|---|
| Date | Printed Name | Signature |